1   C. Moze Cowper (Bar No. 326614)
2   Paige Miller (Bar No. 361477)
    **COWPER LAW LLP**
3   12301 Wilshire Boulevard, Suite 303
    Los Angeles, California 90025
4   Tel.: (877) 529-3707
5   mcowper@cowperlaw.com
    pmiller@cowperlaw.com
6

7   Adam J. Levitt (*Pro Hac Vice*)
    **DICELLO LEVITT LLC**
8   Ten North Dearborn Street, Sixth Floor
9   Chicago, Illinois 60602
    Tel.: (312) 214-7900
10  alevitt@dicellolevitt.com

11  *Counsel for Plaintiff and the Proposed Classes*
12

13              **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15

16  KELLY GRISOLI *et al.*, individually        Case No. 8:25-cv-02333-JWH (ADSx)
    and on behalf of all others similarly
17  situated,
18                                              **FIRST AMENDED CLASS ACTION**
                        Plaintiff,              **COMPLAINT**
19
20        v.

21  DEXCOM, INC.,                               DEMAND FOR JURY TRIAL
22
                        Defendant.
23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2  INTRODUCTION .................................................................................................. 1

3  JURISDICTION AND VENUE ............................................................................ 3

4  THE PARTIES ...................................................................................................... 4

5  FACTUAL ALLEGATIONS ............................................................................... 24

6     A.    G7 CGM Background ............................................................................. 25

7     B.    Dexcom's Advertising of the G7 CGM ................................................ 27

8     C.    Unauthorized Design Change ................................................................ 29

9     D.    G7 CGM Complaints ............................................................................. 30

10    E.    FDA Inspection, Warning Letter, and Recalls ...................................... 39

11    F.    Additional G7 CGM Defects ................................................................ 44

12    G.    G7 CGM Warranties .............................................................................. 45

13    H.    Fraudulent Omission Allegations ......................................................... 46

14 TOLLING OF THE STATUTE OF LIMITATIONS ......................................... 48

15    A.    Discovery Rule Tolling .......................................................................... 48

16    B.    Fraudulent Concealment Tolling ........................................................... 48

17    C.    Estoppel .................................................................................................. 49

18 INJURIES AND DAMAGES .............................................................................. 49

19 CLASS ACTION ALLEGATIONS .................................................................... 49

20 CAUSES OF ACTION ........................................................................................ 54

21    A.    Claims Brought on Behalf of the Nationwide Class .............................. 54

22    B.    Claims Brought on Behalf of Statewide Classes ................................... 64

23        1.   Claims Brought on Behalf of the Arizona Class ............................ 64

24        2.   Claims Brought on Behalf of the Arkansas Class .......................... 75

25        3.   Claims Brought on Behalf of the California Class .......................... 85

26        4.   Claims Brought on Behalf of the Colorado Class ........................... 92

27        5.   Claims Brought on Behalf of the Florida Class ............................ 102

28

6.   Claims Brought on Behalf of the Georgia Class ................................. 112

7.   Claims Brought on Behalf of the Massachusetts Class ....................... 123

8.   Claims Brought on Behalf of the Michigan Class .............................. 135

9.   Claims Brought on Behalf of the Minnesota Class ............................ 147

10.  Claims Brought on Behalf of the New Jersey Class ......................... 158

11.  Claims Brought on Behalf of the New York Class .......................... 169

12.  Claims Brought on Behalf of the North Carolina Class .................. 182

13.  Claims Brought on Behalf of the Ohio Class ................................. 193

14.  Claims Brought on Behalf of the Oklahoma Class ........................ 204

15.  Claims Brought on Behalf of the Oregon Class ........................... 214

16.  Claims Brought on Behalf of the Pennsylvania Class .................... 224

17.  Claims Brought on Behalf of the South Carolina Class ................ 235

18.  Claims Brought on Behalf of the Texas Class .............................. 243

19.  Claims Brought on Behalf of the Virginia Class .......................... 254

20.  Claims Brought on Behalf of the Washington Class ..................... 265

REQUEST FOR RELIEF ................................................................................ 275

DEMAND FOR JURY TRIAL ........................................................................ 275

Plaintiffs Kelly Grisoli, Joyce Cameron, Eboni Scott, Jason Feinberg, Jason Scanga, Laura Stafford, John Allen, Spencer Sawicki, Tonya Miller, Ben Steckly, Brian Lowe, Jesse Perez, Brandon Whitlow, Jenna Charlton, Oliver Ivy, Abby Farber, Danielle Perschau, Kevin Parks, Ashley Sheldon, Lauren Calvert, and Stuart Cutler, individually and on behalf of all others similarly situated, bring this First Amended Class Action Complaint ("FAC") against Dexcom, Inc. ("Dexcom"). Plaintiffs make the following allegations upon personal knowledge as to their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows.

## INTRODUCTION

1. This is a nationwide consumer class action arising from Dexcom's manufacture, marketing, and sale of its Dexcom G7 Continuous Glucose Monitoring System (the "G7 CGM," "G7 System," "G7," and/or "the G7 Device"), a medical device marketed as a safe, accurate, and reliable glucose monitoring product for individuals managing diabetes.

2. Despite marketing the G7 CGM as a superior, FDA-cleared medical device that would "continuously and accurately track glucose levels," Dexcom sold and distributed G7 CGMs that were defective, prone to dangerous alert failures, and subject to recall by the United States Food and Drug Administration ("FDA"). The G7 CGM places users at risk of severe hypoglycemia, hyperglycemia, seizure, coma, or death due to design and software defects that cause inaccurate blood glucose readings and suppressed, delayed, or failed alerts. The G7 CGM's sensors also routinely fail to last the intended 10-day wear period as advertised, and have otherwise been adulterated in a manner that renders them less accurate than Dexcom had advertised. Dexcom has never disclosed to consumers that the G7 CGM is defective.

3. On March 4, 2025, the FDA sent a Warning Letter to Dexcom, stating that the inspection revealed the G7 CGMs "are adulterated within the meaning of section

501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820." The FDA specifically noted that Dexcom was employing an unapproved sensor coating on G6 and G7 Devices that caused the sensors to be subject to inaccuracy and thereby "cause[d] higher risks for users who rely on the sensors to dose insulin or make other diabetes treatment decisions." The FDA also found that the G7 Device is "misbranded" within the meaning of 21 U.S.C. § 352(o). Dexcom has not issued a recall for devices with the unapproved sensor coating that led the FDA to state the Device is "misbranded."

4.      On June 16, 2025, and again on September 4, 2025, the FDA announced nationwide Class I recalls, its most serious classification, for components of the G7 CGM due to safety issues that caused failures or delays in providing critical low- or high-glucose alerts. See Exhibit A, FDA Recall No. 213508; Exhibit B, FDA Recall No. 215006.

5.      Dexcom acknowledged that the G7 CGM's software design could cause a "loss of audible alert functionality" or delay in alarms, meaning users would not be warned of dangerous blood-glucose levels in real time.[1]

6.      Despite knowledge of the G7 CGM's defects, Dexcom continued to market and sell the G7 CGM to consumers, touting its reliability and safety while minimizing and/or concealing the risks. In one recent interview, Dexcom's President and COO Jake Leach acknowledged publicly that sensors whose manufacture had been the subject of the FDA's warning letter remain in circulation, further stating the sensors were not "less accurate."[2] Internal studies revealed otherwise, as the FDA found that Dexcom's own

---

[1] https://dexcompdf.s3.us-west-2.amazonaws.com/Urgent-Medical-Device-Correction-Notification_US.pdf

[2] https://www.youtube.com/watch?v=N8lJzuFgdY0&t=333s

1    internal studies "indicate[] significant variation in the clinical performance of the
2    sensors" manufactured with the unapproved process, such that Dexcom does not have
3    "evidence to support" that the sensors "perform as claimed in the G7 original 510(k)…"

4         7.     Consumers, including Plaintiff and the other Class Members, paid a
5    substantial premium for the G7 CGM based on Dexcom's misrepresentations and
6    omissions, only to receive a product that was unreliable, failed to perform as promised,
7    was subject to (an inadequate) government recall, and posed and continues to pose a
8    serious safety risk. Dexcom's conduct violates multiple consumer protection and
9    warranty statutes.

10         8.     Each purchaser of the G7 CGM unwittingly paid for a device with
11    undisclosed and significant safety risks. These purchasers were damaged in that they paid
12    more for their devices than they would have paid had they known about the safety,
13    reliability, and accuracy issues with G7 CGMs, or in that they would not have purchased
14    their G7 CGMs at all had they been informed of its safety, reliability, and accuracy
15    problems. Additionally, those who paid for other out-of-pocket expenses for the G7
16    CGM—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-
17    compliant cell phones—would not have purchased those products if the G7 CGM worked
18    as promised.

19         9.     Plaintiffs seek damages, restitution, and other remedies on behalf of
20    themselves and the proposed Classes.

21    **JURISDICTION AND VENUE**

22         10.     This Court has subject-matter jurisdiction under the Class Action Fairness
23    Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the
24    aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs,
25    there are more than 100 Class Members, and at least one class member is a citizen of a
26    state different from Defendant's.

27

28

11.     This Court has personal jurisdiction over Defendant Dexcom, Inc. because Dexcom transacts business, advertises, and engages in conduct within the State of California and this District, and because the claims arise out of such conduct. As such, Dexcom has purposefully availed itself of the privilege of doing business within California, including by marketing and selling the G7 CGM, and exercising jurisdiction over Dexcom does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims of Plaintiffs and the other Class Members occurred within this district and because Dexcom is subject to personal jurisdiction within this district.

13.     A venue affidavit pursuant to California Civil Code § 1780(d) is attached hereto.

## THE PARTIES

### Plaintiff Kelly Grisoli

14.     Plaintiff Kelly Grisoli is an individual, a citizen of the State of California, and a resident of San Clemente, California, who purchased the G7 CGM in Laguna Niguel, California on multiple occasions beginning in early 2024 for personal and medical use for her minor child, L.G., a Type 1 diabetic, to monitor his blood glucose levels and help manage and control his diabetes.

15.     Prior to purchasing the G7 CGM for her son, Plaintiff reviewed the package insert and other advertising materials, including online advertisements, product videos, and statements on Dexcom's website, which represented that the G7 CGM was the most accurate continuous glucose monitor available, required no fingersticks, provided reliable real-time alerts, and offered improved safety and convenience over prior models, including by having a 10-day wear period. In addition, Dexcom sales representatives promised Plaintiff Grisoli significant improvements in performance and safety for the G7 CGM compared to other models.

16.     Had those advertisements and any other materials or statements Plaintiff Grisoli saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

17.     Relying on these omissions, Plaintiff Grisoli purchased the G7 CGM for her son. At the time Plaintiff Grisoli purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Grisoli thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

18.     As a result, Plaintiff Grisoli and her son experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements and failed alerts. In addition, the G7 Sensors never lasted the intended ten-day wear period as advertised and warranted, sometimes failing after only two days, requiring her to purchase frequent replacements. At one point, Dexcom threatened not to replace the G7 Sensors for Plaintiff Grisoli, claiming she had requested too many within a single month.

**Plaintiff Joyce Cameron**

19.     Plaintiff Joyce Cameron is an individual, a citizen of the State of Arizona and a resident of Glendale, Arizona, who purchased the G7 CGM in Glendale, Arizona on multiple occasions, beginning in March 2025 for personal and medical use for her minor child, D.C., a Type 1 diabetic, to monitor his blood glucose levels and help manage and control his diabetes.

20.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, and discussed the benefits of the G7 with her son's doctor, including that the G7 CGM was the most accurate, required no fingersticks, had reliable real-time alerts, improved safety, a 10-day wear period, seamless connectivity, and a smaller/slim design.

Had that information and any other materials or statements Plaintiff Cameron saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

21.    Relying on these omissions, Plaintiff Cameron purchased the G7 CGM. At the time Plaintiff Cameron purchased the G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Cameron thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

22.    As a result, Plaintiff Cameron and her son experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, delays and difficulties in obtaining replacements for failed sensors, the G7 would frequently fail to last the intended ten-day wear period, and sensors would easily come off.

**Plaintiff Eboni Scott**

23.    Plaintiff Eboni Scott is an individual, a citizen of Arkansas, and a resident of Crossett, Arkansas who purchased the G7 CGM in Crossett, Arkansas on multiple occasions, beginning in approximately June 2025 to monitor her blood glucose levels and help manage and control her Type 2 diabetes.

24.    Prior to purchasing the G7 CGM, Plaintiff Eboni Scott reviewed the package insert and other advertising materials, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provides reliable real-time alerts, prevents highs and lows, was cleared by the FDA, and offers seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period, and a smaller/slim design. Had those advertisements and any other materials or statements Plaintiff Scott saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later

confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

25.    Relying on these omissions, Plaintiff Scott purchased the G7 CGM. At the time Plaintiff Scott purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Scott thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

26.    As a result, Plaintiff Scott experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements and the G7 would frequently fail to last the intended ten-day wear period.

**Plaintiff Jason Feinberg**

27.    Plaintiff Jason Feinberg is an individual, a citizen of the State of California, and a resident of San Francisco, California who purchased the G7 CGM in San Francisco, California on multiple occasions, beginning in approximately May 2023 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

28.    Prior to purchasing the G7 CGM, Plaintiff Feinberg discussed the benefits of the G7 with his doctor, and reviewed the package insert and other advertising materials, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provides reliable real-time alerts, prevents highs and lows, is cleared by the FDA, and offers seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period, and a smaller/slim design. Had those advertisements and any other materials or statements Plaintiff Feinberg saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as

much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

29.    Relying on these omissions, Plaintiff Feinberg purchased the G7 CGM. At the time Plaintiff Feinberg purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Feinberg thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

30.    As a result, Plaintiff Feinberg experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, alert failures, as well as connectivity and software issues.

**Plaintiff Jason Scanga**

31.    Plaintiff Jason is an individual, citizen of the State of Colorado and resident of Colorado Springs, Colorado who purchased the G7 CGM in Colorado Springs, Colorado on multiple occasions beginning in January 2025 for personal and medical use for his son, a Type 1 diabetic, to monitor his blood glucose levels and help manage and control his diabetes.

32.    Prior to purchasing the G7 CGM, Plaintiff Scanga reviewed the package insert and other advertising materials, including television and Facebook advertisements, which represented that the G7 CGM was the most accurate, had a smaller/slim design, was easy to use and offered seamless connectivity. Had those advertisements and any other materials or statements Plaintiff Scanga saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

33.    Relying on these omissions, Plaintiff Scanga purchased the G7 CGM. At the time Plaintiff Scanga purchased his G7 CGM, he paid a price based on the value of such

a device free of such a defect. Plaintiff Scanga thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

34.    As a result, Plaintiff Scanga's son experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, failed alerts, software and connectivity issues, sensors would easily come off, and the G7 would frequently fail to last the intended ten-day wear period.

**Plaintiff Laura Stafford**

35.    Plaintiff Laura Stafford is an individual, a citizen of the State of Florida, and a resident of Pace, Florida who purchased the G7 CGM in Pace, Florida on multiple occasions, beginning in approximately February 2023 to monitor her blood glucose levels and help manage and control her Type 1 diabetes.

36.    Prior to purchasing the G7 CGM, Plaintiff Stafford reviewed the package insert and other advertising materials, including television advertisements, which represented that the G7 CGM had a shorter warm-up time, is the most accurate, requires no fingersticks, has reliable real-time alerts, has a 10-day wear period, has seamless connectivity, prevents highs and lows, and has a smaller/slim design. Had those advertisements and any other materials or statements Plaintiff Stafford saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

37.    Relying on these omissions, Plaintiff Stafford purchased the G7 CGM. At the time Plaintiff Stafford purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Stafford thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

FIRST AMENDED CLASS ACTION COMPLAINT

38.    As a result, Plaintiff Stafford experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, connectivity issues, failed alerts, the G7 would frequently fail to last the intended ten-day wear period, and sensors would easily come off.

**Plaintiff John Allen**

39.    Plaintiff John Allen is an individual, a citizen of the State of Georgia, and a resident of Rome, Georgia, who purchased the G7 CGM in Rome, Georgia on multiple occasions, beginning in October 2024 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

40.    Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, including statements that G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provided reliable real-time alerts, prevents highs and lows, was cleared by the FDA, offered seamless connectivity, is best in class, and had improved safety and convenience over prior models, including by having a 10-day wear period. Had those advertisements and any other materials or statements Plaintiff Allen saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

41.    Relying on these omissions, Plaintiff Allen purchased the G7 CGM. At the time Plaintiff Allen purchased the G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Allen thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

42.     As a result, Plaintiff Allen experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements and the G7 would frequently fail to last the intended ten-day wear period.

**Plaintiff Spencer Sawicki**

43.     Plaintiff Spencer Sawicki is an individual, a citizen of the Commonwealth of Massachusetts, and a resident of Burlington, Massachusetts who purchased the G7 CGM in Burlington, Massachusetts on multiple occasions, beginning in January 2024 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

44.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other advertising materials, such as commercials, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provided reliable real-time alerts, prevents highs and lows, was cleared by the FDA, and offered seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period. Had those advertisements and any other materials or statements Plaintiff Sawicki saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

45.     Relying on these omissions, Plaintiff Sawicki purchased the G7 CGM. At the time Plaintiff Sawicki purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Sawicki thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

46.     As a result, Plaintiff Sawicki experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, alert failures, the G7 would

FIRST AMENDED CLASS ACTION COMPLAINT

1 frequently fail to last the intended ten-day wear period, and sensors would easily come
2 off.

3 **Plaintiff Tonya Miller**

4     47.    Plaintiff Tonya Miller is an individual, a citizen of the State of Michigan,
5 and a resident of Buchanan, Michigan who purchased the G7 CGM in Buchanan,
6 Michigan on multiple occasions, beginning in approximately December 2024 to monitor
7 her blood glucose levels and help manage and control her Type 2 diabetes.

8     48.    Prior to purchasing the G7 CGM, Plaintiff Miller discussed the benefits of
9 the G7 CGM with her health care providers, reviewed the package insert and other
10 materials, including statements that the G7 CGM requires no fingersticks and provides
11 reliable real-time alerts. Had those advertisements and any other materials or statements
12 Plaintiff Miller saw or heard not omitted that the G7 CGM was defective, inaccurate, at
13 risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and
14 determinations, she would not have purchased the G7 CGM, would not have paid as
15 much for it as she did, and/or would not have been required to purchase additional
16 supplies related to the G7.

17     49.    Relying on these omissions, Plaintiff Miller purchased the G7 CGM. At the
18 time Plaintiff Miller purchased her G7 CGM, she paid a price based on the value of such
19 a device free of such a defect. Plaintiff Miller thus suffered economic injury because she
20 paid more for the G7 CGM than she should have paid and/or paid more for necessary
21 supplies related to the G7 than she should have paid.

22     50.    As a result, Plaintiff Miller experienced dangerously inaccurate glucose
23 readings when compared to actual fingerstick measurements, the G7 CGM would
24 frequently fail to last the intended ten-day wear period, and sensors would easily come
25 off.

**Plaintiff Ben Steckly**

51.     Plaintiff Ben Steckly is an individual, a citizen of the State of Minnesota, and a resident of Minneapolis, Minnesota who purchased the G7 CGM in Minneapolis, Minnesota on multiple occasions, beginning in approximately 2023, to monitor his blood glucose levels and help manage and control his type 1 diabetes.

52.     Prior to purchasing the G7 CGM, Plaintiff Steckly reviewed the package insert and other advertising materials, including Dexcom's website, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provides reliable real-time alerts, prevents highs and lows, and offers seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period, and a smaller/slim design.  Had those advertisements and any other materials or statements Plaintiff Steckly saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

53.     Relying on these omissions, Plaintiff Steckly purchased the G7 CGM. At the time Plaintiff Steckly purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Steckly thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

54.     As a result, Plaintiff Steckly experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, alert failures, sensors would easily come off, and the G7 would frequently fail to last the intended ten-day wear period.

**Plaintiff Brian Lowe**

55.     Plaintiff Brian Lowe is an individual, a citizen of the State of New Jersey, and a resident of Chester, New Jersey, who purchased the G7 CGM in Springfield, New Jersey on multiple occasions, beginning in August 2024 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

56.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, such as online materials, including statements that the G7 was the "most accurate glucose monitor for diabetes," "an easier way to manage diabetes without fingersticks," had "proven results you can see," offered "improved safety," would allow him to "more confidently manage diabetes," prevents highs and lows, has seamless management, and had a "smaller design." Had those advertisements and any other materials or statements Plaintiff Lowe saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

57.     Relying on these omissions, Plaintiff Lowe purchased the G7 CGM. At the time Plaintiff Lowe purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Lowe thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

58.     As a result, Plaintiff Lowe experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, the G7 would frequently fail to last the intended ten-day wear period, the G7 would disconnect for long periods of time, and sensors would easily come off.

FIRST AMENDED CLASS ACTION COMPLAINT

**Plaintiff Jesse Perez**

59.    Plaintiff Jesse Perez is an individual, a citizen of the State of New York, and a resident of Seaford, New York, who purchased the G7 CGM in Seaford, New York on multiple occasions, beginning in the summer of 2024 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

60.    Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, such as brochures and online material, including statements that the G7 was the "most accurate glucose monitor for diabetes," was "an easier way to manage diabetes without fingersticks," had "proven results you can see," offered "improved safety," had a "10-day wear period," would help him "more confidently manage diabetes," had "realtime alerts," prevents highs and lows, had seamless management, had a "smaller design." Had those advertisements and any other materials or statements Plaintiff Perez saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

61.    Relying on these omissions, Plaintiff Perez purchased the G7 CGM. At the time Plaintiff Perez purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Perez thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

62.    As a result, Plaintiff Perez experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, the G7 would frequently fail to last the intended ten-day wear period, the G7 would disconnect for periods of time, and sensors would easily come off.

FIRST AMENDED CLASS ACTION COMPLAINT

**<u>Plaintiff Brandon Whitlow</u>**

63.     Plaintiff Brandon Whitlow is an individual, a citizen of the State of North Carolina and a resident of Shawboro, North Carolina, who purchased the G7 CGM in Shawboro, North Carolina, on multiple occasions, beginning in approximately February 2024 for personal and medical use for his minor child, P.W., a Type 1 diabetic, to monitor his blood glucose levels and help manage and control his diabetes.

64.     Prior to purchasing the G7 CGM, Plaintiff Whitlow discussed the G7 CGM with P.W.'s doctor, and reviewed the package insert and other materials, including Dexcom's website, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provides reliable real-time alerts, prevents highs and lows, is cleared by the FDA, offers seamless connectivity, and offers improved safety and convenience over prior models, including by having a 10-day wear period. Had that information and any other materials or statements Plaintiff Whitlow saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

65.     Relying on these omissions, Plaintiff Whitlow purchased the G7 CGM. At the time Plaintiff Whitlow purchased the G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Whitlow thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

66.     As a result, Plaintiff Whitlow and his child experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, failed alerts, connectivity issues, and the G7 CGM would frequently fail to last the intended ten-day wear period.

FIRST AMENDED CLASS ACTION COMPLAINT

**Plaintiff Jenna Charlton**

67.     Plaintiff Jenna Charlton is an individual, a citizen of Ohio, and a resident of Eastlake, Ohio who purchased the G7 CGM in Eastlake, Ohio on multiple occasions, beginning in approximately August 2025 to monitor her blood glucose levels and help manage and control her Type 2 diabetes.

68.     Prior to purchasing the G7 CGM, Plaintiff Charlton reviewed the package insert, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provides reliable real-time alerts, prevents highs and lows, was cleared by the FDA, and offers seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period, and a smaller/slim design. Had those materials or statements Plaintiff Charlton saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

69.     Relying on these omissions, Plaintiff Charlton purchased the G7 CGM. At the time Plaintiff Charlton purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Charlton thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

70.     As a result, Plaintiff Charlton experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements and the G7 would frequently fail to last the intended ten-day wear period.

**Plaintiff Oliver Ivy**

71.     Plaintiff Ivy is an individual, a citizen of the State of Oklahoma, and a resident of Tulsa, Oklahoma, who purchased the G7 CGM in Tulsa, Oklahoma on

multiple occasions, beginning in 2023 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

72.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, such as online materials and pamphlets from his provider's office, including statements that that the G7 was the "most accurate glucose monitor for diabetes," was "an easier way to manage diabetes without fingersticks," boasted "proven results you can see," had a "10-day wear period," was "cleared by the FDA," offered "improved safety," would allow him to "more confidently manage diabetes," prevents highs and lows, has seamless management, and had a "smaller design." Had those advertisements and any other materials or statements Plaintiff Ivy saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

73.     Relying on these omissions, Plaintiff Ivy purchased the G7 CGM. At the time Plaintiff Ivy purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Ivy thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

74.     As a result, Plaintiff Ivy experienced dangerously inaccurate glucose readings, the G7 would frequently fail to last the intended ten-day wear period, the G7 would disconnect for periods of time, and sensors would easily come off the body.

**Plaintiff Abby Farber**

75.     Plaintiff Abby Farber is an individual, a citizen of the state of Oregon and a resident of West Linn, Oregon, who purchased the G7 CGM in West Linn, Oregon, on multiple occasions, beginning in February 2024 to monitor her blood glucose levels and help manage and control her Type 2 diabetes.

76.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, such as online material, including statements that including statements that the G7 was the "most accurate glucose monitor for diabetes", "an easier way to manage diabetes without fingersticks", offered "proven results you can see," had a "10-day wear period," was "cleared by the FDA," offered "improved safety," would allow him to "more confidently manage diabetes," prevents highs and lows, has seamless management, and has a "smaller design". Had those advertisements and any other materials or statements Plaintiff Farber saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

77.     Relying on these omissions, Plaintiff Farber purchased the G7 CGM. At the time Plaintiff Farber purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Farber thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

78.     As a result, Plaintiff Farber experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, was not correctly alerted to high or low blood glucose levels, the G7 would frequently fail to last the intended ten-day wear period, the G7 would disconnect for long periods of time, and sensors would easily come off.

**Plaintiff Danielle Perschau**

79.     Plaintiff Danielle Perschau is an individual, a citizen of the Commonwealth of Pennsylvania, and a resident of Pittston, Pennsylvania who purchased the G7 CGM in Pittston, Pennsylvania on multiple occasions, beginning in approximately February 2023 to monitor her blood glucose levels and help manage and control her Type 2 diabetes.

80.     Prior to purchasing the G7 CGM, Plaintiff Perschau reviewed the package insert and other advertising materials, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provides reliable real-time alerts, prevents highs and lows, was cleared by the FDA, and offers seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period, and a smaller/slim design. Had those advertisements and any other materials or statements Plaintiff Perschau saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

81.     Relying on these omissions, Plaintiff Perschau purchased the G7 CGM. At the time Plaintiff Perschau purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Perschau thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

82.     As a result, Plaintiff Perschau experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, failed alerts, connectivity/software issues, the G7 would frequently fail to last the intended ten-day wear period, and sensors would easily come off.

**Plaintiff Kevin Parks**

83.     Plaintiff Kevin Parks is an individual, a citizen of the State of South Carolina, and a resident of Goose Creek, South Carolina who purchased the G7 CGM in Murrells, South Carolina and Goose Creek, South Carolina on multiple occasions (beginning in the summer of 2023) to monitor his blood glucose levels and help manage and control his Type 2 diabetes.

84.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, including a written Dexcom advertisement, and discussed the benefits of the G7 with his doctor, including that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provided reliable real-time alerts, was cleared by the FDA, and offered improved safety and convenience over prior models, including by having a 10-day wear period and a smaller/slim design. Had those advertisements and any other materials or statements Plaintiff Parks saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

85.     Relying on these omissions, Plaintiff Parks purchased the G7 CGM. At the time Plaintiff Parks purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Parks thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

86.     As a result, Plaintiff Parks experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, alert failures, software issues, the G7 would frequently fail to last the intended ten-day wear period, and sensors would easily come off.

**Plaintiff Ashley Sheldon**

87.     Plaintiff Ashley Sheldon is an individual, a citizen of the State of Texas, and a resident of Alvin, Texas, who purchased the G7 CGM in Alvin, Texas on multiple occasions, beginning in May 2024 to monitor her blood glucose levels and help manage and control her Type 1 diabetes.

88.     Prior to purchasing the G7 CGM, Plaintiff reviewed the package insert and other materials, such as television advertisements including statements that including

statements that the G7 was the "most accurate glucose monitor for diabetes," was "an easier way to manage diabetes without fingersticks," offered "proven results you can see," had a "10-day wear period," was "cleared by the FDA," offered "improved safety," would allow her to "more confidently manage diabetes," prevents highs and lows, had seamless management, and had a "smaller design." Had those advertisements and any other materials or statements Plaintiff Sheldon saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

89.     Relying on these omissions, Plaintiff Sheldon purchased the G7 CGM. At the time Plaintiff Sheldon purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Sheldon thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

90.     As a result, Plaintiff Sheldon experienced dangerously inaccurate glucose readings, the G7 would frequently fail to last the intended ten-day wear period, the G7 would disconnect for periods of time, the application would work ineffectively, and sensors would easily come off.

**Plaintiff Lauren Calvert**

91.     Plaintiff Lauren Calvert is an individual, a citizen of the State of Virginia, and a resident of Stephens City, Virginia, who purchased the G7 CGM in Stephens City, Virginia on multiple occasions, beginning in October 2024 to monitor her blood glucose levels and help manage and control her Type 2 diabetes.

92.     Prior to purchasing the G7 CGM, Plaintiff Calvert reviewed the package insert and other materials, such as online materials, including statements that the G7 was "an easier way to manage diabetes without fingersticks," had "reliable real-time alerts,"

had a "10-day wear period," was "cleared by the FDA," and had a "smaller design." Had those advertisements and any other materials or statements Plaintiff Calvert saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, she would not have purchased the G7 CGM, would not have paid as much for it as she did, and/or would not have been required to purchase additional supplies related to the G7.

93.    Relying on these omissions, Plaintiff Calvert purchased the G7 CGM. At the time Plaintiff Calvert purchased her G7 CGM, she paid a price based on the value of such a device free of such a defect. Plaintiff Calvert thus suffered economic injury because she paid more for the G7 CGM than she should have paid and/or paid more for necessary supplies related to the G7 than she should have paid.

94.    As a result, Plaintiff Lauren Calvert experienced dangerously inaccurate glucose readings, the G7 would frequently fail to last the intended ten-day wear period, the G7 would disconnect for periods of time, the alerts would be inaccurate and misleading, and sensors would easily come off the body.

**Plaintiff Stuart Cutler**

95.    Plaintiff Stuart Cutler is an individual, a citizen of the State of Washington, and a resident of Bellingham, Washington who purchased the G7 CGM in Bellingham, Washington on multiple occasions, beginning in approximately March 2023 to monitor his blood glucose levels and help manage and control his Type 1 diabetes.

96.    Prior to purchasing the G7 CGM, Plaintiff discussed the benefits of the G7 with his doctor, and reviewed the package insert and other materials, such as Facebook, TikTok and YouTube advertisements, which represented that the G7 CGM is the most accurate continuous glucose monitor available, requires no fingersticks, provided reliable real-time alerts, prevents highs and lows, was cleared by the FDA, and offered seamless connectivity and improved safety and convenience over prior models, including by having a 10-day wear period. Had those advertisements and any other materials or

statements Plaintiff Cutler saw or heard not omitted that the G7 CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, he would not have purchased the G7 CGM, would not have paid as much for it as he did, and/or would not have been required to purchase additional supplies related to the G7.

97.    Relying on these omissions, Plaintiff Cutler purchased the G7 CGM. At the time Plaintiff Cutler purchased his G7 CGM, he paid a price based on the value of such a device free of such a defect. Plaintiff Cutler thus suffered economic injury because he paid more for the G7 CGM than he should have paid and/or paid more for necessary supplies related to the G7 than he should have paid.

98.    As a result, Plaintiff Cutler experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements, alert failures, connectivity issues, the G7 would frequently fail to last the intended ten-day wear period, and sensors would easily come off.

**Defendant**

99.    Defendant Dexcom, Inc. is a Delaware corporation with its principal place of business in San Diego, California.

100.    At all relevant times, Dexcom engaged in substantial business throughout the United States and within this District.

101.    At all relevant times, Dexcom was engaged in the business of designing, manufacturing, developing, preparing, processing, inspecting, testing, packaging, promoting, marketing, distributing, labeling, or selling for profit, either directly or indirectly, through an agent, affiliate, predecessor, or subsidiary, the G7 CGM.

## FACTUAL ALLEGATIONS

102.    In order to effectively manage and/or control diabetes, both Type 1 and Type 2 diabetics must closely monitor and manage their blood glucose levels through exercise, diet, and medications, and many must also supply their bodies with appropriate amounts

of insulin based on daily routines. In particular, many diabetics rely on continuous blood glucose monitoring systems ("CGMs") to continuously monitor their blood glucose levels and help manage and/or control diabetes.

103.    Plaintiffs and the other Class Members, like all diabetic patients who use CGMs, depend on extremely precise and accurate systems to ensure accurate blood glucose readings to calculate appropriate insulin delivery amounts.

104.    Plaintiffs and the other Class Members, who are all Type 1 or Type 2 diabetics or guardians/personal representatives thereof, paid out of pocket for the G7 CGM (or related additional items) to help manage their diabetes, or the diabetes of someone to whom they are a guardian/personal representative.

105.    The G7 CGM is subject to at least three different kinds of defects, none of which was adequately disclosed by Dexcom to consumers: a defect respecting the sensors, in which the sensors are subject to unreasonable frequency of failure, and wherein the sensors were coated in a coating as of approximately December 2013 which rendered them less accurate (the "Sensor Defect"); a defect respecting the G7 CGM's receiver, wherein the receiver was subject to catastrophic failure due to a defect in manufacture that caused it to fail to emit a signal even where glucose levels were dangerously high or dangerously low (the "Receiver Defect"); and a defect respecting the software for the G7 CGM's mobile application, which was, like the Receiver Defect, subject to recall (the "Application Defect.") (together, the "Defects"). In other words, the G7 CGM has been subject to serious defects respecting all three of its basic components – had Dexcom not failed to disclose those defects, Plaintiffs would have paid less for the G7 CGM devices or not bought them at all.

A.    **G7 CGM Background**

106.    The G7 CGM is a Class II medical device that was first cleared by the United States Food and Drug Administration ("FDA") on or around December 7, 2022

for all types of diabetes in people aged two years and older, pursuant to Section 510(k) of the Food, Drug, and Cosmetic Act ("510(k)") as 510(k) number K213919.

107.   The predicate device for the G7 CGM was the Dexcom G6 Glucose Monitoring System, 510(k) number K201328.

108.   The G7 System is an interoperable CGM intended to continuously measure the glucose in the interstitial fluid, calculate the glucose reading, and make this value information available to the user. It has three components: 1) the G7 Glucose Sensing Subsystem ("G7 Sensor"), 2) the Mobile Applications Subsystem ("G7 App"), and 3) the G7 Receiver Subsystem ("G7 Receiver") (together, the the "G7 CGM," "G7 System," "G7," and/or "the G7 Device" ).



109.   The G7 CGM is intended to replace fingerstick testing of blood glucose for diabetic treatment, including by detecting hypoglycemic and hyperglycemic episodes and facilitating insulin therapy treatments. It is also intended to autonomously communicate with digitally connected devices. [3]

---

[3] https://www.accessdata.fda.gov/cdrh_docs/reviews/K213919.pdf

110. The G7 Sensor comprises the sensor applicator and on-body wearable, which includes a Bluetooth Low Energy (BLE) molded transmitter, adhesive patch, and sensor. The sensor, a small and flexible wire, is inserted by the applicator into the subcutaneous tissue.

111. The G7 Sensor has an expected wear period of up to 10 days with an extended 12-hour grace period after the sensor session. Customers accordingly must repeatedly purchase G7 Sensors in order for the G7 System to function.

112. The G7 Sensor's wire converts glucose into an electrical current, and the transmitter samples that current. The transmitter's onboard algorithm converts these measurements into estimated glucose values and calculates the glucose rates of change, which are sent to the G7 App and/or the G7 Receiver every five minutes.

113. The G7 CGM is also designed to communicate estimated glucose values, trend, and system information to other compatible electronic interfaces. These data can also be reliably and securely transmitted to other connected devices, including automated insulin dosing systems, for diabetes management.



B.    **Dexcom's Advertising of the G7 CGM**

114. The G7 CGM's advertised purpose is to provide accurate, real-time glucose readings with alerts and alarms for hypoglycemia and hyperglycemia, via either the Dexcom Receiver or the G7 Apps on a compatible smartphone or smartwatch, and was

advertised as a replacement for fingerstick blood glucose testing for diabetes treatment decisions.

115.    Dexcom advertised the G7 CGM as:

- requiring "no fingersticks;"
- the "most accurate CGM cleared by the FDA;"
- providing "simple alerts to keep you safe," including alerts before "you go too low or when you're high;"
- allowing customers to "make better decisions about food, activity, and medication in the moment;" and
- the "only CGM to offer a predictive low alert that can recognize potentially dangerous hypo-incidences before they occur." [4]



**Simple alerts**
Alerts warn you before you go too low or when you're high, so you can make more informed glucose decisions.

---

[4] *See* https://www.ispot.tv/ad/1oJm/dexcom-g7-single-most-important-thing-you-can-do-no-fingersticks#:~:text=Users%20praise%20the%20Dexcom%20G7,activity%20will%20impact%20their%20numbers; https://adage.com/video/dexcom-g7-feels-like-magic/; https://investors.dexcom.com/news/news-details/2022/Dexcom-G7-Receives-FDA-Clearance-The-Most-Accurate-Continuous-Glucose-Monitoring-System-Cleared-in-the-U.S/default.aspx

116.    Dexcom's advertisements, packaging, and website also claimed the G7 CGM "delivers peace of mind with timely alerts" and "helps prevent dangerous highs and lows." Dexcom further represented that the G7 CGM was "FDA-cleared," "clinically proven to be accurate," and provided "seamless connectivity" for critical alerts. The advertisements failed to inform consumers that the C7 CGM had any defects or that it had at any point been adulterated – a fact confirmed by the FDA when the FDA would find the C7 CGM has been "misbranded" because components of it were changed without authorization.

117.    Reasonable consumers, especially people with insulin-treated diabetes, depend on accurate sensor readings and audible, vibration, and visual alerts to prevent severe hypoglycemia or hyperglycemia. They likewise depend on a working application without software defects.

118.    Dexcom's marketing omitted material facts about the G7 CGM's design, manufacturing, and software defects that caused system alerts to fail or delay, and glucose readings to be inaccurate. Plaintiffs and the other Class Members relied on these omissions in deciding to purchase and use the G7 CGM, as had the omitted information been disclosed, Plaintiffs would have either paid less for the device or not purchased it at all.

**C.    Unauthorized Design Change**

119.    For example, in or about December 2023, Dexcom implemented a change to a critical sensor membrane coating used in the G7 CGM's sensors, substituting a new proprietary coating that internal testing showed performed worse across all measured accuracy metrics.

120.    Dexcom made this design change without submitting a new 510(k) notification to the FDA, despite regulations requiring clearance for material modifications to core device components affecting performance or safety.

121.    This undisclosed alteration degraded accuracy and reliability, increasing the risk that users would receive false high or false low glucose readings, or no readings at all.

122.    For example, after the sensor material change, Dexcom experienced a sharp rise in accuracy-related complaints reported to the FDA's MAUDE database.

123.    Data compiled through late 2024 show that, relative to its market share, Dexcom's G7 CGM generated approximately 22% more accuracy-related complaints than anticipated, while its competitor, Abbott, logged 68% fewer complaints, adjusted for market share.

124.    The sharp rise in G7 CGM complaints indicates a systemic degradation in accuracy tied to Dexcom's unauthorized material change.

125.    Despite the rise in complaints and internal knowledge that the unauthorized material change and alert failures compromised safety, accuracy, and reliability, Dexcom continued to market the G7 CGM aggressively as "the most accurate" and "best-in-class" CGM and continued to conceal the G7 CGM's defects. These omissions were material to consumers' purchasing decisions and caused Plaintiffs and the other Class Members to pay a price premium for a product that did not perform as represented.

**D.    G7 CGM Complaints**

126.    Even before the unauthorized design change, Dexcom regularly and consistently received complaints involving the G7 CGM, mostly concerning the inaccurate and unreliable G7 Sensors. Such complaints put Dexcom on notice as to the problems with the G7 CGM as early as 2023.

127.    Numerous users have reported dangerous incidents stemming from G7 CGM malfunctions, including loss of consciousness, hospitalizations, and near-fatal hypoglycemic episodes. In several cases, users experienced silent failures of the app or receiver immediately preceding these events. In at least one documented instance, a user

died after relying on G7 CGM data showing normal glucose while the sensor had actually failed.[5]

128.    In addition, some users report that the G7 Sensors consistently fail before the intended 10-day wear span. Such premature failure forces users to request replacements, which are sometimes delayed.[6]

129.    For example, Dexcom received the following Medical Device Reports from patients and healthcare professionals. On or about June 20, 2023:

---

**DEXCOM, INC. DEXCOM G7 SENSORS; SENSOR, GLUCOSE, INVASIVE**                                        Back to Search Results

**Model Number** G7
**Device Problems** Defective Alarm (1014); Product Quality Problem (1506); Device Sensing Problem (2917); Wireless Communication Problem (3283)
**Patient Problem** Hypoglycemia (1912)
**Event Date** 06/20/2023
**Event Type**  Injury
**Event Description**
Dexcom g7 3 out of 6 sensors failed within 2 hours, the other 3 sensors lost connection to the reader for hours at a time and then filled in the missing information when they regained connection since the information is used for treatment information. I am not able to trust the information to determine how much insulin to take. This is a failure of the purpose of the medical device so it is not usable. Medicare pays quite a bit for these sensors and is being ripped off. The device did not alarm for a low blood sugar and that could allow me to go into a coma or to die. This failure is dangerous. Reference reports: #mw5118742, #mw5118743, #mw5118744, #mw5118745, #mw5118746, #mw5118747.

**Search Alerts/Recalls**

---

130.    On or about August 17, 2023:

---

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**                Back to Search Results

**Model Number** G7
**Patient Problem** No Clinical Signs, Symptoms or Conditions (4582)
**Event Date** 08/17/2023
**Event Type**  Injury
**Event Description**
I am a current user of dexcom g7. I have had repeated sensor failures. There have been times when i go to insert my next sensor and the needle has separated into two parts. The sensors will stop reading for up to three hours sometimes. I have had countless replacements.

**Search Alerts/Recalls**

---

[5] https://hntrbrk.com/dexcom/

[6] https://hntrbrk.com/dexcom/

131.   On or about September 23, 2023:

| | |
|---|---|
| **DEXCOM, INC. DEXCOM G7 SENSOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** | Back to Search Results |

**Model Number** G7
**Patient Problem** Insufficient Information (4580)
**Event Date** 09/23/2023
**Event Type** malfunction
**Event Description**
I use a dexcom g7 continuous glucose monitoring sensor and a dexcom receiver.I have experienced over the last 3-4 months that the majority (80%) of my dexcom g7 sensors either fail to transmit data to the receiver or my iphone (sensor loss) or sensor failed status.Of the last uncensored that i have received from my pharmacy or directly from dexcom as replacements for the failed sensors these sensors also fail.Other times the sensor says that my blood glucose level is 370 and when i do a finger stick my actual reading is 193.Other times when a get an urgent blood glucose low level alert my actual blood glucose level is perfectly normal.

**Search Alerts/Recalls**

132.   On or about October 4, 2023:

| | |
|---|---|
| **DEXCOM, INC. G7 CONTINUOUS GLUCOSE MONITOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** | Back to Search Results |

**Model Number** G7
**Patient Problem** Insufficient Information (4580)
**Event Date** 10/04/2023
**Event Type** malfunction
**Event Description**
My dexcom 7 continuous glucose monitoring continuously reports very inaccurate blood glucose values.The device says my glucose is very high, when it is within acceptable range as verified by a blood glucose meter.Conversely, the g7cgm will report an extremely low reading when (again) the blood meter shows that my readings are within an acceptable range.The cgm sensor reader is constantly disconnecting from the sensor, even when the reader is within 3 feet of the sensor.I am on the third sensor, and each one fails in the same fashion; frequent disconnections, and inaccurate readings after multiple calibration samples.The test results above are from my blood glucose meter.The other test results are what the g7 shows for glucose at a time within 30 seconds from the blood glucose reading.Reference reports: mw5146833, mw5146834.

**Search Alerts/Recalls**

133.   On or about October 18, 2023:

| | |
|---|---|
| **DEXCOM, INC. DEXCOM G7 CGM SYSTEM; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** | Back to Search Results |

**Model Number** G7
**Patient Problems** Anxiety (2328); Sleep Dysfunction (2517)
**Event Date** 10/18/2023
**Event Type** Injury
**Event Description**
Reporter called stating that the dexcom g7 continuous glucose monitoring device has been reading his wife's blood glucose levels incorrectly since obtaining it (approximately 3-4 weeks ago).On multiple occasions, the device is giving readings that are 30 to 60 points too high or too low.The device awakens her (alarm) due to the false readings causing her anxiety and loss of sleep (she has dementia).She has been hospitalized several times since starting to use the device resulting in approximately (b)(4).In medical bills (hospitalization, ambulance, etc.) based on false readings that the device is providing hence, unnecessary treatment.Reporter has contacted the manufacturer about this problem but he states that all they do is send a replacement which does the same thing all over again.Reporter states that prior to using the dexcom g7, his wife was using the freestyle libre which worked much more accurately and with minimal problems.

**Search Alerts/Recalls**

FIRST AMENDED CLASS ACTION COMPLAINT

134. On or about December 30, 2023:

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Sleep Dysfunction (2517)
**Event Date** 12/30/2023
**Event Type** malfunction
**Event Description**
Patient is pregnant with gestational diabetes.Dexcom g7 cgm provided incorrect blood sugar data resulting in alarms for low blood sugar which kept the pregnant person awake.Alarms stopped at (b)(6) 2023 at 12:31 am.Today (b)(6) 2024 6:44am pst, device quit working -- 4 days before it was supposed to.The response from dexcom has been inadequate and prior sensors starting (b)(6) 2023 have been rife with quality issues related to accuracy.We have reached out to dexcom and have found their response to be lacking.This is life or death for diabetic patients and people with gestational diabetes and needs full regulatory attention.Photos show the device serial and the fact that it's now offline with 4 days left.

**Search Alerts/Recalls**

135. On or about January 18, 2024:

**DEXCOM, INC. G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Hypoglycemia (1912)
**Event Date** 01/18/2024
**Event Type** Injury
**Event Description**
I have had only a 50 percent success rate with my dexcom g7 sensors.They fail to attach, fail prematurely, and fail to give accurate readings.Most recently i experienced a low blood sugar event while in a vehicle with no immediate access to glucose when the cgm said my sugars were fine.It then later showed my blood sugar crashing so low the meter only showed "low" with no number after i dealt with the low sugar event.It constantly fails to report readings sometimes saying to wait hours for it to reconnect.Diabetics do not have hours to wait.The device fails to fulfill its function.In addition, dexcom can't help.Their support form uses such an outdated address database it doesn't recognize my home address and refuses to provide access to support without it.The devices are dangerous in that it is a medical device providing inaccurate and misleading health data that can lead to permanent damage or even death.The fact the company blocks support behind address validation is insane.I put in a random address that exists to attempt to get support but all they did was ship a replacement sensor to that address without even contacting me personally about the issues.A faulty medical device with no support has no place in society.This device is just plain dangerous.My experiences are not alone.I have found a number of online complaints of the exact same issues.Failure of sensor to start, to attach, premature device failure, inaccurate readings.Diabetics cannot afford to be misinformed about the glucose levels.No information is better than bad information.Misinformation can lead to death.At the time of writing this the device is stating my blood sugar is low, which is not accurate.

**Search Alerts/Recalls**

136. On or about January 11, 2024:

**DEXCOM, INC. DEXCOM; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problems** Hyperglycemia (1905); Diabetic Ketoacidosis (2364)
**Event Date** 01/11/2024
**Event Type** Injury
**Event Description**
This has happened on multiple occasions.We switched our type 1 diabetic son (7yo) from the dexcom g6 to the dexcom g7.We have had nothing but issues.The biggest concern and most terrifying is how inaccurate the cgm readings are compared to finger sticks.His cgm was reading 43 at school, i arrive and did finger sticks; his glucose was 358!!!.I took multiple readings to make sure that was correct, and it was.What if these numbers had been reversed? what if cgm read 358, he was really 43 and his pump dumped insulin to correct the high glucose.This past friday ((b)(6) 2024), cgm said 135 (and that he'd be in range all day which is highly unlikely for a 7yo t1) and finger stick was 429.He had produced ketones as a result of not receiving enough insulin from his pump since the cgm was "in range" for a minimum of 8hrs.This should not be happening.Not every type 1 diabetic can feel if they are high or low.What if he was sleeping? as a parent, we rely on technology like this to be more accurate especially since dexcom prides itself on "no finger pricks" with the g7.Of course we can not rely on technology 24/7.I always check accuracy 12hrs after inserting a new cgm.I also always finger poke if he shows symptoms (excessive thirst from high glucose or saying he's hungry from low glucose).

**Search Alerts/Recalls**

FIRST AMENDED CLASS ACTION COMPLAINT

137. On or about February 1, 2024:

| | |
|---|---|
| **DEXCOM, INC. G7 CONTINUOUS GLUCOSE MONITOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** | Back to Search Results |

**Model Number** G7
**Patient Problem** Insufficient Information (4580)
**Event Date** 02/01/2024
**Event Type** Injury
**Event Description**
Hello, i am a type 1 diabetic and use the dexcom g7 continuous glucose monitor (cgm) to manage my blood glucose levels and to get warnings if my glucose is going dangerously low or high.The new dexcom g7 series cgm has proven to be inaccurate and has consistent error codes and failures.Each g7 is to be worn for 10 days and majority of the time fails, gives wildly inaccurate bg readings and stops monitoring my blood glucose around day 6 or 7 for no other reason than "system failure".After months of trying the g7 and hearing from other diabetics, it is obvious this product was not ready or reliable enough to be launched and dexcom rushed the upgrade from g6 to g7.The price of these cgms continue to rise and are being rushed to market before they are ready to use, making one of the only cgms on the market inaccurate and dangerous.I've been a diabetic for 32 years and have used the dexcom cgms for a decade.This is by far their most inaccurate and dangerous continuous glucose monitor they have produced.In my own experience the product fails about 40% of the time and does not report my glucose then crashes.I have reported the problem to dexcom and have for months but they don't have any new answers.They are obviously aware of the issue and have even edited their app and website to make contacting customer service and to get a replacement device more difficult because they are having so many calls from customers experiencing the same g7 "system failure".Please look into why this product fails at such a higher rate than the previous ones and if this was evident before launching the new g7 to the public.Also, when i say inaccurate blood glucose reading, my dexcom bg readings can be at least 100 point off from the bg reading on my finger stick meter which is considered the more accurate standard reading.This can result in deadly insulin dosages.

**Search Alerts/Recalls**

138. On or about March 11, 2024:

| | |
|---|---|
| **DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** | Back to Search Results |

**Model Number** G7
**Patient Problem** No Clinical Signs, Symptoms or Conditions (4582)
**Event Date** 03/11/2024
**Event Type** malfunction
**Event Description**
We have experienced, consistent problems with the new dexcom cgm model g7.We get false alarms readings, that don't comport with bgm testing.And units that fall off.The g6 model works well, but the g7 model is very problematic.

**Search Alerts/Recalls**

139. On or about March 13, 2024:

| | |
|---|---|
| **DEXCOM, INC. DEXCOM G7 CONTINUOUS GLUCOSE MONITORING SYSTEM; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** | Back to Search Results |

**Model Number** G7
**Patient Problem** No Clinical Signs, Symptoms or Conditions (4582)
**Event Date** 03/13/2024
**Event Type** Injury
**Event Description**
Reporter called with complaint that the dexcom g7 blood glucose monitoring system that is used to monitor her 10-year-old son's blood glucose has been having frequent outages with no readings, no output and consistent malfunctions/failures in the past 3 weeks. This is a life-threatening situation for a 10-year-old child who is dependent on this device.The unpredictability of the device is dangerous and causes increased anxiety for parents and caretakers.Reporter stated she has been waiting eight days (placed a ticket with dexcom engineering) for a call back and has heard nothing from dexcom since.Reporter said that she has over 60 screenshots of device malfunctions and failures and she would like to share them with the fda.

**Search Alerts/Recalls**

FIRST AMENDED CLASS ACTION COMPLAINT

140.   On or about June 18, 2024:

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Hemorrhage/Bleeding (1888)
**Event Date** 06/18/2024
**Event Type** Injury
**Event Description**
Total of 2 dexcom g7 sensors failed, one causing serious bleeding.Dexcom support refusing to acknowledge there was an issue with the product and will not replace devices.Submitted dexcom support tickets on 6/18/2024 and spoke to a representative stating no replacements would be mailed 6/25.Ref report: mw5156744.

**Search Alerts/Recalls**

141.   On or about June 21, 2024:

**DEXCOM, INC. DEXCOM G7 CGM; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Hyperglycemia (1905)
**Event Date** 06/21/2024
**Event Type** Injury
**Event Description**
I am experiencing a greater than 50% failure rate on my dexcom g7 sensors.I have been using the g7 for about one month.The last 3 sensors have failed.The last 2 never gave accurate readings from the point they were inserted.Since these sensors work with my tandem x2 insulin pump's control iq software to automatically adjust insulin, the failure has caused high blood glucose levels.This morning i woke up with a cgm reading in the 120's mg/dl when i checked against my blood glucose meter it was reading over 220mg/dl.After 6 calibrations throughout the day it still was not within 20 mg/dl at any point.Most readings where well over 50mg/dl off.I replaced the sensor only to experience the same lack of accuracy after the warmup period.I did not have many of these issues when using the g6 and never had 2 fail back-to-back.I know they use jabil to manufacture these and i have had issues with other products they make.Mostly in the inability to read engineering drawings and falsified inspection reports.Reference reports: #mw5156572, #mw5156573, #mw5156574, #mw5156575.

**Search Alerts/Recalls**

142.   On or about June 30, 2024:

**DEXCOM INC. DEXCOM G7 SENSOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED** Back to Search Results

**Model Number** G7
**Patient Problem** No Clinical Signs, Symptoms or Conditions (4582)
**Event Date** 06/30/2024
**Event Type** malfunction
**Event Description**
Our dexcom g7 sensor failed again in the middle of the night.I am insulin dependent and must have this working.I can't afford to be paying for something that doesn't work.The g7 sensor has now failed four times this year alone, mostly in the last 3 months.Please investigate this product as it is very dangerous.Reference report: mw5157005, mw5157006, mw5157007.

**Search Alerts/Recalls**

143.   On or about August 9, 2024:

FIRST AMENDED CLASS ACTION COMPLAINT

---

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**    Back to Search Results

**Model Number** G7
**Patient Problem** Hypoglycemia (1912)
**Event Date** 08/09/2024
**Event Type** malfunction
**Event Description**
I've been using the dexcom g7 continuous glucose monitor for the last several months.Recently the sensors will not stay connected to the receiver (in this case my cell phone).Every time i try to check my blood glucose reading it tells me there is an error.Sometimes i can work around this by turning my phone's bluetooth off and then back on, but this works for a very short amount of time.This error is happening multiple times per day and often overnight, leaving me vulnerable to dangerously low blood sugars overnight (normally the sensor would alert me in that situation, but with no readings it won't do that).I have contacted dexcom about this issue.They responded that it was normal.I requested a follow up call, because the sensor is unusable and this does not seem normal, and they never responded to that request.This issue has gotten noticeably worse over the last 3 sensors i've used.Some days every single time i try to check my blood sugar (5-8 times per day) it fails to give me a reading. Often it shows no information for the previous 4-12 hours.The bluetooth workaround takes 10-30 minutes to reconnect the sensor and start receiving data, and does not help to keep the sensor connected.Ref reports: mw5158742, mw5158743.

**Search Alerts/Recalls**

144.    On or about November 4, 2024:

**DEXCOM, INC. G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**    Back to Search Results

**Model Number** G7
**Patient Problem** No Clinical Signs, Symptoms or Conditions (4582)
**Event Date** 11/04/2024
**Event Type** malfunction
**Event Description**
I have been using the dexcom g7 for the past 2 months, and have had to replace the sensor three times.This is a huge failure rate that has been confirmed not to be user error.Their customer service seems to be to try to blame the user as much as possible ("were you sleeping on that arm?", "did you calibrate in mobi vs dexcom?" "for any treatment decision we recommend using a finger stick") rather than accept that there is an issue.I am six months pregnant with type 1 diabetes and rely on the dexcom g7 + tandem mobi insulin pump to keep both me and my baby healthy.I also work for a medical device company and a 10-20% failure on something like this would be unacceptable.Please investigate.Most recently i was alerted of an urgent low below 50points, when i tested, i was actually at 117.If i had reacted to the urgent low and treated this, i may have higher blood sugar.Thankfully i checked by finger pricking, but what's the point of a sensor if i can't trust it 20% of the time?.

**Search Alerts/Recalls**

145.    On or about November 15, 2024:

**DEXCOM INC. G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**    Back to Search Results

**Model Number** G7
**Patient Problem** Insufficient Information (4580)
**Event Date** 11/15/2024
**Event Type** Injury
**Event Description**
G7 sensor failed.4 of my last 5 failed.Reference reports: mw5162629, mw5162630, mw5162631.

**Search Alerts/Recalls**

146.    On or about November 26, 2024:

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**    Back to Search Results

**Model Number** G7
**Patient Problem** Diabetic Ketoacidosis (2364)
**Event Date** 11/26/2024
**Event Type** Injury
**Event Description**
Dexcom g7 sensor had been reading that glucose was in range, when in fact it was over 400.This caused me to have dka as this controls my insulin pump as well.This could have resulted in my death.Dexcom was contacted and did not care only concern was to replace the sensor.This is a huge error on dexcom part and needs to be corrected.I have had to miss work and am seeking medical care due to the faulty equipment.Lives are at risk for faulty equipment.This needs to be escalated immediately.Thank you.The finger stick was too high to register.

**Search Alerts/Recalls**

FIRST AMENDED CLASS ACTION COMPLAINT

147.    On or about November 29, 2024:

---

**DEXCOM, INC DEXCOM G7 GLUCOSE SENSOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**                                         Back to Search Results

**Model Number** G7
**Patient Problem** Hyperglycemia (1905)
**Event Date** 11/29/2024
**Event Type**  malfunction
**Event Description**
Dexcom g7 blood glucose sensors fail a rate of 60%.Failure mode is to severely understate the blood glucose reading compared to the actual level.Typical readings for a failed sensor are below 50 mg/dl during actual blood glucose of 350 mg/dl.Impact of understatement is that the connected insulin pump will restrict insulin thereby causing continued elevation of blood glucose in the patient.A complicating factor is that there is no indication to the patient that the sensor is failing and so the patient has no indication to intercede and manually dose insulin.

**Search Alerts/Recalls**

---

148.    On or about December 1, 2024:

---

**DEXCOM, INC. DEXCOM G7 CONTINUOUS GLUCOSE MONITORING SYSTEM; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**                    Back to Search Results

**Model Number** G7
**Patient Problem** Hypoglycemia (1912)
**Event Date** 12/01/2024
**Event Type**  Injury
**Event Description**
Dexcom g7 multiple sensor failures and incorrect glucose levels causing me to miss hypoglycemic incidents or taking insulin when readings were falsely high.In the last 2 months my dexcom g7 sensors ((b)(6) approved, prescription needed) have failed.Most recently, on december 1 i inserted new sensor at 7:30 pm central standard time (cst) and it failed while i was sleeping.I applied a new sensor at 8:30 am central standard time (cst) and it failed at 1:30 central standard time (cst), inserted new sensor and sensor read 100 points higher than meter reading.Have reported all incidents to dexcom with sensor serial numbers.Reference report: mw5164040, mw5164041.

**Search Alerts/Recalls**

---

149.    On or about January 6, 2025:

---

**DEXCOM, INC. DEXCOM G7 SENSOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**                                         Back to Search Results

**Model Number** G7
**Patient Problem** No Clinical Signs, Symptoms or Conditions (4582)
**Event Date** 01/06/2025
**Event Type**  malfunction
**Event Description**
Dexcom g7 sensors regularly fail (2 in a row now for me, several others as well) before sensor sessions are over (<10 days).Additionally, my most recent replacement sensor would not connect to any device rendering it unusable (total loss, no useful measurements ever).Dexcom will not stand by their products use period even though their products are used exactly per their instructions.Prescriptions are for the exact number of sensors based on product stated use period, but devices often do not last the stated use period (in this case 10 days) leaving patient without measurement tools for diabetic control.Dexcom limits their free replacements to three per year despite much more frequent failure rate.In my case i use all available devices to interact with the dexcom g7 including the dexcom receiver, an iphone and an apple watch (it's not a receiving device issue).Ref report: mw5164458.

**Search Alerts/Recalls**

---

150.    On or about January 10, 2025:

---

FIRST AMENDED CLASS ACTION COMPLAINT

---

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Hypoglycemia (1912)
**Event Date** 01/10/2025
**Event Type** malfunction
**Event Description**
Placed dexcom g7 sensor.I have used the product for years and am familiar with the placement technique.In the last 6 months my order of 9 sensors has had numerous faulty insertions resulting in the inability to use the sensor and forcing me to get replacements.This happened again at placement on (b)(6) 2025.I have no additional sensors in as much as my new order is being shipped.I have no ability to monitor my blood glucose and there are times during sleep when my monitor would go off due to too low of a blood glucose level waking me up before i crashed.This is happening way too frequently.Faulty sensors are not an efficient way to monitor daily and nighttime blood glucose.Low glucose levels are a life-threatening incident.Reference reports: mw5164770, mw5164771, mw5164772, mw5164773, mw5164774, mw5164775, mw5164776, mw5164777, mw5164778.

**Search Alerts/Recalls**

---

151.   On or about January 19, 2025:

---

**DEXCOM, INC. DEXCOM G7 CONTINUOUS GLUCOSE MONITOR; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Hypoglycemia (1912)
**Event Date** 01/19/2025
**Event Type** Injury
**Event Description**
Severe hypoglycemia from inaccurate continuous glucose monitor.Cgm (continuous glucose monitor) reading 340 fingerstick 112.

**Search Alerts/Recalls**

---

152.   On or about January 22, 2025:

---

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problems** Emotional Changes (1831); Distress (2329); Sleep Dysfunction (2517)
**Event Date** 01/22/2025
**Event Type** Injury
**Event Description**
Today i had to discontinue my current dexcom cgm(continuous glucose monitor) due to sensor failure after 6 days of wear.This is the third dexcom cgm in a row which has failed.The company is supposed to be replacing the other two but they have not arrived yet.I was told by technical support line staff they are behind at the warehouse.I am now switching to another brand (freestyle).Another support team member said on a recorded line it was a "bad batch" which surprised me they said this out loud.I have had very low and high readings inaccurate and unstable glucose values with alarms and very significantly different from my true glucose by fingerstick.These are waking me up at night and interrupting me at work.This makes it difficult for me to work, sleep, drive, eat and properly dose my insulin as i am afraid of going too low.I cannot trust the devices and it is very stressful and damaging to my mental health and physical wellbeing.I am paying for the replacements out of pocket because the company has not been able to replace the failed devices fast enough.The first one failed on (b)(6) 2025.This makes me concerned there is a truly bad batch out there and not just a run of bad luck or anything am doing wrong.I have talked to my endocrinologist and asked for dexcom support to rule out anything i could be doing.They are not falling off.I am worried there is a manufacturing defect.Reference report: mw5165336, mw5165337.

**Search Alerts/Recalls**

---

153.   On or about January 25, 2025:

---

**DEXCOM, INC. DEXCOM G7; INTEGRATED CONTINUOUS GLUCOSE MONITORING SYSTEM, FACTORY CALIBRATED**     Back to Search Results

**Model Number** G7
**Patient Problem** Insufficient Information (4580)
**Event Date** 01/25/2025
**Event Type** Injury
**Event Description**
This item has failed 4 times within a month.The replacements take at least 2 weeks to receive.This leaves my child without proper monitoring of his blood sugar for days while waiting for the replacement of their failed product.

**Search Alerts/Recalls**

---

FIRST AMENDED CLASS ACTION COMPLAINT

154.   Despite an emerging and dangerous trend concerning the G7 Sensors and other issues, Dexcom continued to mislead consumers and the public regarding the quality, safety, reliability, and accuracy of the G7 System.

**E.   FDA Inspection, Warning Letter, and Recalls**

155.   The U.S. Food and Drug Administration (FDA) inspected Dexcom's San Diego, California facility from October 21, 2024 through November 7, 2024 and Dexcom's Mesa, Arizona facility from June 10, 2024 through June 14, 2024. *See* Exhibit C, FDA Warning Letter.

156.   After the inspections, on or about June 14, 2024 and November 7, 2024, the FDA issued a Form 483 Report and List of Inspectional Observations. *Id*.

157.   Dexcom responded to the Form FDA 483 on July 9, 2024, October 9, 2024, December 3, 2024, January 7, 2025 and January 10, 2025. *Id*.

158.   On March 4, 2025, the FDA sent a Warning Letter to Dexcom, stating that the inspection revealed the G7 CGMs "are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820." *Id*. That Warning Letter is included herein as Exhibit A to this Complaint, and incorporated as if fully set forth herein.

159.   The FDA issues warning letters to notify manufacturers when it "finds that a manufacturer has significantly violated FDA regulations."[7]

160.   In the Warning Letter, the FDA noted violations, including, but not limited to, the following:

---

[7] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/about-warning-and-close-out-letters

a. Dexcom failed to "establish procedures for monitoring and control of process parameters for a validated process, as required by 21 CFR 820.75(b)," such as by failing to establish "procedures to adequately monitor and control the glucose and acetaminophen concentrations;"

b. Dexcom failed to "establish procedures to adequately validate a process whose results cannot be fully verified by subsequent inspection and test, as required by 21 CFR 820.75(a)"

c. Dexcom "failed to validate the manufacturing specifications for the concentration of glucose in the dishes used as part of [their] [sic] test;"

d. Dexcom failed to "adequately establish procedures for design input, as required by 21 CFR 820.30(c);"

e. Dexcom failed to "establish procedures for design changes, as required by 21 CFR 820.30(i);"

f. Dexcom failed to "adequately establish procedures for design output, as required by 21 CFR 820.30(d);"

g. Dexcom failed to "establish adequate procedures for design validation to ensure that devices conform to defined user needs and intended uses, as required by 21 CFR 820.30(g);" and

FIRST AMENDED CLASS ACTION COMPLAINT

h. Dexcom failed to "establish adequate procedures for corrective and preventive actions, as required by 21 CFR 820.100(a)." *Id*.



161. In the FDA Warning Letter, the FDA also determined that Dexcom changed the G7 Sensor's coating, despite the fact that testing showed greater variability and "a significant difference in the standard deviation (SD) of glucose sensitivities," without submitting a new 510(k) application. FOIA requests have revealed FDA inspection records, which stated that Dexcom sold the sensors with the new coating despite Dexcom's own studies showing that, by "every accuracy metric," sensors with that coating are inferior to the coating actually approved by FDA. *Those sensors remain in circulation*, with the public having no way of knowing whether the sensors they are relying on are these sensors that by "every accuracy metric" are less accurate.

FIRST AMENDED CLASS ACTION COMPLAINT

162.   The FDA found: "The larger inaccuracies in (b)(4)[8]-coated sensors cause higher risks for users who rely on the sensors to dose insulin or make other diabetes treatment decisions. Therefore, we do not agree your firm has shown equivalency between (b)(4) and (b)(4) to justify that such a change does not require a new premarket submission. The variability differences could significantly affect the safety or effectiveness of the device within the meaning of 21 CFR 807.81(a)(3)." *Id*.

163.   The Warning Letter ultimately confirmed the G7 Device is "misbranded under…21 U.S.C. § 352(o)" because the device was "introduced or delivered for introduction into interstate commerce for commercial distribution…with major changes or modifications to the devices without submitting a new premarket notification to FDA." The offending sensors remain in circulation.

164.   On May 12, 2025, Dexcom issued an Urgent Medical Device Correction ("May 12, 2025 Correction") for G7 Receivers because defective foam or assembly errors could cause the receiver speaker to lose contact with the printed circuit board, leading to missed audible alerts for low/high glucose.[9]

165.   In the May 12, 2025 Correction, Dexcom stated:

> If a user experiences a lack of receiver audio due to this issue, it may result in delayed and/or missed detection of severe hypoglycemia or hyperglycemia. Although a speaker test could identify a defective receiver, the malfunction can occur at any time without warning, even if the receiver has recently passed the speaker test. As of May 2025, 112 complaints have been received globally with confirmed association to this speaker malfunction. Globally, there have been 56 reports of severe adverse events (including seizure, loss of consciousness, vomiting, or unspecified

---

[8] In an FDA warning letter, "(b)(4)" denotes information that has been designated "trade secrets and commercial or financial information" pursuant to the Freedom of Information Act, 5 U.S.C. § 552(b)(4).

[9] https://dexcompdf.s3.us-west-2.amazonaws.com/Urgent-Medical-Device-Correction-Notification_US.pdf

hypoglycemic/hyperglycemic symptoms; all users recovered) potentially associated with this issue.

166.    On June 9, 2025, Dexcom issued an Urgent Medical Device Correction Update ("June 9, 2025 Update").

167.    The June 9, 2025 Update asked users to verify whether their G7 Receiver is affected by the issue regarding audible alerts, contact Dexcom if the G7 Receiver is affected, and recommended all users to regularly test the speaker every time they charge the G7 Receiver.[10]

168.    On June 16, 2025, the FDA classified Dexcom's May 12, 2025 Correction and June 9, 2025 Update as a Class I recall, the most serious type of recall. The FDA further noted that the use of G7 CGMs may "cause serious injuries or death." *See* Exhibit A, FDA Recall No. 213508. Despite the seriousness of the issue, not every G7 CGM was actually recalled.

169.    On July 24, 2025, Dexcom sent an Urgent Medical Device Correction Notification ("July 24, 2025 Notification").

170.    The July 24, 2025 Notification alerted users to a design error in the G7 App and asked all users to install the latest version. Specifically, the G7 App contained a software design error that caused a "Sensor Failed" alert to be missed.

171.    On September 4, 2025, the FDA classified Dexcom's July 24, 2025 Notification as a Class I recall, again alerting consumers that the use of G7 CGMs may "cause serious injuries or death." *See* Exhibit B, FDA Recall No. 215006.

172.    From December 2023 through May 2025, Dexcom uniformly represented the G7 CGM as "the most accurate," "best-in-class," and as reliably providing alerts and alarms for dangerous glucose levels, including with connected devices. Dexcom failed to disclose the material risks and frequency of: (a) silent receiver speaker failures, (b) app behavior that suppresses "Sensor Failed" alerts and ends sessions without notice; and

---

[10] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=213508

(c) inaccuracies in glucose readings. A reasonable consumer would consider these facts important in deciding to purchase and in determining the price they were willing to pay.

173.    According to former Dexcom engineers and quality-control personnel, the company's internal culture increasingly prioritized growth and market share over compliance and patient safety. Multiple high-level executives, including leaders of engineering, quality assurance, and operations, departed during or shortly after the period when these quality failures and regulatory findings arose. One former senior director publicly stated that "Dexcom definitely dropped the ball" and that its "arrogance" in ignoring safety warnings "needed to be reset."[11]

**F.    Additional G7 CGM Defects**

174.    Although the G7 Sensor is the only component of the G7 CGM that has not been subject to recall, as identified in the complaints above, it is defective and puts patients at risk of experiencing, among others, hypoglycemia, hyperglycemia, and diabetic ketoacidosis.

175.    The G7 Sensor lacks safeguards to prevent anomalous data from being displayed, allowing signals that may have been flagged in previous generations of sensors to produce inaccurate blood glucose readings for users.

176.    In addition, the G7 Sensor produces a noisy signal due to its signal processing algorithm.

177.    The G7 Sensor has a wire coating that is prone to "goosenecking" – a sensor failure in which the thin filament loops out through the insertion hole rather than going under the skin, resulting in a bent wire resembling a goose's neck and rendering the sensor non-functional.

178.    The glucose-limiting membrane on the G7 Sensor is also defective, producing false positives from oxygen levels rather than glucose. It can also cause a

[11] https://hntrbrk.com/dexcom/

change in temperature to appear as a change in glucose concentration. Because the glucose-limiting membrane responds to oxygen levels and temperature changes, there is an increased risk that the G7 CGM will calculate and report inaccurate blood glucose levels to users.

179.    These defects render the device unfit for its intended medical purpose, endanger users who rely on it for real-time diabetes management, and undermine Dexcom's representations that the G7 CGM provides continuous, accurate, and safe glucose monitoring.

## G.    G7 CGM Warranties

180.    Dexcom expressly warranted in labeling, advertisements, packaging materials, and press releases that the FDA cleared the G7 CGM, that it provides timely and audible alerts for low and high blood glucose, and that it is accurate.

181.    In its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

182.    Dexcom impliedly warranted in labeling, advertisements, packaging materials, and press releases that the G7 CGM is safe, not defective, accurate, and of high quality.

183.    Dexcom also impliedly warranted in labeling, advertisements, packaging materials, and press releases that the G7 CGM was manufactured and sent to users in accordance with the FDA-cleared specifications and processes, and/or of the same quality as those cleared by the FDA.

184.    Dexcom also impliedly warranted that the devices sold were not adulterated within the meaning of 21 U.S.C. § 351(f)(1)(B) and/or misbranded under 21 U.S.C. § 352(o).

**H.     Fraudulent Omission Allegations**

185.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Dexcom responsible for failing to rectify the Defects mentioned above and disseminating false and misleading marketing materials regarding the G7 CGM. Plaintiffs' claims arise out of Dexcom's fraudulent concealment of these Defects, and its representations about the efficacy, accuracy, and quality of those monitors.

186.   Plaintiffs allege that Dexcom knew, or was reckless in not knowing, about the Defects at all relevant times, specifically at the time Plaintiffs and the other members of the proposed Classes acquired their G7 CGM or related accessories—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's Defects. Dexcom was under a duty to disclose these Defects based on its exclusive knowledge of them and its concealment of them.

187.   Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Dexcom:

a.   **Who:** Dexcom actively concealed the Defects—including but not limited to the Sensor Defect, the Application Defect, and the Receiver Defect—from consumers, as alleged above. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of specific individuals at Dexcom responsible for such decisions.

b.   **What**: Dexcom knew, or was reckless or negligent in not knowing, that the G7 CGMs contained these Defects. Dexcom concealed these Defects and made representations about the efficacy, quality, and accuracy of these monitors.

c.   **When**: Dexcom concealed material information regarding the Defects at all times, and it made representations about the efficacy, quality, and accuracy of the G7 CGM starting at a time currently unknown to Plaintiffs and continuing through the time

1    of sale, on an ongoing basis, to this day, as alleged above. Dexcom has still not disclosed

2    the truth about the full scope of these Defects to anyone outside of the company. It has

3    taken insufficient actions to inform consumers about the true nature of these Defect in the

4    G7 CGM.

5        d.  **Where**: Dexcom concealed material information regarding the true nature of

6    the Defects in every communication it had with Plaintiffs and the other Class Members

7    about the G7 CGM, and, particularly, its efficacy, quality, and accuracy. Plaintiffs are not

8    aware of any documents, communications, or other items in which Dexcom has disclosed

9    the truth about the full scope of the Defects in the G7 CGM to anyone outside of

10   Dexcom. Such information is not adequately disclosed in any sales documents, displays,

11   advertisements, warranties, manuals, or on Dexcom's website.

12       e.  **How**: Dexcom concealed the Defects from Plaintiffs and the other Class

13   Members by making inaccurate representations about the efficacy, quality, and accuracy

14   of the G7 CGM. Dexcom actively concealed the truth about the existence, scope, and

15   nature of the Defects from Plaintiffs and the other Class Members at all times, even

16   though it knew about the Defects and knew that information about the Defects would be

17   important to a reasonable consumer. Dexcom promised in its marketing materials that the

18   G7 CGM had qualities that it does not have.

19       f.  **Why**: Dexcom actively concealed material information about these Defects

20   in the G7 CGM for the purpose of inducing Plaintiffs and the other Class Members to

21   acquire the G7 CGM or related accessories, rather than using competitors' glucose

22   monitors. Had Dexcom disclosed the truth, for example in its advertisements or other

23   materials or communications, Plaintiffs and the other Class Members (and any reasonable

24   consumer) would have been aware of them, and they would not have acquired the G7

25   CGM or additional accessories for it, or they would have paid less for them.

26

27

28

1

## **TOLLING OF THE STATUTE OF LIMITATIONS**

2 **A.     Discovery Rule Tolling**

3          188.    Plaintiffs and the other Class Members could not have discovered through

4 the exercise of reasonable diligence that their G7 CGMs were defective within the time

5 period of any applicable statutes of limitation.

6          189.    Neither Plaintiffs nor the Class Members knew or could have known of the

7 defects of the G7 CGM, at least until after the FDA Class 1 recall was publicly issued.

8 **B.     Fraudulent Concealment Tolling**

9          190.    Throughout the time period relevant to this action, Dexcom concealed from

10 and failed to disclose to Plaintiffs and the other Class Members vital information about

11 the character, quality, nature, and risks of the G7 CGM.

12          191.    Indeed, Dexcom kept Plaintiffs and the other Class Members ignorant of

13 vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor

14 the other Class Members could have discovered the defects, even upon reasonable

15 exercise of diligence.

16          192.    Despite its knowledge of defects, Dexcom failed to disclose and concealed,

17 and continue to conceal, this critical information from Plaintiffs and the other Class

18 Members, even though, at any point in time, it could have done so through individual

19 correspondence, media release, or by other means.

20          193.    Dexcom affirmatively and actively concealed the defects by continuing to

21 market the G7 CGMs despite knowing they were defective.

22          194.    Plaintiffs and the other Class Members justifiably relied on Dexcom to

23 disclose the defects in the G7 CGMs that they purchased, because those defects were

24 hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class

25 Members.

26

27

28

195.   Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

**C.     Estoppel**

196.   Dexcom was under a continuous duty to disclose to Plaintiffs and the other Members of the Class the true character, quality, nature, and risks of the G7 CGM.

197.   Dexcom knowingly concealed the true character, quality, nature, and risks of the G7 CGM.

198.   Based on the foregoing, Dexcom is estopped from relying on any statutes of limitations in defense of this action.

## INJURIES AND DAMAGES

199.   Plaintiffs and the other Class Members reasonably relied on Dexcom's failure to disclose the G7 CGM's Defects. Had Dexcom disclosed the truth, Plaintiffs and the other Class Members would not have purchased, or would have paid less for, the G7 CGM and/or related additional items. They suffered economic injury, including price-premium damages, out-of-pocket costs for replacements, loss of the benefit of the bargain, and time/money spent troubleshooting, updating, and replacing devices.

200.   Dexcom's omissions were a substantial factor in causing Plaintiffs' and the other Class Members' injuries.

## CLASS ACTION ALLEGATIONS

201.   This action has been brought and may be properly maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

202.   Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiffs bring this action on behalf of themselves and all others similarly situated (referred to throughout this Complaint as "Class Members") as representative of the following Classes :

a. **Nationwide Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the United States.

b. **Arizona Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Arizona.

c. **Arkansas Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Arkansas.

d. **California Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of California.

e. **Colorado Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Colorado.

f. **Florida Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Florida.

g. **Georgia Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Georgia.

h. **Massachusetts Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the Commonwealth of Massachusetts.

i. **Michigan Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Michigan.

j. **Minnesota Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Minnesota.

k. **New Jersey Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of New Jersey.

l. **New York Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of New York.

m. **North Carolina Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of North Carolina.

n. **Ohio Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Ohio.

o. **Oklahoma Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Oklahoma.

p. **Oregon Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Oregon.

q. **Pennsylvania Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the Commonwealth of Pennsylvania.

r. **South Carolina Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of South Carolina.

s. **Texas Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Texas.

t. **Virginia Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the Commonwealth of Virginia.

u. **Washington Class**: All natural persons who purchased the G7 CGM, or any component thereof or accessory therefor, in the State of Washington.

203. The Classes exclude Dexcom's officers, directors, and employees; any entity in which one or more of the Dexcom has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of each of the Dexcom. The Classes also exclude members of the judiciary to whom this case is assigned, their families, and members of their staff.

204. The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands of Class Members, as well as tens of thousands of members of the Classes from each state. While the precise number of Class Members is unknown to Plaintiffs, it may be ascertained from Dexcom's records. Class

Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

205. The members of the Classes are readily ascertainable from the business records of Dexcom.

206. There are questions of law and fact common to Plaintiffs and the other Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. whether Dexcom designed, advertised, marketed, distributed, sold, or otherwise placed the G7 CGM into the stream of commerce in the United States;

    b. whether Dexcom engaged in the conduct alleged herein;

    c. whether Dexcom's alleged conduct violates applicable law;

    d. whether Dexcom misled Class Members regarding the quality, benefits, and/or risks of the G7 CGM;

    e. whether Dexcom had actual or imputed knowledge of the alleged defects and failed to disclose such defects and/or their risks to Plaintiffs and the other Class Members;

    f. whether Dexcom's acts, inactions, and practices complained of herein violated the state consumer protection statutes alleged herein;

    g. whether Dexcom's acts, inactions, and practices complained of herein breached the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*

    h. whether Dexcom's acts, inactions, and practices complained of herein breached express warranties;

    i. whether Dexcom's acts, inactions, and practices complained of herein breached the implied warranty of merchantability;

j. whether Dexcom's acts, inactions, and practices complained of herein constituted fraudulent omission;

k. whether Dexcom's acts, inactions, and practices complained of herein constituted unjust enrichment;

l. whether Plaintiffs and the other Class Members overpaid for their G7 CGM as a result of the defects alleged herein;

m. whether the Class Members are entitled to damages, restitution, equitable relief, statutory damages, civil penalties, punitive damages, exemplary damages, and/or other relief; and

n. the amount and nature of relief to be awarded to Plaintiffs and the other Class Members.

207. Plaintiffs' claims are typical of those of the Class Members because all were exposed to the same omissions regarding the G7 CGM. Plaintiffs and the other Class Members all suffered similar harm as a result of Dexcom's uniform conduct. Neither Plaintiffs nor the other Class Members would have purchased the G7 CGM, or would have paid less for it, had they known of the defects and risks in the G7 CGM, as well as its lack of benefits. Plaintiffs and the other Class Members suffered damages as a direct and proximate result of the same wrongful practices in which Dexcom engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class Members.

208. Plaintiffs can and will fairly and adequately represent and protect the interests of Class Members, including those from states and jurisdictions where they do not reside. Plaintiffs have no interests that conflict with the interests of the Classes. In addition, Plaintiffs have retained counsel competent and experienced in complex litigation and class actions, and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

209. A class action is superior to any other available method for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation, making individual suits impracticable. Class treatment of common issues avoids inconsistent or contradictory judgments, reduces delay and expense for all parties and the courts, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by one tribunal. No unusual difficulties are likely to arise in managing this case as a class action. Proceeding on a class-wide basis will conserve judicial resources and ensure that the rights of all Class Members are fairly and efficiently protected. The common issues arising from Dexcom's conduct affecting Class Members, as described *supra*, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

## CAUSES OF ACTION

210. Plaintiffs bring these causes of action on behalf of the Classes, as defined herein.

211. With respect to common law claims, the application of California law is appropriate because the corporate decisions regarding the G7 CGM that give rise to this action occurred in California, Dexcom has its principal place of business in California, and it is in the interest of California public policy to apply California law.

**A.   Claims Brought on Behalf of the Nationwide Class**

### COUNT I

### FRAUDULENT OMISSION

### California Law

### On Behalf of Plaintiffs and the Nationwide Class

212. Plaintiffs repeat and reallege paragraphs 1–211 as if fully set forth herein.

213.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

214.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiffs and the other Class Members.

215.    Having been aware of the G7 CGM's Defects and, having known that Plaintiffs and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiffs and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

216.    Dexcom did not disclose the Defects to Plaintiffs and the other Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

217.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

218.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

219.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

FIRST AMENDED CLASS ACTION COMPLAINT

220.    In purchasing the G7 CGMs and related products, Plaintiffs and the other Class Members, who planned to use the G7 CGM to help manage diabetes for diabetes management, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiffs and the other Class Members would not have known of these Defects otherwise.

221.    Had Plaintiffs and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

222.    Through their omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiffs and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

223.    As a direct and proximate result of Dexcom's omissions, Plaintiffs and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

224.    Therefore, Plaintiffs and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1

## COUNT II

2

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,

3

## 15 U.S.C. §§ 2301 *et seq.*

4

### On Behalf of Plaintiffs and the Nationwide Class

5      225.   Plaintiffs repeat and reallege paragraphs 1–211 as if fully set forth herein.

6      226.   Plaintiffs bring this claim individually and on behalf of the other members of

7 the Nationwide Class (the "Class," for purposes of this Count).

8      227.   The G7 CGM and its component parts are "consumer products" as defined

9 by 15 U.S.C. § 2301(1) because they are tangible personal property that are distributed in

10 commerce and that are normally used for personal purposes.

11      228.   Plaintiffs and the other Class Members are "consumers" as defined by 15

12 U.S.C. § 2301(3) because they are buyers of the G7 CGM, a consumer product. The G7

13 CGM's warranties also apply to Plaintiffs and the other Class Members.

14      229.   Dexcom is a "supplier" as defined by 15 U.S.C. § 2301(4) because it is a

15 corporation engaged in the business of making a consumer product directly or indirectly

16 available to consumers.

17      230.   Dexcom is also a "warrantor" as defined by 15 U.S.C. § 2301(5) because it

18 gives or offers to give a written warranty or may be obligated under an implied warranty.

19      231.   Dexcom gave written warranties, as defined by 15 U.S.C. § 2301(6), and

20 implied warranties, as defined by 15 U.S.C. § 2301(7), to Plaintiffs and the other Class

21 Members, as described above.

22      232.   Dexcom sold the G7 CGMs to Plaintiffs and the other Class Members with

23 written warranties, as defined by 15 U.S.C. § 2301(6), and implied warranties, as defined

24 by 15 U.S.C. § 2301(7).

25      233.   Such warranties provided that the G7 CGMs were supposed to be fit for their

26 ordinary purpose as continuous glucose monitors, conform to their labeling and

27 representations, and pass without objection in the trade, among others.

28

234.   Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

235.   Specifically, in its Limited Warranty, Dexcom expressly warranted that "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

236.   Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

237.   Dexcom also breached these warranties because the G7 CGMs were incapable of accurately and continuously monitoring blood glucose levels and were therefore not fit for their intended and advertised use. Further, the G7 CGMs fail to perform as represented and would not pass without objection in the trade.

238.   Dexcom had opportunities to cure the G7 CGM's defects but have failed to do so. Plaintiffs and the other Class Members who report malfunctioning monitors receive replacement monitors with the same defects and problems, even after the FDA issued two recalls of the G7 CGM.

239.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

240.    Under 15 U.S.C. § 2310(d)(1), Plaintiffs and the other Class Members are entitled to recover damages for Dexcom's breaches of written and implied warranties, including the purchase price of their G7 CGMs or the overpayment or diminution in value of the devices. Under § 2310(d)(2), Plaintiffs and the other Class Members are also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**Cal. Com. Code § 2313**

**On Behalf of Plaintiffs and the Nationwide Class**

241.    Plaintiffs repeat and reallege paragraphs 1–211 as if fully set forth herein.

242.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

243.    At all relevant times, Dexcom is and was a "seller," Plaintiffs are and were "buyers" and the G7 CGM is and was a "good" within the meaning of the statute.

244.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

245.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

246.    Specifically, in its Limited Warranty, Dexcom expressly warranted that "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

247.   Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

248.   Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiffs and the other Class Members whole and because Dexcom is unable to and/or has refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

249.   Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiffs and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

250.   Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiffs; and the other Class Members' remedies would be insufficient to make them whole. Plaintiffs, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

251.   The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiffs sought to purchase the item for exactly and only that purpose.

252.   Plaintiffs and the other Class Members were deprived of the benefit of their bargain.

253.   Plaintiffs and the other Class Members were financially harmed.

254.   Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiffs and the other Class Members.

255.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

256.   Therefore, Plaintiffs and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Cal. Civ. Code § 1792**

**On Behalf of Plaintiffs and the Nationwide Class**

257.   Plaintiffs repeat and reallege paragraphs 1–211 as if fully set forth herein.

258.   Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

259.   Plaintiffs and the other Class Members bought G7 CGMs manufactured by Dexcom.

260.   At all relevant times, Dexcom is and was a "seller," Plaintiffs are and were "buyers," and the G7 CGM is and was a "good" within the meaning of the statute.

261.   At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

262. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

263. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled, and did not measure up to the promises or facts stated on the label.

264. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

265. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

266. Plaintiffs and the other Class Members were financially harmed.

267. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiffs and the other Class Members.

268. Therefore, Plaintiffs and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

269. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

270.    Plaintiffs and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiffs and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT V**

**UNJUST ENRICHMENT**

**California Law**

**On Behalf of Plaintiffs and the Nationwide Class**

271.    Plaintiffs repeat and reallege paragraphs 1–211 as if fully set forth herein.

272.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

273.    Dexcom has benefited from selling at an unjust profit defective G7 CGMs that had artificially inflated prices due to Dexcom's concealment of defects, and Plaintiffs and the other Class Members have overpaid for these devices.

274.    Dexcom has received and retained unjust benefits from Plaintiffs and the other Class Members, and inequity has resulted.

275.    It is inequitable and unconscionable for Dexcom to retain these benefits.

276.    Because Dexcom concealed its fraud and deception, Plaintiffs and the other Class Members were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

277.    Dexcom knowingly accepted the unjust benefits of its misconduct.

278.    As a result of Dexcom's misconduct, the amount of its restitution should be disgorged and returned to Plaintiffs and the other Class Members in an amount to be determined at trial.

**B.    Claims Brought on Behalf of Statewide Classes**

**1.    Claims Brought on Behalf of the Arizona Class**

**COUNT VI**

**FRAUDULENT OMISSION**

**Arizona Law**

**On Behalf of Plaintiff and the Statewide Class**

279.    Plaintiff Joyce Cameron ("Plaintiff" for purposes of this Count) and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

280.    Plaintiff brings this claim individually and on behalf of the other members of the Arizona Class (the "Class," for purposes of this Count).

281.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

282.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

283.   Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

284.   Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

285.   The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

286.   The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

287.   In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

288.   Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

289.   Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

290.   As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

291.   Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT VII

## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

### Ariz. Rev. Stat. Ann. § 44-1521 et seq.

### On Behalf of Plaintiff and the Statewide Class

292.   Plaintiff Joyce Cameron ("Plaintiff" for purposes of this Count) and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

293.   Plaintiff brings this claim individually and on behalf of the other members of the Arizona Class (the "Class," for purposes of this Count).

294.   Dexcom engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521 et seq., when they misled consumers regarding the defects of the G7 CGM. As a direct result of Dexcom's deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and the other Class Members suffered and will continue to suffer economic loss.

295.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

Dexcom notifying it of additional state Classes and claims. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

296.    Dexcom's deceptive, unfair, unlawful, and unconscionable practices included but were not limited to the following practices, done knowingly: failing to disclose and/or concealing critical information about the G7 CGM's Defects; making an unauthorized design change to a critical sensor; and misrepresenting the G7 CGM's quality and accuracy to potential customers.

297.    Dexcom's actions and failure to act—including its false and misleading representations and concealment of material facts regarding the efficacy of the G7 CGM—constitute acts, uses or employment by Dexcom of unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations. These actions and omissions further constitute the knowing concealment, suppression, or omission of material facts, done with the intent that Plaintiff and the other Class Members rely upon such concealment, suppression, or omission of material facts in connection with the sale of Dexcom's merchandise, in violation of the Arizona Consumer Fraud Act.

298.    Dexcom's unfair and deceptive trade practices have caused injuries to consumers, and the public will benefit from cessation of these unlawful actions through this litigation.

299.    By reason of Dexcom's unlawful acts, Plaintiff and the other Class Members have suffered ascertainable loss and damages.

300.    As a direct and proximate result of Plaintiff's and the other Class Members' reasonably anticipated use of Dexcom's products as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Dexcom, Plaintiff and the other Class Members suffered economic loss.

301.    Dexcom's conduct with respect to its design and sale of the G7 CGM to Plaintiff and the other Class Members was fraudulent, malicious, oppressive, willful, reckless, and/or grossly negligent, and Dexcom's conduct indicates a wanton disregard of the rights of others, justifying an award of punitive or exemplary damages.

302.    Due to the above, Dexcom is liable to Plaintiff and the other Class Members for compensatory, as well as exemplary, multiple, and/or punitive damages to the extent available and as applicable, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

303.    Plaintiff and the other Class Members would not have purchased the G7 CGMs, or alternatively they would have paid less for them, had the truth about the ineffective nature of Dexcom's products been disclosed. Plaintiff, on behalf of themselves and the other Class Members, seek to recover any and all damages they have suffered.

304.    Therefore, Plaintiff and Class Members have incurred damages in an amount to be determined at trial, including but not limited to attorneys' fees, costs, interest, and any such further relief as this Court deems equitable and just.

**COUNT VIII**

**BREACH OF EXPRESS WARRANTY**

**Ariz. Rev. Stat. § 47-2313, et seq.**

**On Behalf of Plaintiff and the Statewide Class**

305.    Plaintiff Joyce Cameron ("Plaintiff" for purposes of this Count) and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

306.    Plaintiff brings this claim individually and on behalf of the other members of the Arizona Class (the "Class," for purposes of this Count).

307.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

308.   Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

309.   Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

310.   Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

311.   Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

312.   Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

313.   Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff,

1    individually and on behalf of the other Class Members, seeks all remedies as allowed by

2    law.

3    314.    The G7 CGM's ability to monitor blood glucose safely, effectively, and

4    accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly

5    and only that purpose.

6    315.    Plaintiff and the other Class Members were deprived of the benefit of their

7    bargain.

8    316.    Plaintiff and the other Class Members were financially harmed.

9    317.    Dexcom's breach of express warranties was a substantial factor in causing

10    the harm suffered by Plaintiff and the other Class Members.

11    318.    Plaintiff Grisoli, individually and on behalf of the other Class Members,

12    notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer

13    protection statutes and related legal violations, through a notice letter dated October 15,

14    2025, and delivered by email to Dexcom's counsel, who responded on November 19,

15    2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

16    Dexcom notifying it of additional state Classes and claims. Prior to filing this FAC on

17    December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of

18    additional state Classes and claims. Dexcom also received notice of the Defects through

19    numerous complaints filed against it, other similar lawsuits filed against it, and its own

20    internal knowledge.

21    319.    Therefore, Plaintiff and the other Class Members have incurred damages—

22    including but not limited to actual damages, compensatory damages, restitution, equitable

23    relief, statutory damages and penalties, and punitive and exemplary damages—in an

24    amount to be determined at trial.

25

26

27

28

1

2

3

4

**COUNT IX**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Ariz. Rev Stat § 47-2314**

**On Behalf of Plaintiff and the Statewide Class**

5    320.    Plaintiff Joyce Cameron ("Plaintiff" for purposes of this Count) and Class

6    Members incorporate by reference paragraphs 1–211 of this Complaint as if fully set

7    forth herein and further allege as follows.

8    321.    Plaintiff brings this claim individually and on behalf of the other members of

9    the Arizona Class (the "Class," for purposes of this Count).

10    322.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a

11    "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

12    323.    At the time of purchase, Dexcom was a merchant in the business of selling

13    and manufacturing the medical devices, specifically glucose monitors.

14    324.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality

15    and fit for ordinary use.

16    325.    The G7 CGM was not of the same quality as that generally acceptable in the

17    trade, would not pass without objection in the trade, was not fit for the ordinary purposes

18    for which it is used, was not adequately labeled, and did not measure up to the promises

19    or facts stated on the label.

20    326.    The G7 CGM is not fit for its ordinary purpose because of the Defects

21    described above, including (but not limited to) the Sensor Defect, Receiver Defect, and

22    the Application Defect, that can result in malfunctions including (but not limited to) silent

23    receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends

24    without notice, "goosenecking," and inaccuracies in glucose readings

25    327.    In addition, the G7 Sensor is often inaccurate and fails to last the intended

26    10.5-day wear span.

27    328.    Plaintiff and the other Class Members were financially harmed.

28

FIRST AMENDED CLASS ACTION COMPLAINT

329.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

330.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

331.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

332.    Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

# COUNT X

## UNJUST ENRICHMENT

### Arizona Law

### On Behalf of Plaintiff and the Statewide Class

333.    Plaintiff Joyce Cameron ("Plaintiff" for purposes of this Count) and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

334.    Plaintiff brings this claim individually and on behalf of the other members of the Arizona Class (the "Class," for purposes of this Count).

335.    As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

336.    In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

337.    As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

338.    Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

339.    At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

340.    Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs and/or additional related items when they otherwise would not

have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

341.    Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

342.    Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

343.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

344.    Dexcom has no justification for retaining these benefits when the G7 CGM contains fatal Defects. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

345.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

**2.    Claims Brought on Behalf of the Arkansas Class**

**COUNT XI**

**FRAUDULENT OMISSION**

**Arkansas Law**

**On Behalf of Plaintiff and the Statewide Class**

346.    Plaintiff Eboni Scott ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

347.    Plaintiff brings this claim individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

348.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

349.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

350.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

351.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

352.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not

limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

353.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

354.    In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

355.    Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

356.    Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

357.    As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

358.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

# COUNT XII

## VIOLATION OF ARKANSAS'S DECEPTIVE TRADE PRACTICES ACT

### Ark. Code Ann. §§ 4-88-101 *et seq.*

#### On Behalf of Plaintiff and the Statewide Class

359.   Plaintiff Eboni Scott ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

360.   Plaintiff brings this claim individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

361.   The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

362.   The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-108, also prohibits in connection with the sale or advertisement of goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) The concealment, suppression, or omission of any material fact with the intent that others rely upon the concealment, suppression, or omission."

363.   By the conduct described in detail above and incorporated herein, Dexcom engaged in deceptive trade practices.

364.   Dexcom's omissions regarding the defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the G7 CGMs or related products for the G7 CGM.

365.   Dexcom intended for Plaintiff and the other Class Members to rely on its omissions regarding the Defects.

366.   Plaintiff and the other Class Members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Defects, as evidenced by Plaintiff and the other Class Members' purchases of G7 CGMs.

367.   Had Dexcom disclosed all material information regarding the Defects to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased G7 CGMs or would have paid less to do so.

368.   Dexcom's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

369.   In addition to being deceptive, the business practices of Dexcom were unfair because Dexcom knowingly sold Plaintiff and the other Class Members G7 CGMs with above-mentioned Defects that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class Members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class Members or to competition under all of the circumstances. Moreover, in light of Dexcom's exclusive knowledge of the Defects, the injury is not one that Plaintiff or the other Class Members could have reasonably avoided.

370.   As a direct and proximate result of Dexcom's unfair and deceptive trade practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members who purchased the G7 CGMs would not have purchased the G7 CGMs or products for the G7 CGMs, or, alternatively, would have paid less for them had the truth about the Defects been disclosed. Plaintiff and the other Class Members also suffered diminished value of their products.

371.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19,

2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

372. Plaintiff and the other Class Members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ark. Code Ann. § 4-88-113.

## COUNT XIII

## BREACH OF EXPRESS WARRANTY

### Ark. Code Ann. § 4-2-313

### On Behalf of Plaintiff and the Statewide Class

373. Plaintiff Eboni Scott ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

374. Plaintiff brings this claim individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

375. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

376. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

377. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

378.    Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

379.    Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

380.    Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

381.    Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

382.    The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

383.    Plaintiff and the other Class Members were deprived of the benefit of their bargain.

384.    Plaintiff and the other Class Members were financially harmed.

385.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

386.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

387.    Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

# COUNT XIV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Ark. Code Ann. § 4-2-314
### On Behalf of Plaintiff and the Statewide Class

388.    Plaintiff Eboni Scott ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

389.    Plaintiff brings this claim individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

390.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

391.    Dexcom is and was at all relevant times a merchant with respect to medical devices, specifically glucose monitors, under Ark. Code Ann. § 4-2-104.

392.    Pursuant to Ark. Code Ann. § 4-2-314, a warranty that the G7 CGMs were in merchantable condition was implied by law, and the G7 CGMs were bought and sold subject to an implied warranty of merchantability.

393.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

394.    The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled, and did not measure up to the promises or facts stated on the label.

395.    The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

396.    In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

397.    Plaintiff and the other Class Members were financially harmed.

398.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

399.    Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

400.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer

protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

401. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT XV**

**UNJUST ENRICHMENT**

**Arkansas Law**

**On Behalf of Plaintiff and the Statewide Class**

402. Plaintiff Eboni Scott ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

403.   Plaintiff brings this claim individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

404.   As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

405.   In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

406.   As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

407.   Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

408.   At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

409.   Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished them.

410.   Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

FIRST AMENDED CLASS ACTION COMPLAINT

411. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

412. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

413. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

414. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

### 3. Claims Brought on Behalf of the California Class

### COUNT XVI

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,

### Cal. Bus. & Prof. Code §§ 17200 *et seq*.

### On Behalf of Plaintiff and the Statewide Class

415. Plaintiffs Kelly Grisoli, Jason Feinberg, and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

416. California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business acts or practices."

417. The California Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent business acts or practices." Cal. Bus. & Prof. Code § 17200.

418.   Dexcom violated Cal. Bus. & Prof. Code § 17200 by knowingly selling defective G7 CGMs and omitting disclosure of material information, including the G7 CGM's defects and risks.

419.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

420.   All the misconduct alleged herein occurred in the conduct of Dexcom's business.

421.   Dexcom's conduct was unscrupulous, offensive to established public policy, and fraudulent.

422.   The harm caused by Dexcom's misconduct greatly outweighs any benefit to consumers.

423.   Plaintiffs relied on Dexcom's omissions with respect to the quality, safety, accuracy, and reliability of the G7 CGMs. Plaintiffs and the other Class Members would not have purchased their G7 CGMs or would not have paid as much for them but for Dexcom's omissions.

424.   Plaintiffs, individually and on behalf of members of the Class, request that this Court restore to Plaintiffs and the other Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement.

# COUNT XVII

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDY ACT,

## Cal. Civ. Code §§ 1750 *et seq*.

### On Behalf of Plaintiffs and the Statewide Class

425.   Plaintiffs Kelly Grisoli, Jason Feinberg, and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

426.   The G7 CGM is a "good" as defined by Cal. Civ. Code § 1761(a) because it is a tangible chattel bought for use primarily for personal purposes ("'Goods' means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.").

427.   Plaintiffs and the other Class Members are "consumers" as defined by Cal. Civ. Code § 1761(d) because they are individuals who acquired, by purchase, goods for personal purposes ("'Consumer' means an individual who seeks or acquires, by purchased, any goods or services for personal, family, or household purposes.").

428.   Defendant Dexcom is a "person" as defined by Cal. Civ. Code § 1761(c) because it is a corporation ("'Person' means an individual, partnership, corporation, limited liability company, association, or other group, however organized.").

429.   Plaintiffs and the other Class Members entered into "transactions" with Defendant as defined by California Civil Code § 1761(e) ("'Transaction' means an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement.").

430.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer

protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

431.    The California Consumers Legal Remedy Act (CLRA) prohibits, among other things:

      i.   Misrepresenting the source, sponsorship, approval, or certification of goods or services. Cal. Civ. Code § 1770(a)(3);

      ii.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have. Cal. Civ. Code § 1770(a)(5);

      iii.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Cal. Civ. Code § 1770(a)(7); and

      iv.   Advertising goods or services with the intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9).

432.    Plaintiffs and the other Class Members relied on Dexcom's omissions and were financially harmed as a result of Dexcom's conduct.

433.    As a direct and proximate result of Dexcom's violation of the foregoing statutes and regulations, Plaintiffs and the other Class Members have suffered injury.

434.    Plaintiff Grisoli provided notice in writing and sent by certified mail, return receipt requested, to Dexcom's principal place of business within California on October 15, 2025, as required by Cal. Civ. Code § 1782. Defendant Dexcom is hereby on notice

of its particular Cal. Civ. Code § 1770 violations and Plaintiff demands that Dexcom (1) rectify the problems associated with the actions detailed above and (2) give notice to all affected consumers of Dexcom's intent to so act.

435.    Dexcom failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification of the letter. Thus, pursuant to Cal. Civ. Code §§ 1780(a), 1780(e), and 1782(a), Plaintiffs seek, in addition to equitable relief, actual damages, restitution, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

436.    Pursuant to California Civil Code § 1780(d), the affidavit showing that this action has been commenced in the proper forum is attached hereto.

## COUNT XVIII

### BREACH OF THE SONG-BEVERLY CONSUMER WARRANTY ACT,

### Cal. Civ. Code §§ 1790 *et seq.*

### On Behalf of Plaintiffs and the Statewide Class

437.    Plaintiffs Kelly Grisoli, Jason Feinberg, and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein.

438.    The G7 CGM and its component parts are "consumer goods" as defined by Cal. Civ. Code § 1791(a) because they are products or parts thereof that are used and bought for use primarily for personal purposes and are neither clothing nor consumables ("'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables. 'Consumer goods' shall include new and used assistive devices sold at retail.").

439.    Plaintiffs and the other Class Members are "buyers" as defined by Cal. Civ. Code § 1791(b) because they are individuals who bought consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail ("'Buyer' or 'retail buyer' means any individual who buys consumer goods from a

person engaged in the business of manufacturing, distributing, or selling consumer goods
at retail.").

440.    Dexcom is a "person" as defined by Cal. Civ. Code § 1791(b) because it is a
corporation that engages in the business of manufacturing, distributing, or selling
consumer goods ("As used in this subdivision, 'person' means any individual,
partnership, corporation, limited liability company, association, or other legal entity that
engages in any of these businesses.").

441.    Dexcom is also a "manufacturer" as defined by Cal. Civ. Code § 1791(j)
because it is a corporation that manufactures, assembles, or produces consumer goods
("'Manufacturer' means any individual, partnership, corporation, association, or other
legal relationship that manufactures, assembles, or produces consumer goods.").

442.    Plaintiffs and the other Class Members entered into a "sale" with Defendant
as defined by California Civil Code § 1791(n) ("'Sale' means either of the following: (1)
The passing of title from the seller to the buyer for a price. (2) A consignment for sale.").

443.    Defendant made an express warranty to Plaintiff and the other Class
Members within the meaning of California Civil Code §§ 1791.2 and 1793.2, as
described above.

444.    Defendant impliedly warranted to Plaintiffs and the other Class Members
that the G7 CGMs were "merchantable" within the meaning of California Civil Code
§§ 1791.1(a) and 1792.

445.    Plaintiff Grisoli, individually and on behalf of the other Class Members,
notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer
protection statutes and related legal violations, through a notice letter dated October 15,
2025, and delivered by email to Dexcom's counsel, who responded on November 19,
2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to
Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

446.    The G7 CGMs share common design defects as mentioned above.

447.    The G7 CGMs are covered by Dexcom's express warranty. The Defects mentioned above substantially impair the use, value, and safety of the G7 CGMs to reasonable consumers, including Plaintiffs and the other Class Members.

448.    California Civil Code § 1791.1(a) provides that consumer goods must meet the following requirements in order to fulfill the implied warranty of merchantability: "(1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; and (4) Conform to the promises or affirmations of fact made on the container or label."

449.    Because of the defects, misrepresentations, and omissions mentioned above, the G7 CGMs are not fit for their ordinary purposes, adequately labeled and packaged, and/or do not conform to the promises or affirmations of fact made on the container or label.

450.    Dexcom's sale of defective G7 CGMs to Plaintiffs and the other Class Members violated the Song-Beverly Act's express and implied warranties.

451.    Dexcom failed to repair, replace, or refund Plaintiffs' and Class Members' defective G7 CGMs.

452.    As a result of Dexcom's breach of its express warranties and breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods with substantially impaired value.

453.    Plaintiffs and the other Class Members have been damaged by the diminished value of the G7 CGM resulting from its defects described above.

454.    Pursuant to California Civil Code §§ 1791.1(d), 1793.2, and 1794, Plaintiffs and the other Class Members are entitled to damages and other legal and equitable relief,

including, at their election, the purchase price of their G7 CGMs or the overpayment or diminution in value of the devices, as well as costs and attorneys' fees.

### 4.    Claims Brought on Behalf of the Colorado Class

### COUNT XIX

### FRAUDULENT OMISSION

### Colorado Law

### On Behalf of Plaintiff and the Statewide Class

455.    Plaintiff Jason Scanga ("Plaintiff" for purposes of this Count) and the other Class Members repeat and reallege paragraphs 1–211 as if fully set forth herein..

456.    Plaintiff brings this claim individually and on behalf of the other members of the Colorado Class (the "Class," for purposes of this Count).

457.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

458.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

459.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

460.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

461.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver

FIRST AMENDED CLASS ACTION COMPLAINT

Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

462.   The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

463.   In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

464.   Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

465.   Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

466.   As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

467.   Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable

1  relief, statutory damages and penalties, and punitive and exemplary damages—in an

2  amount to be determined at trial.

3  ## COUNT XX

4  ## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT

5  ## C.R.S.A. §§ 6-1-101 *et seq.*

6  ### On Behalf of Plaintiff and the Statewide Class

7  468.  Plaintiff Jason Scanga ("Plaintiff," for purposes of the Colorado Class's

8  claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

9  469.  Plaintiff brings this count individually and on behalf of the other members of

10  the Colorado Class (the "Class" for purposes of this Count).

11  470.  The Colorado Consumer Protection Act, C.R.S.A. §6-1-105, prohibits

12  "engag[ing] in a deceptive trade practice . . . in the course of the person's business."

13  471.  By the conduct described in detail above and incorporated herein, Dexcom

14  engaged in deceptive trade practices.

15  472.  Plaintiff Grisoli, individually and on behalf of the other Class Members,

16  notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer

17  protection statutes and related legal violations, through a notice letter dated October 15,

18  2025, and delivered by email to Dexcom's counsel, who responded on November 19,

19  2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

20  Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

21  of the Defects through numerous complaints filed against it, other similar lawsuits filed

22  against it, and its own internal knowledge.

23  473.  Dexcom's omissions regarding the defects, described above, which cause the

24  G7 CGM to malfunction, are material facts that a reasonable person would have

25  considered in deciding whether or not to purchase (or pay the same price for) the G7

26  CGM.

27

28

474.    Dexcom intended for Plaintiff and the other Class Members to rely on
Dexcom's omissions regarding the defects.

475.    Plaintiff and the other Class Members justifiably acted or relied to their
detriment upon Dexcom's omissions of fact concerning the above-described defects, as
evidenced by Plaintiff and the other Class Members' purchases of G7 CGM.

476.    Had Dexcom disclosed all material information regarding the defects to
Plaintiff and the other Class Members, Plaintiff and the other Class Members would not
have purchased the G7 CGM or would have paid less to do so.

477.    Dexcom's omissions have deceived Plaintiff, and those same business
practices have deceived or are likely to deceive members of the consuming public and the
other members of the Class.

478.    As a direct and proximate result of Dexcom's deceptive trade practices,
Plaintiff and the other Class Members have suffered ascertainable loss and actual
damages. Plaintiff and the other Class Members who purchased the G7 CGM would not
have purchased the product, or, alternatively, would have paid less for them had the truth
about the defects been disclosed.

479.    Plaintiff and the other Class Members are entitled to recover the actual
damages, attorneys' fees and costs, and all other relief allowed under C.R.S.A. §§ 6-1-
101 *et seq.*

### COUNT XXI

### BREACH OF EXPRESS WARRANTY

### C.R.S.A. § 4-2-313

### On Behalf of Plaintiff and the Statewide Class

480.    Plaintiff Jason Scanga ("Plaintiff," for purposes of the Colorado Class's
claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

481.    Plaintiff brings this count individually and on behalf of the other members of
the Colorado Class (the "Class" for purposes of this Count).

482.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

483.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

484.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

485.    Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

486.    Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

487.    Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

488.    Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

489.   Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

490.   The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

491.   Plaintiff and the other Class Members were deprived of the benefit of their bargain.

492.   Plaintiff and the other Class Members were financially harmed.

493.   Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

494.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

495.   Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT XXII**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**C.R.S.A. § 4-2-314**

**On Behalf of Plaintiff and the Statewide Class**

496.    Plaintiff Jason Scanga ("Plaintiff," for purposes of the Colorado Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

497.    Plaintiff brings this count individually and on behalf of the other members of the Colorado Class (the "Class" for purposes of this Count).

498.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

499.    Dexcom is and was at all relevant times a merchant with respect to medical devices, specifically glucose monitors, under C.R.S.A. § 4-2-104.

500.    Pursuant to C.R.S.A. § 4-2-314, a warranty that the G7 CGM was in a merchantable condition was implied by law, and the G7 CGMs were bought and sold subject to an implied warranty of merchantability.

501.    At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

502.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

503.    The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

504.    The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent

receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

505.    In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

506.    Plaintiff and the other Class Members were financially harmed.

507.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

508.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

509.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

510.    Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the

warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

## COUNT XXIII
## UNJUST ENRICHMENT
### Colorado Law
### On Behalf of Plaintiff and the Statewide Class

511.    Plaintiff Jason Scanga ("Plaintiff," for purposes of the Colorado Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

512.    Plaintiff brings this count individually and on behalf of the other members of the Colorado Class (the "Class" for purposes of this Count).

513.    As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

514.    In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

515.    As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

516.    Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

517.    At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised.

In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

518.    Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

519.    Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

520.    Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

521.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

522.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

523.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

**5.    Claims Brought on Behalf of the Florida Class**

**COUNT XXIV**

**FRAUDULENT OMISSION**

**Florida Law**

**On Behalf of Plaintiff and the Statewide Class**

524.    Plaintiff Laura Stafford ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

525.    Plaintiff brings this count individually and on behalf of the other members of the Florida Class (the "Class" for purposes of this Count).

526.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

527.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

528.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

529.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

530.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not

limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

531.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

532.    In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

533.    Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

534.    Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

535.    As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

536.    Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT XXV**

**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

**Fla. Stat. §§ 501.201 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

537.    Plaintiff Laura Stafford ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

538.    Plaintiff brings this count individually and on behalf of the other members of the Florida Class (the "Class" for purposes of this Count).

539.    The Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201 *et seq.*, states that, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

540.    By the conduct described in detail above and incorporated herein, Dexcom engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

541.    Defendant's omissions regarding the G7 CGM's defects, described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the G7 CGMs or associated products.

542.    Dexcom intended for Plaintiff and the other Class Members to rely on Dexcom's omissions regarding the G7 CGM's defects.

543.    Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's omissions of fact concerning the above-described defects, as evidenced by Plaintiff and the other Class Members' purchases of G7 CGMs.

544.    Had Dexcom disclosed all material information regarding the Defects to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased the products or would have paid less to do so.

545.    Dexcom's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

546.    As a direct and proximate result of Dexcom's unfair and deceptive trade practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members who purchased the G7 CGMs would not have purchased them, or, alternatively, would have paid less for them had the truth about the defects been disclosed. Plaintiff and the other Class Members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under F.S.A. §§ 501.201 *et seq.*

**COUNT XXVI**

**BREACH OF EXPRESS WARRANTY**

**Fla. Stat. § 672.313**

**On Behalf of Plaintiff and the Statewide Class**

547.    Plaintiff Laura Stafford ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

548.    Plaintiff brings this count individually and on behalf of the other members of the Florida Class (the "Class" for purposes of this Count).

549.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

550.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

551.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

552.    Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

553.    Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

554.    Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

555.    Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

556.    Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

557.    The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

558.    Plaintiff and the other Class Members were deprived of the benefit of their bargain.

559.    Plaintiff and the other Class Members were financially harmed.

560.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

561.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

562.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

563.    Finally, due to the Dexcom's breach of warranties as set forth herein, Plaintiff and the other members of the class assert as an additional and/or alternative remedy, as set forth in Fla. Stat. § 672-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all products currently owned.

# COUNT XXVII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### Fla. Stat. § 672.314

### On Behalf of Plaintiff and the Statewide Class

564.    Plaintiff Laura Stafford ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

565.    Plaintiff brings this count individually and on behalf of the other members of the Florida Class (the "Class" for purposes of this Count).

566.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

567.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

568.    A warranty that the G7 CGMs were in merchantable condition is implied by law in the instant transactions, pursuant to Fla. Stat. § 672.316.

569.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

570.    The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

571.    The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

572.    In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

573.    Plaintiff and the other Class Members were financially harmed.

574.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

575.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

576.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

577.    Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT XXVIII**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**Florida Law**

**On Behalf of Plaintiff and the Statewide Class**

578.   Plaintiff Laura Stafford ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

579.   Plaintiff brings this count individually and on behalf of the other members of the Florida Class (the "Class" for purposes of this Count).

580.   To the extent Dexcom's repair or adjust commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law. Dexcom limited the remedies available to Plaintiff and the other members of the class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Dexcom, and/or warranted the quality or nature of those services to Plaintiff.

581.   Dexcom breached this warranty or contract obligation by failing to repair or replace the G7 CGMs as a result of the Defects described above.

582.   As a direct and proximate result of Dexcom's breach of contract or common law warranty, Plaintiff and the other members of the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT XXIX**

**UNJUST ENRICHMENT**

**Florida Law**

**On Behalf of Plaintiff and the Statewide Class**

583.   Plaintiff Laura Stafford ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein..

584.    Plaintiff brings this count individually and on behalf of the other members of the Florida Class (the "Class" for purposes of this Count).

585.    As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

586.    In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

587.    As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

588.    Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

589.    At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

590.    Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

591.    Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

592.    Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

593.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

594.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

595.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

**6.    Claims Brought on Behalf of the Georgia Class**

**COUNT XXX**

**FRAUDULENT OMISSION**

**Georgia Law**

**On Behalf of Plaintiff and the Statewide Class**

596.    Plaintiff John Allen ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

597.    Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

598.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

599.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

600.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

601.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

602.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

603.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

604.    In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

605.    Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional

test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

606.    Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

607.    As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

608.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT XXXI**

**VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**

**Ga. Stat. Ann. §§ 10-1-390 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

609.    Plaintiff John Allen ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

610.    Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

611.    The Georgia Fair Business Practices Act, Ga. Stat. Ann. § 10-1-393, states that, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

612.    By the conduct described in detail above and incorporated herein, Dexcom engaged in deceptive trade practices.

613.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

614.    Dexcom's omissions regarding the G7 CGM's problems, described above, which causes malfunctions with (but not limited to) monitoring glucose and alerting users to dangerous blood-glucose levels, are material facts that a reasonable person would have considered in deciding whether to purchase (or to pay the same price for) the continuous glucose monitors.

615.    Dexcom intended for Plaintiff and the other Class Members to rely on its omissions regarding the G7 CGM.

616.    Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's omissions of fact concerning the above-described glucose monitors, as evidenced by Plaintiff and the other Class Members' purchases of G7 CGM and related products, such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones.

617.    Had Dexcom disclosed all material information regarding the G7 CGM to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased the monitors or would have paid less to do so.

618.    Dexcom's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and other members of the Class.

619.    As a direct and proximate result of Dexcom's unfair and deceptive trade practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members who purchased G7 CGMs would not have done so, or, alternatively, would have paid less for them had the truth been disclosed. Plaintiff and the other Class Members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ga. Stat. Ann. § 10-1-399.

**COUNT XXXII**

**BREACH OF EXPRESS WARRANTY**

**Ga. Stat. Ann. § 11-2-313**

**On Behalf of Plaintiff and the Statewide Class**

620.    Plaintiff John Allen ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

621.    Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

622.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

623.    Dexcom is and was at all relevant times a merchant with respect to medical devices, specifically glucose monitors, under Ga. Stat. Ann. § 11-2-104.

624.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

625.    Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

626.   Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

627.   Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

628.   Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

629.   Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

630.   The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

631.   Plaintiff and the other Class Members were deprived of the benefit of their bargain.

632.   Plaintiff and the other Class Members were financially harmed.

633.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

634.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

635.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

636.    Finally, due to the Dexcom's breach of warranties as set forth herein, Plaintiff and the other members of the class assert as an additional and/or alternative remedy, as set forth in Fla. Stat. § 672-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all products currently owned.

637.    Finally, due to the Dexcom's breach of warranties as set forth herein, Plaintiff and the other members of the class assert as an additional and/or alternative remedy, as set forth in Ga. Stat. § 11-2-313, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all products currently owned.

1

2

3

4

**COUNT XXXIII**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Ga. Stat. Ann. § 11-2-314**

**On Behalf of Plaintiff and the Statewide Class**

5    638.    Plaintiff John Allen ("Plaintiff," for purposes of the Georgia Class's claims)

6    repeats and realleges paragraphs 1–211 as if fully set forth herein.

7    639.    Plaintiff brings this claim individually and on behalf of the other members of

8    the Georgia Class (the "Class," for purposes of this Count).

9    640.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a

10    "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

11    641.    Dexcom is and was at all relevant times a merchant with respect to medical

12    devices, specifically glucose monitors, under Ga. Stat. Ann. § 11-2-104.

13    642.    Pursuant to Ga. Stat. Ann. § 11-2-314, a warranty that the G7 CGMs were in

14    merchantable condition was implied by law, and they were bought and sold subject to an

15    implied warranty of merchantability.

16    643.    At the time of purchase, Dexcom was in the business of selling and

17    manufacturing the G7 CGM.

18    644.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality

19    and fit for ordinary use.

20    645.    The G7 CGM was not of the same quality as that generally acceptable in the

21    trade, would not pass without objection in the trade, was not fit for the ordinary purposes

22    for which it is used, was not adequately labeled and did not measure up to the promises or

23    facts stated on the label.

24    646.    The G7 CGM is not fit for its ordinary purpose because of the Defects

25    described above, including (but not limited to) the Sensor Defect, Receiver Defect, and

26    the Application Defect, that can result in malfunctions including (but not limited to) silent

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

647.    In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

648.    Plaintiff and the other Class Members were financially harmed.

649.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

650.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

651.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

652.    Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the

warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

## COUNT XXXIV
## UNJUST ENRICHMENT
### Georgia Law
### On Behalf of Plaintiff and the Statewide Class

653.   Plaintiff John Allen ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

654.   Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

655.   As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

656.   In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

657.   As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

658.   Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

659.   At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised.

In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

660.    Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

661.    Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

662.    Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

663.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

664.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

665.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

**7.    Claims Brought on Behalf of the Massachusetts Class**

**COUNT XXXV**

**FRAUDULENT OMISSION**

**Massachusetts Law**

**On Behalf of Plaintiff and the Statewide Class**

666.    Plaintiff Spencer Sawicki ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

667.    Plaintiff brings this Count individually and on behalf of all other members of the Massachusetts Class (the "Class," for purposes of this Count).

668.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

669.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

670.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

671.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

672.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not

limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

673.   The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

674.   In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

675.   Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

676.   Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

677.   As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

678.   Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

# COUNT XXXVI

## VIOLATION OF THE DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW

### Mass. Gen. L. ch. 93a, §§ 1 *et seq.*

### On Behalf of Plaintiff and the Statewide Class

679.   Plaintiff Spencer Sawicki ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

680.   Plaintiff brings this Count individually and on behalf of all other members of the Massachusetts Class (the "Class," for purposes of this Count).

681.   Plaintiff, Class Members, Dexcom, and Does 1-100 are each a "person" within the meaning of Mass. Gen. L. ch. 93a, § 1(a).

682.   The purchase of the G7 CGMs by Plaintiff and Class Members constitutes "trade" or "commerce" within the meaning of Mass. Gen. L. ch. 93a, § 1(b).

683.   Massachusetts law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Mass. Gen. L. ch. 93a, § 2(a). Dexcom participated in unfair and deceptive trade practices that violated Massachusetts law as described herein.

684.   Dexcom knew of the problems with the G7 CGM prior to the sale of the products. Dexcom failed to disclose and actively concealed information about the Defects described herein, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

685.   As alleged above, Dexcom made material statements about the quality, reliability, and safety of the G7 CGMs. Dexcom's misrepresentations, omissions, statements, and commentary have included selling and marketing the G7 CGMs as a safe, reliable, and effective way to monitor glucose despite knowledge of the products' defects.

686.   By failing to disclose and by actively concealing the G7 CGM's Defects, and by marketing them as more fully detailed above, Dexcom engaged in unfair or deceptive business practices in violation of the Code of Massachusetts Regulations, §§ 3.02(2) and 3.05(1).

687.   Dexcom's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive reasonable consumers, including Plaintiff, about the true safety, longevity, and reliability of the G7 CGM, the quality of Dexcom's brands, and the true value of the monitors.

688.   Dexcom willfully and knowingly withheld the information about the G7 CGM's defects, with the intent to ensure that consumers would purchase the glucose monitors.

689.   Dexcom's conduct as described herein is unethical, oppressive, or unscrupulous in that Dexcom often misled, denied, and dissuaded knowledge, responsibility, warranty obligations, and relief when complaints were made to them.

690.   Dexcom knew or should have known that its conduct violated Massachusetts law.

691.   Dexcom owed Plaintiff and Class Members a duty to disclose the true safety, quality, longevity, and reliability of the G7 CGMs because Dexcom: (a) Knew the monitor's defects were a material fact that would affect Plaintiff's or Class Members' decisions to buy it; (b) Possessed exclusive knowledge of the dangers and risks posed by the foregoing; (c) Intentionally concealed the foregoing from Plaintiff and Class Members; and/or (d) Made incomplete representations about the safety, quality, and reliability of the foregoing generally while purposefully withholding material facts from Plaintiff that contradicted these representations.

692.    Dexcom's failure to disclose and active concealment of the problems and risks posed by the defects in the G7 CGM were material to Plaintiff and Class Members.

693.    Plaintiff and Class Members suffered ascertainable loss caused by Dexcom's misrepresentations and failure to disclose material information. Had Plaintiff been aware of the defects of the G7 CGM, Plaintiff either would have paid less for the monitor or would not have purchased it at all. Plaintiff would not have purchased additional items—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

694.    Plaintiff did not receive the benefit of his bargain as a result of Dexcom's misconduct.

695.    Plaintiff and Class Members risk irreparable injury as a result of Dexcom's acts and omissions in violation of Massachusetts law, and these violations present a continuing risk to Plaintiff, Class Members, and the general public. Dexcom's unlawful acts and practices complained of herein affect the public interest.

696.    As a direct and proximate result of Dexcom's misconduct, Plaintiff and Class Members received goods that are unreasonably dangerous and have substantially impaired value. Plaintiff and Class Members have suffered incidental, consequential, and other damages.

697.    Thus, pursuant to Mass. Gen. L. ch. 93a, § 9(1)–(3), Plaintiff seek an order enjoining Dexcom's unfair, unlawful, and/or deceptive practices, declaratory relief, actual and statutory damages, attorneys' fees and expenses, and treble damages.

698.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge. Dexcom has long been on notice of the G7 CGM's issues and its violation of Mass. Gen. L. ch. 93a, § 2(a). Therefore, Plaintiff has satisfied the notice requirement of Mass. Gen. L. ch. 93a, § 9(3).

**COUNT XXXVII**

**BREACH OF EXPRESS WARRANTY**

**Mass. Gen. L. ch. 106, § 2-313**

**On Behalf of Plaintiff and the Statewide Class**

699.    Plaintiff Spencer Sawicki ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

700.    Plaintiff brings this Count individually and on behalf of all other members of the Massachusetts Class (the "Class," for purposes of this Count).

701.    Plaintiff and the other Class Members bought G7 CGMs manufactured and marketed to them by Dexcom and that Dexcom intended to be purchased by consumers such as them.

702.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

703.    Dexcom is and was at all relevant times a "merchant" with respect to medical devices under Mass. Gen. L. ch. 106, § 2-104(1) and a "seller" of medical devices under § 2-103(1)(d).

704.    The G7 CGMs are and were at all relevant times "goods" within the meaning of Mass. Gen. L. ch. 106, § 2-105(1).

705.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

706.    Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual

end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

707.   Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

708.   Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

709.   Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

710.   Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

711.   The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

712.    Plaintiff and the other Class Members were deprived of the benefit of their bargain.

713.    Plaintiff and the other Class Members were financially harmed.

714.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

715.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

716.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT XXXVIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Mass. Gen. L. ch. 106, § 2-314
### (On Behalf of Plaintiff and the Statewide Class)

717.    Plaintiff Spencer Sawicki ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

718.    Plaintiff brings this Count individually and on behalf of all other members of the Massachusetts Class (the "Class," for purposes of this Count).

719.    Plaintiff and the other Class Members bought G7 CGMs manufactured and marketed to them by Dexcom and that Dexcom intended to be purchased by consumers such as them.

720.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

721.    Dexcom is and was at all relevant times a "merchant" with respect to medical devices under Mass. Gen. L. ch. 106, § 2-104(1) and a "seller" of medical devices under § 2-103(1)(d).

722.    The G7 CGMs are and were at all relevant times "goods" within the meaning of Mass. Gen. L. ch. 106, § 2-105(1).

723.    Plaintiff and Class Members are buyers as that term is used in Mass. Gen. L. ch. 106, § 2-103(a).

724.    The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

725.    At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

726.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

727.    The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

728.    The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent

receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

729.    In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

730.    Plaintiff and the other Class Members were financially harmed.

731.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

732.    Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

733.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

734.    Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the

FIRST AMENDED CLASS ACTION COMPLAINT

warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

## COUNT XXXIX
## UNJUST ENRICHMENT
### Massachusetts Law
### On Behalf of Plaintiff and the Statewide Class

735.    Plaintiff Spencer Sawicki ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

736.    Plaintiff brings this Count individually and on behalf of all other members of the Massachusetts Class (the "Class," for purposes of this Count).

737.    As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

738.    In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

739.    As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

740.    Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

741.    At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised.

In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

742.    Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

743.    Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

744.    Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

745.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

746.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

747.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

8. **Claims Brought on Behalf of the Michigan Class**

**COUNT XL**

**FRAUDULENT OMISSION**

**Michigan Law**

**On Behalf of Plaintiff and the Statewide Class**

748.    Plaintiff Tonya Miller ("Plaintiff," for purposes of the Michigan Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

749.    Plaintiff brings this count individually and on behalf of the other members of the Michigan Class (the "Class" for purposes of this Count).

750.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

751.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

752.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

753.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

754.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not

limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

755.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

756.    In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

757.    Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

758.    Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

759.    As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

760.    Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT XLI**

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**

**Mich. Comp. Laws §§ 445.903 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

761.    Plaintiff Tonya Miller ("Plaintiff," for purposes of the Michigan Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

762.    Plaintiff brings this count individually and on behalf of the other members of the Michigan Class (the "Class" for purposes of this Count).

763.    Michigan Class Members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

764.    At all relevant times hereto, Dexcom was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

765.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.…" Mich. Comp. Laws § 445.903(1).

766.    Dexcom engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have…characteristics… that they do not have.…;" "(e) Representing that goods or services are of a particular standard… if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

767.   By failing to disclose and actively concealing the dangerous Defects in the G7 CGMs, Dexcom both participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

768.   In the course of its business, Dexcom willfully failed to disclose and actively concealed the dangerous Defects in the G7 CGMs as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Dexcom also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of G7 CGMs. Dexcom is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Michigan CPA.

769.   As alleged above, Dexcom knew of the Defects, and the Michigan Class was deceived by Dexcom's omissions into believing the G7 CGMs were safe. The true information could not have reasonably been known by the consumer.

770.   Dexcom knew or should have known that its conduct violated the Michigan CPA.

771.   As alleged above, Dexcom made material statements about the safety and reliability of G7 CGMs that were either false or misleading.

772.   Dexcom engaged in a deceptive trade practice when they failed to disclose material information concerning the G7 CGMs which it knew at the time of the sale. Dexcom deliberately withheld the information about the Defects in order to ensure that consumers would purchase its products and to induce the consumer to enter into a transaction.

773.   Dexcom owed Plaintiff and the other members of the Class an independent duty, based on its respective knowledge, to disclose the defective nature of G7 CGMs, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver

speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

774.    Dexcom's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Michigan Class, about the true safety and reliability of G7 CGM.

775.    Dexcom intentionally and knowingly misrepresented material facts regarding the G7 CGMs with an intent to mislead the Class.

776.    The propensity of the G7 CGMs' Defects was material to Plaintiff and the other Class Members. Had they known that their products had these Defects, they would either not have purchased their G7 CGMs, or would have paid less for them than they did. They also would not have purchased additional items—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones— required for the G7 CGM itself or necessary because of the G7 CGM's defects.

777.    Plaintiff and the other Class Memberssuffered ascertainable loss caused by Dexcom's failure to disclose material information. Plaintiff and the other Class Members overpaid for their products and did not receive the benefit of their bargain. As the result of the concealment and failure to remedy the Defects, they owns products that are defective and unsafe.

778.    Plaintiff and the other Class Members have been damaged by Dexcom's misrepresentations, concealment, and non-disclosure of the Defects in the G7 CGMs, as they are now holding products that are useless and defective because of Dexcom's failure to timely disclose and remedy the serious defects.

779.    Plaintiff and the other Class Memberswere—and continue to be—at risk of irreparable injury as a result of Dexcom's acts and omissions in violation of the Michigan CPA, and these violations present a continuing risk to the Class as well as to the general public. Dexcom's unlawful acts and practices complained of herein affect the public interest.

780.   As a direct and proximate result of Dexcom's violations of the Michigan CPA, the Class has suffered injury-in-fact and/or actual damage.

781.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

782.   Dexcom was given a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Dexcom have known of and concealed the Defects.

783.   Plaintiff and the other Class Members seek injunctive relief to enjoin Dexcom from continuing its unfair and deceptive acts; monetary relief against Dexcom measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Class Member; reasonable attorneys' fees; declaratory relief in the nature of a judicial determination of whether each Company's conduct violated the Michigan Statute, the just total amount of penalties to be assessed against each thereunder, and the formula and procedure for fair and equitable allocation of statutory penalties among the Michigan Class; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

784.   Plaintiff and the other Class Members seek punitive damages against Dexcom because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Dexcom intentionally and willfully misrepresented the safety and reliability of G7 CGMs, deceived Class Members, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of

correcting flaws in the G7 CGMs it repeatedly promised Class Members were safe. Dexcom's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XLII

## BREACH OF EXPRESS WARRANTY

### Mich. Comp. Laws § 440.2313

### On Behalf of Plaintiff and the Statewide Class

785.   Plaintiff Tonya Miller ("Plaintiff," for purposes of the Michigan Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

786.   Plaintiff brings this count individually and on behalf of the other members of the Michigan Class (the "Class" for purposes of this Count).

787.   At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

788.   At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

789.   Dexcom expressly warranted through marketing and labeling that the G7 CGM was safe, accurate, and reliable for continuous glucose monitoring.

790.   Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

791.   Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

792.    Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

793.    Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

794.    Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

795.    The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

796.    Plaintiff and the other Class Members were deprived of the benefit of their bargain.

797.    Plaintiff and the other Class Members were financially harmed.

798.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

799.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15,

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

800.     Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT XLIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Mich. Comp. Laws § 440.2314
### On Behalf of Plaintiff and the Statewide Class

801.     Plaintiff Tonya Miller ("Plaintiff," for purposes of the Michigan Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

802.     Plaintiff brings this count individually and on behalf of the other members of the Michigan Class (the "Class" for purposes of this Count).

803.     At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

804.     At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

805.     Under Mich. Comp. Laws § 440.2314, a warranty that the G7 CGMs were in merchantable condition was implied by law in the transactions when Michigan Class Members acquired their G7 CGMs.

806.     The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in

merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

807.   At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

808.   Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

809.   The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

810.   The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

811.   In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

812.   Plaintiff and the other Class Members were financially harmed.

813.   Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

814.   Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

815.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15,

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

816.    Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT XLIV**

**UNJUST ENRICHMENT**

**Michigan Law**

**On Behalf of Plaintiff and the Statewide Class**

817.    Plaintiff Tonya Miller ("Plaintiff," for purposes of the Michigan Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

818.    Plaintiff brings this count individually and on behalf of the other members of the Michigan Class (the "Class" for purposes of this Count).

819.    As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money

1  paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These
2  benefits constitute an enrichment.

3      820.   In so doing, Dexcom acted with conscious disregard for the rights of
4  Plaintiff and the other Class Members.

5      821.   As an intended and expected result of Dexcom's conscious wrongdoing as
6  set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff
7  and the other Class Members made for their G7 CGMs.

8      822.   Dexcom's unjust enrichment is traceable to, and resulted directly and
9  proximately from, the conduct alleged herein.

10     823.   At the time their payments were made, Plaintiff and the other Class
11  Members expected that Dexcom's G7 CGMs were functional and effective in the ways
12  Dexcom had represented, and could safely be used for the purposes Dexcom advertised.
13  In exchange for their payments, Plaintiff and the other Class Members believed they were
14  receiving a safe, reliable, and effective method for monitoring glucose.

15     824.   Dexcom has voluntarily accepted and retained these payments with full
16  knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid
17  for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of
18  Dexcom to provide Plaintiff and the other Class Members with the remuneration
19  expected enriched Dexcom unjustly and impoverished Plaintiff.

20     825.   Because Dexcom concealed its fraud and deception described herein,
21  Plaintiff and the other members of the Class were not aware of the true facts concerning
22  the G7 CGMs and did not benefit from Dexcom's misconduct.

23     826.   Under the common law doctrine of unjust enrichment, it is inequitable for
24  Dexcom to be permitted to retain the benefits it received, and is still receiving, without
25  justification, from the false and deceptive labeling and marketing of the G7 CGMs to
26  Plaintiff and the other Class Members.

827.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

828.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

829.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

### 9.    Claims Brought on Behalf of the Minnesota Class

### COUNT XLV

### FRAUDULENT OMISSION

### Minnesota Law

### On Behalf of Plaintiff and the Statewide Class

830.    Plaintiff Ben Steckly ("Plaintiff," for purposes of the Minnesota Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

831.    Plaintiff brings this count individually and on behalf of the other members of the Minnesota Class (the "Class" for purposes of this Count).

832.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

833.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to

important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

834.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

835.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

836.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

837.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

838.    In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

839.    Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

840.    Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they

otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

841.   As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

842.   Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

# COUNT XLVI

## VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT

## Minn. Stat. § 325D.43 *et seq.*

## On Behalf of Plaintiff and the Statewide Class

843.   Plaintiff Ben Steckly ("Plaintiff," for purposes of the Minnesota Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

844.   Plaintiff brings this count individually and on behalf of the other members of the Minnesota Class (the "Class" for purposes of this Count).

845.   Minn. Stat. § 325D.44 provides that a:

person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or

1    that a person has a sponsorship, approval, status, affiliation, or connection

2    that the person does not have; . . . (7) represents that goods or services are of

3    a particular standard, quality, or grade or that goods are a particular style or

4    model, if they are of another; . . . (9) advertises goods or services with intent

5    not to sell them as advertised; . . . [and] (13) engages in any other conduct

6    which similarly creates a likelihood of confusion or misunderstanding.

7    846.    The G7 CGM, sold to Plaintiff and the other Class Members were not of the

8    particular standard, quality, and/or grade represented by Dexcom.

9    847.    Plaintiff and the other Class Members are likely to be damaged as a result of

10    the foregoing wrongful conduct of Dexcom. Minn. Stat. § 325D.45 permits the Court to

11    enter injunctive relief to require Dexcom to stop the unfair and deceptive conduct alleged

12    herein and to assess the costs and attorneys' fees against Dexcom for its willful deceptive

13    trade practices.

14    848.    Plaintiff Grisoli, individually and on behalf of the other Class Members,

15    notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer

16    protection statutes and related legal violations, through a notice letter dated October 15,

17    2025, and delivered by email to Dexcom's counsel, who responded on November 19,

18    2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

19    Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

20    of the Defects through numerous complaints filed against it, other similar lawsuits filed

21    against it, and its own internal knowledge.

22                                 **COUNT XLVII**

23    **VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT**

24                            **Minn. Stat. §§ 325F.68 *et seq.***

25                     **On Behalf of Plaintiff and the Statewide Class**

26    849.    Plaintiff Ben Steckly ("Plaintiff," for purposes of the Minnesota Class's

27    claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

28

850.   Plaintiff brings this count individually and on behalf of the other members of the Minnesota Class (the "Class" for purposes of this Count).

851.   Dexcom failed to disclose the safety defects of the G7 CGM, with the intent that Plaintiff and the other Class Members relied on such omissions in their decision regarding the purchase of the G7 CGM, or the purchase of additional items—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

852.   Plaintiff and the other Class Members did, in fact, rely on such omissions in their decision regarding the acquisition of the G7 CGM or additional items.

853.   Through these misleading and deceptive omissions, Defendants violated § 325F.69.

854.   The Minnesota Prevention of Consumer Fraud Act applies to Dexcom's transactions with Plaintiff and the other Class Members because Dexcom's deceptive scheme was carried out in Minnesota and affected Plaintiff and the other Class Members.

855.   Dexcom also failed to advise the public what it knew about the defective nature of the G7 CGM.

856.   Plaintiff and the other Class Members relied on Dexcom's silence as to known defects in connection with their decision regarding the purchase of the G7 CGM and/or additional products.

857.   As a direct and proximate result of Dexcom's deceptive conduct and violation of § 325F.69, Plaintiff and the other Class Members have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT XLVIII**

**BREACH OF EXPRESS WARRANTY**

**Minn. Stat. §§ 325G.19, 336.2-313**

**On Behalf of Plaintiff and the Statewide Class**

858.    Plaintiff Ben Steckly ("Plaintiff," for purposes of the Minnesota Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

859.    Plaintiff brings this count individually and on behalf of the other members of the Minnesota Class (the "Class" for purposes of this Count).

860.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

861.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

862.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

863.    Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

864.    Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

865.    Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide

the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

866.    Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

867.    Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

868.    The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

869.    Plaintiff and the other Class Members were deprived of the benefit of their bargain.

870.    Plaintiff and the other Class Members were financially harmed.

871.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

872.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

873.    Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT XLIX

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### Minn. Stat. § 336.2-314

### On Behalf of Plaintiff and the Statewide Class

874.    Plaintiff Ben Steckly ("Plaintiff," for purposes of the Minnesota Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

875.    Plaintiff brings this count individually and on behalf of the other members of the Minnesota Class (the "Class" for purposes of this Count).

876.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

877.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

878.    The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

879.    At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

880.    Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use; a warranty that the G7 CGM was in merchantable condition is implied by Minn. Stat. § 336.2-314.

881.    The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

882.    The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

883.    In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

884.    Plaintiff and the other Class Members were financially harmed.

885.    Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

886.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

887.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

1 of the Defects through numerous complaints filed against it, other similar lawsuits filed
2 against it, and its own internal knowledge.

3     888.   Plaintiff and the other Class Members have had sufficient dealings with
4 either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies)
5 to establish privity of contract between them. Notwithstanding this, privity is not required
6 in this case because Plaintiff and the Class are intended third-party beneficiaries of
7 contracts between Dexcom and its agents; specifically, consumers are the intended
8 beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing
9 doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7
10 CGM and have no rights under the warranty agreements provided with the devices; the
11 warranty agreements were designed for and intended to benefit the ultimate consumers
12 only. Finally, privity is also not required because the G7 CGMs are dangerous
13 instrumentalities due to the aforementioned defect.

**COUNT L**

**UNJUST ENRICHMENT**

**Minnesota Law**

**On Behalf of Plaintiff and the Statewide Class**

18     889.   Plaintiff Ben Steckly ("Plaintiff," for purposes of the Minnesota Class's
19 claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

20     890.   Plaintiff brings this count individually and on behalf of the other members of
21 the Minnesota Class (the "Class" for purposes of this Count).

22     891.   As a result of Dexcom's wrongful and deceptive conduct, Dexcom
23 knowingly and voluntarily accepted and retained wrongful benefits in the form of money
24 paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These
25 benefits constitute an enrichment.

26     892.   In so doing, Dexcom acted with conscious disregard for the rights of
27 Plaintiff and the other Class Members.

893.    As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

894.    Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

895.    At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

896.    Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

897.    Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

898.    Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

899.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

900.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

901.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

### 10.    Claims Brought on Behalf of the New Jersey Class

### COUNT LI

### FRAUDULENT OMISSION

### New Jersey Law

### On Behalf of Plaintiff and the Statewide Class

902.    Plaintiff Brian Lowe ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

903.    Plaintiff brings this count individually and on behalf of the other members of the New Jersey Class (the "Class" for purposes of this Count).

904.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

905.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

906.   Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

907.   Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

908.   The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

909.   The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

910.   In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

911.   Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

912.   Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

913.    As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

914.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT LII**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**

**N.J. Stat. Ann. §§ 56:8-1 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

915.    Plaintiff Brian Lowe ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

916.    Plaintiff brings this count individually and on behalf of the other members of the New Jersey Class (the "Class" for purposes of this Count).

917.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.* ("New Jersey CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

918.    Dexcom, Plaintiff and members of the Class are each "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

919.    Dexcom engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

920.    Dexcom engaged in unconscionable commercial practice or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Plaintiff rely upon its acts of concealment, suppression, and/or omission. By the conduct described in detail above and incorporated herein, Dexcom engaged in deceptive trade practices.

921.    Dexcom's omissions regarding the Defects, described above, which causes multiple defects in the G7 CGM, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the G7 CGMs, or to buy additional items—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

922.    Dexcom intended for Plaintiff and the other Class Members to rely on the omissions regarding the Defects.

923.    Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's omissions of fact concerning the above-described defects, as evidenced by Plaintiff and the other Class Members' purchases of G7 CGMs.

924.    Had Dexcom disclosed all material information regarding the defects to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased G7 CGMs or would have paid less to do so.

925.    Dexcom's deceptive conduct and its false and misleading statements about the products, including its efficacy, safety, and dependability, and omissions regarding the defects, are facts that a reasonable person would have considered material in deciding whether or not to purchase (or how much they were willing to pay to purchase) the G7 CGMs or related products.

926.    Dexcom's acts and practices described above were directed at Plaintiff and the public at large and were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class who justifiably

acted or relied to their detriment upon Dexcom's misrepresentations and omissions of fact, as evidenced by Plaintiff and the other Class Members' purchasing of G7 CGMs.

927.    Dexcom also engaged in unfair and deceptive conduct by manufacturing and placing in the stream of commerce a product it knew, or should have known, was materially defective and posed substantial risk to the users of the G7 CGMs.

928.    Dexcom's actions impact the public interest because Plaintiff and the other members of the class have been injured in exactly the same way as hundreds of thousands of other consumers by Dexcom's deceptive acts and practices as described herein.

929.    As a direct and proximate result of Dexcom's deceptive trade practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members who purchased the G7 CGMs would not have purchased the G7 CGMs, or, alternatively, would have paid less for them had the truth about the defects been disclosed.

930.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

931.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the other Class Members seek an order enjoining Dexcom's unlawful conduct, actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available under the New Jersey CPA.

## COUNT LIII

## BREACH OF EXPRESS WARRANTY

### N.J. Stat. Ann. § 12A:2-313

### On Behalf of Plaintiff and the Statewide Class

932.    Plaintiff Brian Lowe ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

933.    Plaintiff brings this count individually and on behalf of the other members of the New Jersey Class (the "Class" for purposes of this Count).

934.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

935.    At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

936.    Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

937.    Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

938.    Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

939.    Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide

the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

940.    Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

941.    Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

942.    The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

943.    Plaintiff and the other Class Members were deprived of the benefit of their bargain.

944.    Plaintiff and the other Class Members were financially harmed.

945.    Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

946.    Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

947.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LIV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## N.J. Stat. Ann. § 12A:2-314

## On Behalf of Plaintiff and the Statewide Class

948.    Plaintiff Brian Lowe ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

949.    Plaintiff brings this count individually and on behalf of the other members of the New Jersey Class (the "Class" for purposes of this Count).

950.    At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

951.    Dexcom is a "merchant" and each G7 CGM is a "good" as defined in New Jersey's Commercial Law governing the implied warranty of merchantability. N.J. Stat. Ann. §§ 12A:2-104(1), 12A:2-105(1).

952.    Pursuant to N.J. Stat. Ann. § 12A:2-314, a warranty that the products were in merchantable condition was implied by law, and the G7 CGMs were bought and sold subject to an implied warranty of merchantability.

953.    By placing the G7 CGMs in the stream of commerce, Dexcom impliedly warranted that the G7 CGMs are safe, and that all claims in their advertising and marketing of the G7 CGMs were true.

954.   The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

955.   At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

956.   Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

957.   The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

958.   The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

959.   In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

960.   Plaintiff and the other Class Members were financially harmed.

961.   Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

962.   Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

FIRST AMENDED CLASS ACTION COMPLAINT

963.   Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

964.   Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

### COUNT LV

### UNJUST ENRICHMENT

### New Jersey Law

### On Behalf of Plaintiff and the Statewide Class

965.   Plaintiff Brian Lowe ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

966.   Plaintiff brings this count individually and on behalf of the other members of the New Jersey Class (the "Class" for purposes of this Count).

967.   As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

968.   In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

969.   As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

970.   Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

971.   At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

972.   Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

973.   Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

974.   Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without

justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

975.    Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

976.    Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

977.    Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

**11.    Claims Brought on Behalf of the New York Class**

**COUNT LVI**

**FRAUDULENT OMISSION**

**New York Law**

**On Behalf of Plaintiff and the Statewide Class**

978.    Plaintiff Jesse Perez ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

979.    Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

980.    Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

981.    Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know

FIRST AMENDED CLASS ACTION COMPLAINT

about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

982.    Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

983.    Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

984.    The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

985.    The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

986.    In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

987.    Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

988.    Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

989.    As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

990.    Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LVII

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

## N.Y. Gen. Bus. Law § 349

## On Behalf of Plaintiff and the Statewide Class

991.    Plaintiff Jesse Perez ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

992.    Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

993.    Dexcom is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

994.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

995.    Dexcom's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of New York GBL. All Dexcom's deceptive acts or

practices, which were intended to mislead consumers in a material way in the process of purchasing the G7 CGM, was conduct directed at consumers and "consumer-oriented." Further, Plaintiff and other Class Members suffered injury as a result of the deceptive act or practice.

996.   Dexcom's omissions regarding the defects described above are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the G7 CGM, or to purchase related products—such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

997.   Dexcom intended for Plaintiff and the other Class Members to rely on the omissions regarding the defects.

998.   Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's omissions of fact concerning the above-described defects, as evidenced by Plaintiff and the other Class Members' purchases of the G7 CGM.

999.   Dexcom engaged in deceptive conduct by manufacturing and placing in the stream of commerce a product it knew, or should have known, was materially defective and posed substantial risk to the users of the product.

1000. Had Dexcom disclosed all material information regarding the defects to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased the G7 CGM or would have paid less to do so.

1001. Dexcom's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1002. Dexcom's actions impact the public interest because Plaintiff and the other members of the class have been injured in exactly the same way as hundreds of thousands of other consumers by Dexcom's deceptive acts and practices as described herein.

1003. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1004. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and the other members of the class seek actual damages or $50, whichever is greater, in addition to discretionary three times actual damages up to $1,000 for Dexcom's willful and knowing violation of N.Y. Gen. Bus. Law § 349. Plaintiff and Class Members also seek attorneys' fees, an order enjoining Dexcom's deceptive conduct, and any other just and proper relief available under the New York GBL.

### COUNT LVIII

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350

### N.Y. Gen. Bus. Law § 350

### On Behalf of Plaintiff and the Statewide Class

1005. Plaintiff Jesse Perez ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1006. Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

1007. Dexcom was engaged in the "conduct of business, trade or commerce" within the meaning of the New York's General Business Law § 350.

1008. New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising fails to

reveal facts material in the light of … representations [made] with respect to the
commodity." N.Y. Gen. Bus. Law § 350-a.

1009.  Dexcom caused to be made or disseminated throughout New York, through
advertising, marketing, and other publications, statements that were untrue or misleading,
and which were known, or which by the exercise of reasonable care should have been
known to Dexcom, to be untrue and misleading to consumers, including Plaintiff and
other Class Members.

1010.  Dexcom have violated N.Y. Gen. Bus. Law § 350 because of the
misrepresentations and omissions alleged herein, including, but not limited to, Dexcom's
failure to disclose the G7 CGM's Defects, including (but not limited to) the Sensor
Defect, Receiver Defect, and the Application Defect, that can result in malfunctions
including (but not limited to) silent receiver speaker failures, app behavior that
suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and
inaccuracies in glucose readings

1011.  In the course of its business, Dexcom concealed and suppressed material
facts concerning the G7 CGM. Dexcom falsely represented the quality of glucose
monitors and omitted material facts regarding them, for the purpose of inducing Plaintiff
and other Class Members to purchase the products, and to increase Dexcom's revenue
and profits.

1012.  The facts concealed and omitted by Dexcom were material in that a
reasonable consumer would have considered them to be important in deciding whether to
purchase the G7 CGM, pay a lower price for the CGM, or purchase additional items—
such as overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant
cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's
defects. Had Plaintiff and other Class Members known of the defects, they would not
have purchased the products, or would have paid substantially less for the products than
they did.

1013. Plaintiff and the other Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damages as a proximate result of Dexcom's conduct in that Plaintiff and the other Class Members overpaid for their glucose monitors and did not get the benefit of their bargain, and their products have suffered a diminution in value. These injuries are the direct and natural consequence of Dexcom's misrepresentations, fraud, deceptive practices, and omissions.

1014. Dexcom's conduct proximately caused injuries to Plaintiff and the other Class Members.

1015. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1016. Plaintiff and the other members of the Class are entitled to recover their actual damages or $500, whichever is greater. Because Dexcom acted willfully or knowingly, Plaintiff and other Class Members are entitled to recover three times actual damages, up to $10,000.

## COUNT LIX

## BREACH OF EXPRESS WARRANTY

## N.Y. U.C.C. § 2-313

## On Behalf of Plaintiff and the Statewide Class

1017. Plaintiff Jesse Perez ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1018. Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

1019. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1020. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing medical devices, specifically glucose monitors.

1021. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1022. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1023. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1024. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1025. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts

regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1026. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1027. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1028. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1029. Plaintiff and the other Class Members were financially harmed.

1030. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1031. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1032. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LX

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## N.Y. U.C.C. § 2-314

### On Behalf of Plaintiff and the Statewide Class

1033.  Plaintiff Jesse Perez ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1034.  Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

1035.  At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1036.  Dexcom is and was at all relevant times a merchant with respect to medical devices under N.Y. U.C.C. Law § 2-314.

1037.  Pursuant to N.Y. U.C.C. Law § 2-314, a warranty that the G7 CGMs were in merchantable condition is implied by law, and the G7 CGMs were bought and sold subject to an implied warranty of merchantability.

1038.  The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1039.  At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1040.  Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1041.  The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes

for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1042. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1043. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1044. Plaintiff and the other Class Members were financially harmed.

1045. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1046. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1047. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1048. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required

in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

## COUNT LXI

### UNJUST ENRICHMENT

### New York Law

### On Behalf of Plaintiff and the Statewide Class

1049. Plaintiff Jesse Perez ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1050. Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

1051. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1052. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1053. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1054. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1055. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1056. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1057. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1058. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1059. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1060. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1061. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount

deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

**12.    Claims Brought on Behalf of the North Carolina Class**

**COUNT LXII**

**FRAUDULENT OMISSION**

**North Carolina Law**

**On Behalf of Plaintiff and Statewide Class**

1062. Plaintiff Brandon Whitlow ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1063. Plaintiff brings this count individually and on behalf of the other members of the North Carolina Class (the "Class" for purposes of this Count).

1064. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1065. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1066. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1067. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1068. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver

Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1069. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1070. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1071. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1072. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1073. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1074. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable

relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LXIII

## VIOLATION OF NORTH CAROLINA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

### N.C.G.S. §§ 75-1.1 *et seq.*

### On Behalf of Plaintiff and the Statewide Class

1075. Plaintiff Brandon Whitlow ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1076. Plaintiff brings this count individually and on behalf of the other members of the North Carolina Class (the "Class" for purposes of this Count).

1077. This Count is brought on behalf of Plaintiff and the North Carolina Class ("Class" for the purposes of this Count) for violation of North Carolina's Unfair and Deceptive Trade Practices Act N.C.G.S. §§ 75-1.1, et. seq. ("UDTPA"), which prohibits, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a).

1078. Dexcom's design, engineering, testing, manufacture, distribution, marketing, advertising, labeling, and sale of the G7 CGMs constitutes "commerce" as defined by N.C.G.S. § 75-1.1(b).

1079. Dexcom's conduct violates UDTPA because Dexcom engaged in the deceptive acts and practices described above and those acts and/or omissions possessed the tendency or capacity to mislead, or created the likelihood of deception in the minds of consumers and the public at large and did so deceive them with respect to the true qualities and characteristics of the G7 CGM.

1080. Dexcom's deceptive conduct and its false and misleading statements about the above-mentioned Defects in the G7 CGM, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions

including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings, are facts that a reasonable person would have considered material in deciding whether or not to purchase the G7 CGM or related products.

1081. Dexcom's acts and practices are unfair because they offend the public policy of the state of North Carolina and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

1082. Dexcom's acts and practices described above were directed at Plaintiff and the public at large and were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class who justifiably acted or relied to their detriment upon Dexcom's misrepresentations and omissions of fact, as evidenced by Plaintiff and the other Class Members' purchase of the G7 CGM and/or related products.

1083. Had Dexcom disclosed all material information regarding the G7 CGM to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased the product (or related products) or would have paid less to do so.

1084. Dexcom's unfair and deceptive acts and practices, and/or misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1085. Dexcom also engaged in unfair and deceptive conduct by manufacturing and placing in the stream of commerce a glucose monitor it knew, or should have known, was materially defective and posed substantial risk to its users.

1086. As a direct and proximate result of Dexcom's deceptive commercial practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages.

1087. N.C.G.S. § 75-16 provides that "if damages are assessed in such case

1088. judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C.G.S. § 75-16.1(a) further provides that, "the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party," upon a finding that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter."

1089. Dexcom's violation of UDTPA was willful and Dexcom refusal to conform the G7 CGM to the warranties, and to reimburse consumers for their reasonable losses which result from Defendant's acts and omissions is unwarranted.

1090. Dexcom knowingly and willfully marketed the G7 CGM as safe and dependable all the while knowing it was not. Dexcom, through its willful and knowing deceptive acts and practices, as detailed above, have willfully and knowingly duped Plaintiff into paying for a product that was worthless because it did not perform the purpose for which Plaintiff purchased it.

1091. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1092. As a direct and proximate result of Dexcom's conduct in violation of UDTPA, Plaintiff and the members of the Class have been injured in an amount to be proven at trial and are entitled to treble damages under N.C.G.S. § 75-16. Because Dexcom's violation of UDTPA was willful and they unreasonably refused to conform the

G7 CGM to the warranties and reimburse purchasers for their pecuniary losses, Plaintiff and members of the Class are further entitled to attorney's fees under N.C.G.S. § 75-16.1.

## COUNT LXIV

## BREACH OF EXPRESS WARRANTY

## N.C.G.S. § 25-2-313

### On Behalf of Plaintiff and Statewide Class

1093. Plaintiff Brandon Whitlow ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1094. Plaintiff brings this count individually and on behalf of the other members of the North Carolina Class (the "Class" for purposes of this Count).

1095. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1096. Dexcom is and was at all relevant times merchants with respect to the G7 CGM.

1097. Pursuant to N.C.G.S. § 25-2-313(A)(1), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

1098. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1099. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1100. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1101. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1102. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1103. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1104. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1105. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1106. Plaintiff and the other Class Members were financially harmed.

1107. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1108. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LXV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## N.C.G.S. § 25-2-314

### On Behalf of Plaintiff and Statewide Class

1109. Plaintiff Brandon Whitlow ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1110. Plaintiff brings this count individually and on behalf of the other members of the North Carolina Class (the "Class" for purposes of this Count).

1111. Dexcom is a "merchant" and the G7 CGMs are "goods" as defined in N.C.G.S. §§ 25-2-104 and 2-105.

1112. Pursuant to N.C.G.S. § 25-2-314, a warranty that the G7 CGMs were in merchantable condition was implied by law in the sale of the product. Dexcom impliedly warranted that the monitors were of a merchantable quality.

1113. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1114. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1115. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1116. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1117. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1118. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1119. Plaintiff and the other Class Members were financially harmed.

1120. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1121. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1122. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1123. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

## COUNT LXVI

## UNJUST ENRICHMENT

### North Carolina Law

### On Behalf of Plaintiff and Statewide Class

1124. Plaintiff Brandon Whitlow ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1125. Plaintiff brings this count individually and on behalf of the other members of the North Carolina Class (the "Class" for purposes of this Count).

1126. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1127. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1128. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1129. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1130. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1131. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1132. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1133. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1134. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1135. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1136. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

### 13.    Claims Brought on Behalf of the Ohio Class

### COUNT LXVII

### FRAUDULENT OMISSION

### Ohio Law

### On Behalf of Plaintiff and the Statewide Class

1137. Plaintiff Jenna Charlton ("Plaintiff," for purposes of the Ohio Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1138. Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1139. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1140. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1141. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1142. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1143. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1144. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1145. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1146. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1147. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1148. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1149. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT LXVIII**

**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**

**Ohio Rev. Code Ann. §§ 1345.01 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

1150. Plaintiff Jenna Charlton ("Plaintiff," for purposes of the Ohio Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1151. Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1152. Dexcom, Plaintiff, and the other Class Members are "persons" within the meaning of Ohio Rev. Code Ann. § 145.01(B). Dexcom is a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(c).

1153. Plaintiff and the other Class Members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase of the G7 CGMs are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

1154. Ohio Rev. Code Ann. § 1345.02 prohibits unfair or deceptive acts or practices in connection with consumer transactions, such as those described herein. In the course of Dexcom's business, Dexcom violated the Ohio Consumer Sales Practices Act ("CSPA") by selling G7 CGMs with Defects, or negligently concealing or suppressing material facts concerning these Defects in the G7 CGMs.

1155. Further, as a result of placing a defective product into the stream of commerce, Dexcom has breached its implied warranty in tort, which is an unfair and deceptive act, as defined in Ohio Rev. Code Ann. § 1345.09(B).

1156. Dexcom has committed unfair and deceptive acts in violation of the Ohio CSPA by knowingly placing into the stream of commerce the G7 CGMs with the Defects.

1157. Moreover, Dexcom has committed an unfair and deceptive act by knowingly concealing the Defects in the G7 CGMs and failing to inform Plaintiff and the other Class Members of these Defects.

1158. The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of defendants as detailed in this Complaint, including, but not limited to, the failure to honor both its express and implied warranties; and the concealment and/or non-disclosure of a substantial defect, constitute deceptive practices in violations of the CSPA. These Cases include, but are not limited to: State ex rel DeWine v. GlaxoSmithKline LLC (OPIF #10003046); Robie v. Majors Medical Equipment & Supplies, Inc. (OPIF #10001816); In re Gospel Light Mennonite Church Medical Aid Plan, Inc. (OPIF #3650); State ex rel. Celebrezze v. Serian; Eyeland Vision Centers (OPIF #10000003); Cobbett v. Human Development & Counseling Assoc., Inc. (OPIF #10000830); In re Schering-Plough Corp.; Merck & Co.; MSP Singapore Co. (OPIF #10002795); State ex rel Dann v. Guidance Corporation (OPIF #10002581); State ex rel. Dann v. Purdue Pharma, Inc. (OPIF #10002558); State ex rel Petro v. Greentree Health Systems, LLC (OPIF #10002500); In re Gateway Distributors, Ltd. (OPIF #10002461); State ex rel DeWine v. Bristol-Myers Squibb Company (OPIF #3430); State ex rel DeWine v. Boehringer Ingelheim Pharmaceuticals (OPIF #3353).

1159. Dexcom's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class Members, about the true

reliability, dependability, efficiency, and quality of the G7 CGMs. Plaintiff and the other Class Members suffered ascertainable loss and actual damages as a direct result of Dexcom's concealment of and failure to disclose material information, namely, the Fuel Pump Defect. Plaintiff and the other Class Members who purchased the G7 CGMs would not have done so, or would have paid significantly less, if the true nature of the G7 CGMs had been disclosed.

1160.  Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1161.  Dexcom is liable to Plaintiff and the other Class Members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code Ann. § 1345.09.

### COUNT LXIX
### BREACH OF EXPRESS WARRANTY
### Ohio Rev. Code Ann. § 1302.26
### On Behalf of Plaintiff and the Statewide Class

1162.  Plaintiff Jenna Charlton ("Plaintiff," for purposes of the Ohio Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1163.  Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1164.  At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1165. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing medical devices, specifically glucose monitors.

1166. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1167. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1168. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1169. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1170. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1171. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the

other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1172. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1173. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1174. Plaintiff and the other Class Members were financially harmed.

1175. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1176. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1177. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT LXX**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Ohio Rev. Code Ann. § 1302.27**

**On Behalf of Plaintiff and the Statewide Class**

1178. Plaintiff Jenna Charlton ("Plaintiff," for purposes of the Ohio Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1179. Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1180. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1181. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing medical devices, specifically glucose monitors.

1182. Dexcom manufactured and sold the defective G7 CGMs to Plaintiff and the other Class Members.

1183. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1184. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1185. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1186. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1187. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1188. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1189. Plaintiff and the other Class Members were financially harmed.

1190. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1191. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1192. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1193. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended

beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT LXXI**

**UNJUST ENRICHMENT**

**Ohio Law**

**On Behalf of Plaintiff and the Statewide Class**

1194. Plaintiff Jenna Charlton ("Plaintiff," for purposes of the Ohio Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1195. Plaintiff brings this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1196. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1197. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1198. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1199. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1200. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways

Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1201. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1202. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1203. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1204. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1205. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1206. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

1    **14.    Claims Brought on Behalf of the Oklahoma Class**

2    **COUNT LXXII**

3    **FRAUDULENT OMISSION**

4    **Oklahoma Law**

5    **On Behalf of Plaintiff and the Statewide Class**

6    1207.  Plaintiff Oliver Ivy ("Plaintiff," for the purposes of the Oklahoma Class's

7    claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

8    1208.  Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for

9    purposes of this Count).

10    1209.  Dexcom was aware of the G7 CGM's Defects mentioned above, including

11    (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when

12    it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

13    1210.  Having been aware of the G7 CGM's Defects and, having known that

14    Plaintiff and the other Class Members could not have reasonably been expected to know

15    about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class

16    Members in connection with the sale of the G7 CGMs, as these Defects relate to

17    important safety issues respecting the devices, which are used for managing diabetes, a

18    disease that can be life-threatening.

19    1211.  Dexcom did not disclose the Defects to Plaintiff and Class Members in

20    connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

21    1212.  Dexcom knew that these omissions would cause the false impression that the

22    G7 CGM did not have the aforementioned Defects.

23    1213.  The Defects concern material information with respect to the sale of the G7

24    CGMs, their sensors, and sale of related products. Dexcom's omissions concern the

25    Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver

26    Defect, and the Application Defect, that can result in malfunctions including (but not

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1214. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1215. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1216. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1217. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1218. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1219. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT LXXIII**

**VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT**

**Okla. Stat. tit. 15 §§ 751 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

1220.  Plaintiff Oliver Ivy ("Plaintiff," for the purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1221.  Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for purposes of this Count).

1222.  The conduct of Dexcom as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, omissions regarding the defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the G7 CGMs.

1223.  Dexcom's actions as set forth above occurred in the conduct of trade or commerce.

1224.  Dexcom's actions impact the public interest because Plaintiff and the other members of the class were injured in exactly the same way as millions of others purchasing G7 CGMs with multiple defects, as a result of Dexcom's generalized course of deception.

1225.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Dexcom's business.

1226.  Plaintiff and the other members of the class were injured as a result of Dexcom's conduct.

1227. Plaintiff and the other members of the class overpaid for their G7 CGMs and did not receive the benefit of their bargain.

1228. Dexcom's conduct proximately caused the injuries to Plaintiff and the other members of the class.

1229. Dexcom is liable to Plaintiff and the other members of the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1230. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1231. Pursuant to Okla. Stat. tit. 15 § 751, Plaintiff will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

**COUNT LXXIV**

**BREACH OF EXPRESS WARRANTY**

**Okla. Stat. tit. 12A § 2-313**

**On Behalf of Plaintiff and the Statewide Class**

1232. Plaintiff Oliver Ivy ("Plaintiff," for the purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1233. Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for purposes of this Count).

1234. At all relevant times, Plaintiff is and was a "buyer" within the meaning of the statute.

1235. Dexcom is and was at all relevant times a "merchant" with respect to medical devices under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of medical devices under § 2A-103(1)(t).

1236. The G7 CGMs are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

1237. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1238. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1239. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1240. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1241. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts

FIRST AMENDED CLASS ACTION COMPLAINT

1  regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to
2  purchase the Defendants' products under false pretenses.

3       1242. Moreover, much of the damage flowing from the G7 CGMs cannot be
4  resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the
5  other Class Members' remedies would be insufficient to make them whole. Plaintiff,
6  individually and on behalf of the other Class Members, seeks all remedies as allowed by
7  law.

8       1243. The G7 CGM's ability to monitor blood glucose safely, effectively, and
9  accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly
10 and only that purpose.

11      1244. Plaintiff and the other Class Members were deprived of the benefit of their
12 bargain.

13      1245. Plaintiff and the other Class Members were financially harmed.

14      1246. Dexcom's breach of express warranties was a substantial factor in causing
15 the harm suffered by Plaintiff and the other Class Members.

16      1247. Plaintiff Grisoli, individually and on behalf of the other Class Members,
17 notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer
18 protection statutes and related legal violations, through a notice letter dated October 15,
19 2025, and delivered by email to Dexcom's counsel, who responded on November 19,
20 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to
21 Dexcom notifying it of additional state Classes and claims. Dexcom also received notice
22 of the Defects through numerous complaints filed against it, other similar lawsuits filed
23 against it, and its own internal knowledge.

24      1248. Therefore, Plaintiff and the other Class Members have incurred damages—
25 including but not limited to actual damages, compensatory damages, restitution, equitable
26 relief, statutory damages and penalties, and punitive and exemplary damages—in an
27 amount to be determined at trial.

28

# COUNT LXXV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### Okla. Stat. tit. 12A § 2-314

### On Behalf of Plaintiff and the Statewide Class

1249. Plaintiff Oliver Ivy ("Plaintiff," for the purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1250. Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for purposes of this Count).

1251. At all relevant times, Dexcom is and was a "seller" and Plaintiff is and was a "buyer," within the meaning of the statute.

1252. Dexcom is and was at all relevant times a "merchant" with respect to medical devices under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of medical devices under § 2A-103(1)(t).

1253. The G7 CGMs are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

1254. A warranty that the G7 CGMs were in merchantable condition and fit for the ordinary purpose for which medical devices are used is implied by law pursuant to Okla. Stat. Tit. 12A § 2-314.

1255. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1256. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1257. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1258. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1259. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1260. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1261. Plaintiff and the other Class Members were financially harmed.

1262. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1263. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1264. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

FIRST AMENDED CLASS ACTION COMPLAINT

1265. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

## COUNT LXXVI
## UNJUST ENRICHMENT
### Oklahoma Law
### On Behalf of Plaintiff and the Statewide Class

1266. Plaintiff Oliver Ivy ("Plaintiff," for the purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1267. Plaintiff brings this Count on behalf of the Oklahoma Class ("Class," for purposes of this Count).

1268. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1269. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1270. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1271. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1272. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1273. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1274. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1275. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1276. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1277. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1278. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

### 15. Claims Brought on Behalf of the Oregon Class

### COUNT LXXVII

### FRAUDULENT OMISSION

### Oregon Law

### On Behalf of Plaintiff and the Statewide Class

1279. Plaintiff Abby Farber ("Plaintiff," for the purposes of the Oregon Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1280. Plaintiff brings this Count on behalf of the Oregon Class ("Class," for purposes of this Count).

1281. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1282. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1283. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1284. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1285. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1286. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1287. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1288. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1289. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1290. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have

1  purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects

2  had been disclosed.

3      1291.  Therefore, Plaintiff and the other Class Members have incurred damages—

4  including but not limited to actual damages, compensatory damages, restitution, equitable

5  relief, statutory damages and penalties, and punitive and exemplary damages—in an

6  amount to be determined at trial.

7  COUNT LXXVIII

8  **VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**

9  **Or. Rev. Stat. §§ 646.605 *et seq.***

10  **On Behalf of Plaintiff and the Statewide Class**

11      1292.  Plaintiff Abby Farber ("Plaintiff," for the purposes of the Oregon Class's

12  claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

13      1293.  Plaintiff brings this Count on behalf of the Oregon Class ("Class," for

14  purposes of this Count).

15      1294.  Plaintiff, the other Class Members, and Dexcom are "person[s]" under Or.

16  Rev. Stat. § 646.605.

17      1295.  Dexcom engaged in "trade" or "commerce" under Or. Rev. Stat. § 646.605.

18      1296.  The Oregon Unlawful Trade Practices Law broadly prohibits "unfair or

19  deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(u).

20      1297.  By the conduct describe in detail above and incorporated herein, Dexcom

21  engaged in unfair or deceptive conduct in violation of the Oregon Unlawful Trade

22  Practices Law.

23      1298.  Dexcom's omissions regarding the Defects, including (but not limited to) the

24  Sensor Defect, Receiver Defect, and the Application Defect, that can result in

25  malfunctions including (but not limited to) silent receiver speaker failures, app behavior

26  that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and

27  inaccuracies in glucose readings, are material facts that a reasonable person would have

28

considered in deciding whether or not to purchase, pay the same price for, or purchase additional accessories for the G7 CGM.

1299. Dexcom intended for Plaintiff and the other Class Members to rely on its omissions regarding the Defects.

1300. Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's omissions of fact concerning the above Defects, as evidenced by their purchase of the G7 CGM and/or related accessories for it.

1301. Had Dexcom disclosed all material information regarding the Defects to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased the G7 CGM and/or related accessories, or they would have paid less to do so.

1302. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1303. Dexcom's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

**COUNT LXXIX**

**BREACH OF EXPRESS WARRANTY**

**Or. Rev. Stat. Ann. § 72.3130**

**On Behalf of Plaintiff and the Statewide Class**

1304. Plaintiff Abby Farber ("Plaintiff," for the purposes of the Oregon Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1305. Plaintiff brings this Count on behalf of the Oregon Class ("Class," for purposes of this Count).

1306. At all relevant times, Dexcom is and was a "seller" and Plaintiff is and was a "buyer" within the meaning of the statute.

1307. Dexcom is and was at all relevant times a "merchant" with respect to medical devices.

1308. The G7 CGM is and was at all times a "good" within the meaning of Or. Rev. Stat. Ann. § 72.1050.

1309. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1310. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1311. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1312. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1313. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1314. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1315. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1316. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1317. Plaintiff and the other Class Members were financially harmed.

1318. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1319. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15,

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1320. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LXXX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Or. Rev. Stat. Ann. § 72.8020
### On Behalf of Plaintiff and the Statewide Class

1321. Plaintiff Abby Farber ("Plaintiff," for the purposes of the Oregon Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1322. Plaintiff brings this Count on behalf of the Oregon Class ("Class," for purposes of this Count).

1323. At all relevant times, Plaintiff is and was a "buyer" within the meaning of the statute.

1324. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

1325. The G7 CGM is a "consumer good" within the meaning of Or. Rev. Stat. Ann. § 72.8010 because it falls into the category of "goods that are used or bought for use primarily for personal, family or household purposes."

1326. Dexcom was a "manufacturer" and "seller" of "consumer goods" under Or. Rev. Stat. Ann. § 72.8010 because it manufactured, assembled, and/or produced

consumer goods, and it engaged in the business of selling consumer goods to retail buyers.

1327. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1328. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1329. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1330. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1331. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1332. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1333. Plaintiff and the other Class Members were financially harmed.

1334. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1335. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable

1  relief, statutory damages and penalties, and punitive and exemplary damages—in an

2  amount to be determined at trial.

3       1336.  Plaintiff Grisoli, individually and on behalf of the other Class Members,

4  notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer

5  protection statutes and related legal violations, through a notice letter dated October 15,

6  2025, and delivered by email to Dexcom's counsel, who responded on November 19,

7  2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

8  Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

9  of the Defects through numerous complaints filed against it, other similar lawsuits filed

10  against it, and its own internal knowledge.

11       1337.  Plaintiff and the other Class Members have had sufficient dealings with

12  either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies)

13  to establish privity of contract between them. Notwithstanding this, privity is not required

14  in this case because Plaintiff and the Class are intended third-party beneficiaries of

15  contracts between Dexcom and its agents; specifically, consumers are the intended

16  beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing

17  doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7

18  CGM and have no rights under the warranty agreements provided with the devices; the

19  warranty agreements were designed for and intended to benefit the ultimate consumers

20  only. Finally, privity is also not required because the G7 CGMs are dangerous

21  instrumentalities due to the aforementioned defect.

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT LXXXI**

**UNJUST ENRICHMENT**

**Oregon Law**

**On Behalf of Plaintiff and the Statewide Class**

1338. Plaintiff Abby Farber ("Plaintiff," for the purposes of the Oregon Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1339. Plaintiff brings this Count on behalf of the Oregon Class ("Class," for purposes of this Count).

1340. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1341. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1342. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1343. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1344. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1345. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of their wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure

of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1346. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1347. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1348. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1349. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1350. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

### 16.    Claims Brought on Behalf of the Pennsylvania Class

#### COUNT LXXXII

#### FRAUDULENT OMISSION

#### Pennsylvania Law

#### On Behalf of Plaintiff and the Statewide Class

1351. Plaintiff Danielle Perschau ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1352. Plaintiff brings this Count on behalf of the Pennsylvania Class ("Class," for purposes of this Count).

1353. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1354. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1355. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1356. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1357. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1358. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1359. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the

FIRST AMENDED CLASS ACTION COMPLAINT

G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff
and the other Class Members would not have known of these Defects otherwise.

1360. Had Plaintiff and the other Class Members known of the Defects, they
would not have purchased the G7 CGMs, would have paid less for the devices, or would
not have purchased additional items—such as sensors overpatches, adhesives, additional
test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM
itself or necessary because of the G7 CGM's defects.

1361. Through its omissions regarding the defects, Dexcom intended to induce,
and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they
otherwise would not have purchased, or to pay more for G7 CGMs and related products
than they otherwise would have paid.

1362. As a direct and proximate result of Dexcom's omissions, Plaintiff and the
other Class Members either overpaid for the G7 CGMs and sensors or would not have
purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects
had been disclosed.

1363. Therefore, Plaintiff and the other Class Members have incurred damages—
including but not limited to actual damages, compensatory damages, restitution, equitable
relief, statutory damages and penalties, and punitive and exemplary damages—in an
amount to be determined at trial.

## COUNT LXXXIII

## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND
## CONSUMER PROTECTION LAW

### 73 Pa. C.S. §§ 201-11 *et seq.*

### On Behalf of Plaintiff and the Statewide Class

1364. Plaintiff Danielle Perschau ("Plaintiff," for the purposes of the Pennsylvania
Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1365. Plaintiff brings this Count on behalf of the Pennsylvania Class ("Class," for purposes of this Count).

1366. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Stat. Ann. § 201-3.

1367. Dexcom's design, manufacture, distribution, marketing, advertising, labeling, and sale of the G7 CGM constitutes "trade and commerce" under 73 Pa. Stat. Ann.§ 201-2(3).

1368. Dexcom violated the UTPCPL by: (a) representing that the monitors have certain medical benefits and characteristics that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); (b) failing to comply with the terms of a written guarantee or warranty given to the buyer (73 Pa. Stat. Ann. § 201-2(4)(xiv)); and (c) engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about the G7 CGM (73 Pa. Stat. Ann. § 201-2(4)(xxi)).

1369. Dexcom's deceptive conduct and its omissions regarding the G7 CGM's defects are facts that a reasonable person would consider material when deciding whether or not to purchase (or how much they were willing to pay to purchase) a G7 CGM.

1370. Dexcom's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff and members of the Statewide Class, and were likely to mislead reasonable consumers, including Plaintiff and Class Members.

1371. Had Dexcom disclosed all material information regarding the defects, Plaintiff and the other Class Members would not have purchased G7 CGMs or would have paid less to do so.

1372. Dexcom's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived or

are likely to deceive members of the consuming public and the other members of the Class.

1373. Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's misrepresentations and omissions of fact, as evidenced by Plaintiff's and the other Class Members' purchase of G7 CGMs.

1374. As a direct and proximate result of Dexcom's deceptive acts and practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members would not have purchased G7 CGMs or would have paid less for them had Dexcom disclosed the truth about the G7 CGM's defects.

1375. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1376. Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiff and the other members of the class also seek an order for: actual and treble damages; costs; and reasonable attorneys' fees.

## COUNT LXXXIV
## BREACH OF EXPRESS WARRANTY
### 13 Pa. C.S. § 2313
### On Behalf of Plaintiff and the Statewide Class

1377. Plaintiff Danielle Perschau ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1378. Plaintiff brings this Count on behalf of the Pennsylvania Class ("Class," for purposes of this Count).

1379. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1380. Pursuant to 13 PA. C.S. § 2104, Dexcom is and was at all relevant times a merchant with respect to the G7 CGM.

1381. Pursuant to 13 PA. C.S. § 2313(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

1382. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1383. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1384. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1385. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have

presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1386. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1387. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1388. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1389. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1390. Plaintiff and the other Class Members were financially harmed.

1391. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1392. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice

of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1393. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LXXXV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## 13 Pa. C.S. § 2314
## On Behalf of Plaintiff and the Statewide Class

1394. Plaintiff Danielle Perschau ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1395. Plaintiff brings this Count on behalf of the Pennsylvania Class ("Class," for purposes of this Count).

1396. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1397. Dexcom is and was at all relevant times a "merchant" with respect to medical devices under 13 Pa. Cons. Stat. § 2104, and a "seller" of medical devices under § 2103(a).

1398. The G7 CGMs are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. § 2105(a).

1399. A warranty that the G7 CGMs were in merchantable condition and fit for the ordinary purpose for which medical devices are used is implied in law pursuant to 13 Pa. Cons. Stat. § 2314.

1400. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in

merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1401. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1402. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1403. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1404. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1405. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1406. Plaintiff and the other Class Members were financially harmed.

1407. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1408. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1409. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15,

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1410. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT LXXXVI**

**UNJUST ENRICHMENT**

**Pennsylvania Law**

**On Behalf of Plaintiff and the Statewide Class**

1411. Plaintiff Danielle Perschau ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1412. Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

1413. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money

1  paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These
2  benefits constitute an enrichment.

3      1414. In so doing, Dexcom acted with conscious disregard for the rights of
4  Plaintiff and the other Class Members.

5      1415. As an intended and expected result of Dexcom's conscious wrongdoing as
6  set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff
7  and the other Class Members made for their G7 CGMs.

8      1416. Dexcom's unjust enrichment is traceable to, and resulted directly and
9  proximately from, the conduct alleged herein.

10      1417. At the time their payments were made, Plaintiff and the other Class
11  Members expected that Dexcom's G7 CGMs were functional and effective in the ways
12  Dexcom had represented, and could safely be used for the purposes Dexcom advertised.
13  In exchange for their payments, Plaintiff and the other Class Members believed they were
14  receiving a safe, reliable, and effective method for monitoring glucose.

15      1418. Dexcom has voluntarily accepted and retained these payments with full
16  knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid
17  for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of
18  Dexcom to provide Plaintiff and the other Class Members with the remuneration
19  expected enriched Dexcom unjustly and impoverished Plaintiff.

20      1419. Because Dexcom concealed its fraud and deception described herein,
21  Plaintiff and the other members of the Class were not aware of the true facts concerning
22  the G7 CGMs and did not benefit from Dexcom's misconduct.

23      1420. Under the common law doctrine of unjust enrichment, it is inequitable for
24  Dexcom to be permitted to retain the benefits it received, and is still receiving, without
25  justification, from the false and deceptive labeling and marketing of the G7 CGMs to
26  Plaintiff and the other Class Members.

27
28

1421. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1422. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1423. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

## 17.   Claims Brought on Behalf of the South Carolina Class

### COUNT LXXXVII

### FRAUDULENT OMISSION

### South Carolina Law

### On Behalf of Plaintiff and the Statewide Class

1424. Plaintiff Kevin Parks ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1425. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1426. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1427. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to

important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1428. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1429. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1430. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1431. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1432. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1433. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1434. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they

otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1435. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1436. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LXXXVIII
## BREACH OF EXPRESS WARRANTY
### S.C. Code Ann. § 36-2-313
### On Behalf of Plaintiff and the Statewide Class

1437. Plaintiff Kevin Parks ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1438. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1439. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1440. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

1441. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1442. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship

under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1443. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1444. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1445. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1446. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1447. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1448. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1449. Plaintiff and the other Class Members were financially harmed.

1450. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1451. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1452. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT LXXXIX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### S.C. Code § 36-2-314
### On Behalf of Plaintiff and the Statewide Class

1453. Plaintiff Kevin Parks ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1454. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1455. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1456. Dexcom is and was at all relevant times a merchant with respect to medical devices.

1457. Pursuant to S.C. Code § 36-2-314, a warranty that the G7 CGMs were fit for the ordinary purpose for which the Dexcom Products are used was implied by law, and the G7 CGMs were bought and sold subject to an implied warranty of merchantability.

1458. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1459. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1460. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1461. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1462. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1463. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1464. Plaintiff and the other Class Members were financially harmed.

1465. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1466. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1467. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1468. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT XC**

**UNJUST ENRICHMENT**

**South Carolina Law**

**On Behalf of Plaintiff and the Statewide Class**

1469. Plaintiff Kevin Parks ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1470. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1471. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1472. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1473. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1474. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1475. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1476. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of

Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1477. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1478. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1479. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1480. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1481. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

## 18.    Claims Brought on Behalf of the Texas Class

### COUNT XCI

### FRAUDULENT OMISSION

### Texas Law

### On Behalf of Plaintiff and the Statewide Class

1482. Plaintiff Ashley Sheldon ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1483. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

1484. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1485. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1486. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1487. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1488. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1489. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1490. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the

G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1491. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1492. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1493. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1494. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT XCII

## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES –
## CONSUMER PROTECTION ACT

### Tex. Bus. & Com. Code §§ 17.01 *et seq.*

### On Behalf of Plaintiff and the Statewide Class

1495. Plaintiff Ashley Sheldon ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1496. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

1497. The Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

1498. By the conduct described in detail above and incorporated herein, Dexcom engaged in false, misleading and deceptive trade practices.

1499. Dexcom's omissions regarding the G7 CGM's defects are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the products.

1500. Dexcom intended for Plaintiff and the other Class Members to rely on its omissions regarding the G7 CGM's defects.

1501. Plaintiff and the other Class Members justifiably acted or relied to their detriment upon Dexcom's omissions of fact concerning the above-described defects, as evidenced by Plaintiff and the other Class Members' purchases of the products.

1502. Had Dexcom disclosed all material information regarding the G7 CGM's defects to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased the monitors or would have paid less to do so.

1503. Dexcom's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1504. In addition to being deceptive, the business practices of Dexcom was unfair because Dexcom knowingly sold Plaintiff and the other Class Members glucose monitors with serious defects. The injuries to Plaintiff and the other Class Members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class Members or to competition under all of the circumstances. Moreover, in light of

Dexcom's exclusive knowledge of the defects, the injury is not one that Plaintiff or the other Class Members could have reasonably avoided.

1505. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1506. As a direct and proximate result of Dexcom's unfair and deceptive trade practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members who purchased the monitors would not have purchased them, or, alternatively, would have paid less for them had the truth about their defects been disclosed. Plaintiff and the other Class Members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the TDTPA.

**COUNT XCIII**

**BREACH OF EXPRESS WARRANTY**

**Tex. Bus. & Com. Code § 2.313**

**On Behalf of Plaintiff and the Statewide Class**

1507. Plaintiff Ashley Sheldon ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1508. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count)

1509. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1510. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

1511. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1512. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1513. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1514. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1515. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1516. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the

other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1517. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1518. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1519. Plaintiff and the other Class Members were financially harmed.

1520. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1521. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1522. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT XCIV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Tex. Bus. & Com. Code § 2.314**

**On Behalf of Plaintiff and the Statewide Class**

1523. Plaintiff Ashley Sheldon ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1524. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

1525. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1526. Defendant is and was at all relevant times a merchant with respect to medical devices under Tex. Bus. & Com. Code § 2.104.

1527. Pursuant to Tex. Bus. & Com. Code § 2.314, a warranty that the G7 CGMs were in merchantable condition was implied by law, and the G7 CGMs were bought and sold subject to an implied warranty of merchantability.

1528. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1529. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1530. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1531. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1532. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1533. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1534. Plaintiff and the other Class Members were financially harmed.

1535. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1536. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1537. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1538. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended

beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT XCV**

**UNJUST ENRICHMENT**

**Texas Law**

**On Behalf of Plaintiff and the Statewide Class**

1539. Plaintiff Ashley Sheldon ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1540. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

1541. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1542. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1543. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1544. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1545. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways

FIRST AMENDED CLASS ACTION COMPLAINT

1    Dexcom had represented, and could safely be used for the purposes Dexcom advertised.

2    In exchange for their payments, Plaintiff and the other Class Members believed they were

3    receiving a safe, reliable, and effective method for monitoring glucose.

4        1546. Dexcom has voluntarily accepted and retained these payments with full

5    knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid

6    for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of

7    Dexcom to provide Plaintiff and the other Class Members with the remuneration

8    expected enriched Dexcom unjustly and impoverished Plaintiff.

9        1547. Because Dexcom concealed its fraud and deception described herein,

10    Plaintiff and the other members of the Class were not aware of the true facts concerning

11    the G7 CGMs and did not benefit from Dexcom's misconduct.

12        1548. Under the common law doctrine of unjust enrichment, it is inequitable for

13    Dexcom to be permitted to retain the benefits it received, and is still receiving, without

14    justification, from the false and deceptive labeling and marketing of the G7 CGMs to

15    Plaintiff and the other Class Members.

16        1549. Dexcom's retention of such funds under circumstances making it inequitable

17    to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain

18    revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other

19    Class Members have purchased a dysfunctional product.

20        1550. Dexcom has no justification for retaining such benefits. Plaintiff and the

21    other Class Members may assert an unjust enrichment claim even though a remedy at law

22    may otherwise exist.

23        1551. Plaintiff and the other Class Members seek restitution and disgorgement of

24    Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount

25    deemed appropriate by the Court, and such other relief as the Court deems just and proper

26    to remedy Dexcom's unjust enrichment.

27

28

**19.    Claims Brought on Behalf of the Virginia Class**

**COUNT XCVI**

**FRAUDULENT OMISSION**

**Virginia Law**

**On Behalf of Plaintiff and the Statewide Class**

1552. Plaintiff Lauren Calvert ("Plaintiff" for purposes of this count) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1553. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1554. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1555. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1556. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1557. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1558. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not

limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1559. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1560. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1561. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1562. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1563. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1564. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT XCVII**

**VIRGINIA CONSUMER PROTECTION ACT**

**Va. Code Ann. § 59.1-196 *et seq.***

**On Behalf of Plaintiff and the Statewide Class**

1565. Plaintiff Lauren Calvert ("Plaintiff" for purposes of this count) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1566. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1567. Dexcom, Plaintiff, and the other Class Members are "persons" within the meaning of the Virginia Consumer Protection Act ("VCPA").

1568. In selling the G7 CGM, Dexcom was engaged within a "consumer transaction" within the meaning of the VCPA.

1569. The VCPA prohibits any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

1570. The VCPA prohibits "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model."

1571. The VCPA prohibits "[a]dvertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned, or that are 'seconds,' irregulars, imperfects, or 'not first class,' without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, reconditioned, or are "seconds," irregulars, imperfects or "not first class."

1572. The VCPA prohibits "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised."

1573. By the conduct described in detail above and incorporated herein, Dexcom engaged in unfair or deceptive acts in violation of the VCPA.

1    1574. Dexcom's omissions regarding the G7 CGM's defects are material facts that

2    a reasonable person would have considered in deciding whether or not to purchase (or to

3    pay the same price for) the product.

4    1575. Dexcom intended for Plaintiff to rely on its omissions of fact regarding the

5    G7 CGM.

6    1576. Plaintiff justifiably acted or relied to her detriment upon Dexcom's

7    omissions of fact concerning the above-described defects, as evidenced by Plaintiff's

8    purchase of the monitor.

9    1577. Had Dexcom disclosed all material information regarding the defects to

10    Plaintiff, then Plaintiff would not have purchased the product or would have paid less to

11    do so.

12    1578. Dexcom's omissions deceived Plaintiff and the other Class Members.

13    1579. Dexcom acted willfully in concealing, and not disclosing, the defects from

14    Plaintiff and the other Class Members.

15    1580. In addition to being deceptive, the business practices of Dexcom were unfair

16    because Dexcom knowingly sold to Plaintiff a defective product that is essentially

17    unusable for the purposes for which they were sold. The injuries to Plaintiff are

18    substantial and greatly outweigh any alleged countervailing benefit to Plaintiff or to any

19    competition under all of the circumstances. Moreover, in light of Dexcom's exclusive

20    knowledge of the monitor's defects, the injury is not one that Plaintiff could have

21    reasonably avoided.

22    1581. Further, and to the extent required by law, Dexcom had a duty to disclose

23    the defects because disclosure was necessary to dispel misleading impressions about the

24    products' reliability and durability that were or might have been created by partial

25    representation of the facts.

26

27

28

1582. Dexcom's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class Members, about the true reliability, dependability, efficiency, and quality of the G7 CGM.

1583. Plaintiff and the other Class Members suffered ascertainable loss and actual damages as a direct result of Dexcom's concealment of and failure to disclose material information. Plaintiff and the other Class Members who purchased the product would not have done so, or would have paid significantly less, if the true nature of the product had been disclosed.

1584. Dexcom's violations present a continuing risk to Plaintiff and the other members of the class, as well as to the general public. Dexcom's unlawful acts and practices complained of herein affect the public interest.

1585. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1586. Plaintiff and the other members of the class seek an compensatory damages, punitive damages, reasonable attorneys' fees, and any other just and proper relief available under the VCPA.

# COUNT XCVIII

## BREACH OF EXPRESS WARRANTY

### Va. Code Ann. § 8.2-313

### On Behalf of Plaintiff and the Statewide Class

1587. Plaintiff Lauren Calvert ("Plaintiff" for purposes of this count) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1588. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1589. At all relevant times, Plaintiff is and was a "buyer" within the meaning of the statute.

1590. Defendant Dexcom is and was at all relevant times a "merchant" with respect to medical devices under Va. Code Ann. § 8.2-104 and is a "seller" of medical devices under § 8.2-103.

1591. The G7 CGM is and was at all relevant times a "good" within the meaning of Va. Code Ann. § 8.2-105 and 8.2a-103.

1592. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1593. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1594. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1595. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1596. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1597. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1598. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1599. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1600. Plaintiff and the other Class Members were financially harmed.

1601. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1602. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15,

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1603. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT XCIX

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## Va. Code Ann. § 8.2-314

## On Behalf of Plaintiff and the Statewide Class

1604. Plaintiff Lauren Calvert ("Plaintiff" for purposes of this count) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1605. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1606. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1607. Defendant Dexcom is and was at all relevant times a "merchant" with respect to medical devices under Va. Code Ann. § 8.2-104 and is a "seller" of medical devices under § 8.2-103.

1608. The G7 CGMs are and were at all relevant times a "good" within the meaning of Va. Code Ann. § 8.2-105 and 8.2a-103.

1609. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in

1   merchantable condition, would not pass without objection in the trade, and were not fit
2   for the ordinary purpose for which continuous glucose monitors were used.

3      1610. At the time of purchase, Dexcom was in the business of selling and
4   manufacturing the G7 CGM.

5      1611. Dexcom impliedly warranted that the G7 CGM was of merchantable quality
6   and fit for ordinary use.

7      1612. The G7 CGM was not of the same quality as that generally acceptable in the
8   trade, would not pass without objection in the trade, was not fit for the ordinary purposes
9   for which it is used, was not adequately labeled and did not measure up to the promises or
10  facts stated on the label.

11     1613. The G7 CGM is not fit for its ordinary purpose because of the Defects
12  described above, including (but not limited to) the Sensor Defect, Receiver Defect, and
13  the Application Defect, that can result in malfunctions including (but not limited to) silent
14  receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends
15  without notice, "goosenecking," and inaccuracies in glucose readings

16     1614. In addition, the G7 Sensor is often inaccurate and fails to last the intended
17  10.5-day wear span.

18     1615. Plaintiff and the other Class Members were financially harmed.

19     1616. Dexcom's breach of implied warranty was a substantial factor in causing the
20  harm suffered by Plaintiff and the other Class Members.

21     1617. Therefore, Plaintiff and the other Class Members have incurred damages—
22  including but not limited to actual damages, compensatory damages, restitution, equitable
23  relief, statutory damages and penalties, and punitive and exemplary damages—in an
24  amount to be determined at trial.

25     1618. Plaintiff Grisoli, individually and on behalf of the other Class Members,
26  notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer
27  protection statutes and related legal violations, through a notice letter dated October 15,

28

FIRST AMENDED CLASS ACTION COMPLAINT

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1619. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT C**

**UNJUST ENRICHMENT**

**Virginia Law**

**On Behalf of Plaintiff and the Statewide Class**

1620. Plaintiff Lauren Calvert ("Plaintiff," for purposes of the Virginia Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1621. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1622. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money

paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1623. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1624. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1625. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1626. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1627. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1628. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1629. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1630. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1631. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1632. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

## 20.    Claims Brought on Behalf of the Washington Class

### COUNT CI

### FRAUDULENT OMISSION

### Washington Law

### On Behalf of Plaintiff and the Statewide Class

1633. Plaintiff Stuart Cutler ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1634. Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1635. Dexcom was aware of the G7 CGM's Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, when it manufactured, marketed, and sold the devices to Plaintiff and the other Class Members.

1636. Having been aware of the G7 CGM's Defects and, having known that Plaintiff and the other Class Members could not have reasonably been expected to know about them, Dexcom had a duty to disclose the Defects to Plaintiff and the other Class Members in connection with the sale of the G7 CGMs, as these Defects relate to

important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

1637. Dexcom did not disclose the Defects to Plaintiff and Class Members in connection with the sale of the G7 CGMs and/or subsequent sales of G7 CGM.

1638. Dexcom knew that these omissions would cause the false impression that the G7 CGM did not have the aforementioned Defects.

1639. The Defects concern material information with respect to the sale of the G7 CGMs, their sensors, and sale of related products. Dexcom's omissions concern the Defects mentioned above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings.

1640. The existence of these Defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the G7 CGMs and/or additional items for the G7 CGM.

1641. In purchasing the G7 CGMs and related products, Plaintiff and the other Class Members, who planned to use the G7 CGM to help manage diabetes, reasonably and justifiably relied on Dexcom to disclose known material defects with respect to the G7 CGMs. Only Dexcom had the relevant information about these Defects, and Plaintiff and the other Class Members would not have known of these Defects otherwise.

1642. Had Plaintiff and the other Class Members known of the Defects, they would not have purchased the G7 CGMs, would have paid less for the devices, or would not have purchased additional items—such as sensors overpatches, adhesives, additional test strips, insulin pumps, and/or G7-compliant cell phones—required for the G7 CGM itself or necessary because of the G7 CGM's defects.

1643. Through its omissions regarding the defects, Dexcom intended to induce, and did induce, Plaintiff and the other Class Members to purchase G7 CGMs, they

otherwise would not have purchased, or to pay more for G7 CGMs and related products than they otherwise would have paid.

1644. As a direct and proximate result of Dexcom's omissions, Plaintiff and the other Class Members either overpaid for the G7 CGMs and sensors or would not have purchased the G7 CGMs, sensors, and/or additional required items at all if the Defects had been disclosed.

1645. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT CII

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

### Wash. Rev. Code § 19.86.10 *et seq.*

### On Behalf of Plaintiff and the Statewide Class

1646. Plaintiff Stuart Cutler ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1647. Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1648. Dexcom is and was at all relevant times a merchant with respect to medical devices under Wash. Rev. Code § 62A.2-313.

1649. The conduct of Dexcom as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, failing to disclose defects in the G7 CGM, when Dexcom knew about these defects through consumer complaints and internal knowledge.

1650. Dexcom's actions as set forth above occurred in the conduct of trade or commerce.

1651. Dexcom's actions impact the public interest because Plaintiff and the other Class Members were injured in exactly the same way as millions of others purchasing the G7 CGM as a result of Dexcom's generalized course of deception.

1652. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Dexcom's business.

1653. Plaintiff and the other Class Members were injured as a result of Dexcom's conduct because they overpaid for their G7 CGMs and did not receive the benefit of their bargain.

1654. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1655. Dexcom's conduct proximately caused injuries to Plaintiff and the other Class Members, in an amount to be determined at trial, including attorneys' fees, costs, and treble damages.

1656. Pursuant to Wash. Rev. Code § 19.86.095, Plaintiff will serve the Washington Attorney General with a copy of this complaint as Plaintiff and the other Class Members seek injunctive relief.

# COUNT CIII

## BREACH OF EXPRESS WARRANTY

### Wash. Rev. Code § 62A.2-313

### On Behalf of Plaintiff and the Statewide Class

1657. Plaintiff Stuart Cutler ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1658. Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1659. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1660. Dexcom is and was at all relevant times a merchant with respect to medical devices under Wash. Rev. Code § 62A.2-313.

1661. In its written express warranties, Defendant expressly warranted that it would provide a functioning, safe glucose monitor.

1662. Dexcom expressly warranted through marketing and labeling that the G7 was safe, accurate, and reliable for continuous glucose monitoring.

1663. Specifically, in its Limited Warranty, Dexcom expressly warranted that: "Dexcom, Inc. or its local Dexcom affiliate…provides a limited warranty to individual end users…that the Dexcom receiver…is free from defects in material and workmanship under normal use ('limited warranty') for the period commencing on the date of original purchase and expiring one (1) year thereafter, provided it is not modified, altered, or misused."

1664. Dexcom breached these warranties because the G7 CGM and its component parts failed to conform to the affirmations and representations made by Dexcom through the Defects mentioned above, including (but not limited to) the Sensor Defect, the Receiver Defect, and the Application Defect.

1665. Furthermore, the express warranties fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Defendants are unable to and/or have refused to adequately provide the promised remedies within a reasonable time. As stated above, customers that have presented their G7 CGM for warranty repair have simply been provided replacement defective G7 CGMs.

1666. Also, as alleged in more detail above, at the time that Defendants warranted and sold the G7 CGMs, they knew that the G7 CGMs did not conform to the warranties and were inherently defective, and Defendants improperly concealed material facts regarding the G7 CGMs. Plaintiff and the other Class Members were therefore induced to purchase the Defendants' products under false pretenses.

1667. Moreover, much of the damage flowing from the G7 CGMs cannot be resolved through the limited remedy of repairs, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make them whole. Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

1668. The G7 CGM's ability to monitor blood glucose safely, effectively, and accurately was the basis of the bargain; Plaintiff sought to purchase the item for exactly and only that purpose.

1669. Plaintiff and the other Class Members were deprived of the benefit of their bargain.

1670. Plaintiff and the other Class Members were financially harmed.

1671. Dexcom's breach of express warranties was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1672. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15,

2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1673. Therefore, Plaintiff and the other Class Members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

## COUNT CIV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### Wash. Rev. Code § 62A.2-614

### On Behalf of Plaintiff and the Statewide Class

1674. Plaintiff Stuart Cutler ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1675. Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1676. At all relevant times, Dexcom is and was a "seller," Plaintiff is and was a "buyer," and the G7 CGM is and was a "good" within the meaning of the statute.

1677. At the time of purchase, Dexcom was a merchant in the business of selling and manufacturing the medical devices, specifically glucose monitors.

1678. A warranty that the G7 CGM was in merchantable condition was implied by law.

1679. The G7 CGMs did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which continuous glucose monitors were used.

1680. At the time of purchase, Dexcom was in the business of selling and manufacturing the G7 CGM.

1681. Dexcom impliedly warranted that the G7 CGM was of merchantable quality and fit for ordinary use.

1682. The G7 CGM was not of the same quality as that generally acceptable in the trade, would not pass without objection in the trade, was not fit for the ordinary purposes for which it is used, was not adequately labeled and did not measure up to the promises or facts stated on the label.

1683. The G7 CGM is not fit for its ordinary purpose because of the Defects described above, including (but not limited to) the Sensor Defect, Receiver Defect, and the Application Defect, that can result in malfunctions including (but not limited to) silent receiver speaker failures, app behavior that suppresses "Sensor Failed" alerts and ends without notice, "goosenecking," and inaccuracies in glucose readings

1684. In addition, the G7 Sensor is often inaccurate and fails to last the intended 10.5-day wear span.

1685. Plaintiff and the other Class Members were financially harmed.

1686. Dexcom's breach of implied warranty was a substantial factor in causing the harm suffered by Plaintiff and the other Class Members.

1687. Therefore, Plaintiff and the other Class Members have incurred damages— including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

1688. Plaintiff Grisoli, individually and on behalf of the other Class Members, notified Dexcom of the Defects in the G7 CGMs, and its breach of state consumer protection statutes and related legal violations, through a notice letter dated October 15, 2025, and delivered by email to Dexcom's counsel, who responded on November 19, 2025. Prior to filing this FAC on December 1, 2025, all Plaintiffs sent additional notice to

FIRST AMENDED CLASS ACTION COMPLAINT

Dexcom notifying it of additional state Classes and claims. Dexcom also received notice of the Defects through numerous complaints filed against it, other similar lawsuits filed against it, and its own internal knowledge.

1689. Plaintiff and the other Class Members have had sufficient dealings with either Dexcom or its agents (insurance companies, prescribing doctors, and pharmacies) to establish privity of contract between them. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between Dexcom and its agents; specifically, consumers are the intended beneficiaries of Dexcom's implied warranties. The insurance companies, prescribing doctors, and/or pharmacies were not intended to be the ultimate consumers of the G7 CGM and have no rights under the warranty agreements provided with the devices; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the G7 CGMs are dangerous instrumentalities due to the aforementioned defect.

**COUNT CV**

**UNJUST ENRICHMENT**

**Washington Law**

**On Behalf of Plaintiff and the Statewide Class**

1690. Plaintiff Stuart Cutler ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1–211 as if fully set forth herein.

1691. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1692. As a result of Dexcom's wrongful and deceptive conduct, Dexcom knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and the other Class Members when they purchased the G7 CGM. These benefits constitute an enrichment.

1693. In so doing, Dexcom acted with conscious disregard for the rights of Plaintiff and the other Class Members.

1694. As an intended and expected result of Dexcom's conscious wrongdoing as set forth in this Complaint, Dexcom has profited and benefited from payments Plaintiff and the other Class Members made for their G7 CGMs.

1695. Dexcom's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

1696. At the time their payments were made, Plaintiff and the other Class Members expected that Dexcom's G7 CGMs were functional and effective in the ways Dexcom had represented, and could safely be used for the purposes Dexcom advertised. In exchange for their payments, Plaintiff and the other Class Members believed they were receiving a safe, reliable, and effective method for monitoring glucose.

1697. Dexcom has voluntarily accepted and retained these payments with full knowledge that, as a result of its wrongdoing, Plaintiff and the other Class Members paid for Dexcom's G7 CGMs when they otherwise would not have done so. The failure of Dexcom to provide Plaintiff and the other Class Members with the remuneration expected enriched Dexcom unjustly and impoverished Plaintiff.

1698. Because Dexcom concealed its fraud and deception described herein, Plaintiff and the other members of the Class were not aware of the true facts concerning the G7 CGMs and did not benefit from Dexcom's misconduct.

1699. Under the common law doctrine of unjust enrichment, it is inequitable for Dexcom to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the G7 CGMs to Plaintiff and the other Class Members.

1700. Dexcom's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment. It is unjust to allow Dexcom to earn and retain

revenues, profits, and benefits from its faulty G7 CGMs while Plaintiff and the other Class Members have purchased a dysfunctional product.

1701. Dexcom has no justification for retaining such benefits. Plaintiff and the other Class Members may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

1702. Plaintiff and the other Class Members seek restitution and disgorgement of Dexcom's wrongful revenues, profits, and benefits to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Dexcom's unjust enrichment.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members, respectfully requests that the Court enter judgment in their favor and against all Dexcom, individually, jointly, and severally on the entire Complaint, as follows:

A.  For an Order certifying this action as a class action, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' Counsel to represent the Classes;

B.  For an award of actual damages, compensatory damages, restitution, equitable relief, statutory damages, and statutory penalties, in an amount to be determined at trial and as allowable by law;

C.  For an award of punitive and exemplary damages, as allowable by law;

D.  For an award of attorneys' fees and costs, and any other expense, including reasonable expert witness fees;

E.  Pre- and post-judgment interest on any amounts awarded; and

F.  Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and the other Class Members hereby demand a jury trial for all claims so triable.

DATED: December 1, 2025          Respectfully submitted,

_/s/ C. Moze Cowper_
C. Moze Cowper (Bar No. 326614)
Paige Miller (Bar No. 361477)
**COWPER LAW LLP**
12301 Wilshire Boulevard, Suite 303
Los Angeles, California 90025
Tel.: (877) 529-3707
mcowper@cowperlaw.com
pmiller@cowperlaw.com

Adam J. Levitt (_Pro Hac Vice_)
**DICELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
alevitt@dicellolevitt.com

***Counsel for Plaintiff and the Proposed Classes***

## AFFIDAVIT OF C. MOZE COWPER
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780

C. Moze Cowper declares:

1.      I am an attorney duly admitted to practice before this Court. I am a partner and founder of the law firm Cowper Law, LLP, attorneys of record for Plaintiff Kelly Grisoli and the proposed Class.

2.      I am one of the attorneys principally responsible for the handling of this matter. I am personally familiar with the facts set forth in this declaration, and if called as a witness, I could and would competently testify to the matters stated herein.

3.      This action has been commenced in a county described in California Civil Code Section 1780 as a proper place for the trial of the action. The transactions and a substantial portion thereof occurred in Orange County, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 1, 2025, in Los Angeles, California.


*/s/ C. Moze Cowper*
C. Moze Cowper